## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

.........................................................................x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Barnes Bay Development, Ltd., *et al.*,[1] | : | Case No. 11- _____ |
| | : | |
| Debtors. | : | |

.........................................................................x

### MOTION FOR AN ORDER (I) AUTHORIZING THE SALE OF RESIDENTIAL PROPERTIES AND (II) AUTHORIZING SATISFACTION OF CERTAIN PREPETITION OBLIGATIONS IN CONNECTION WITH SUCH SALES

The above-captioned debtors and debtors in possession hereby file this *Motion for an Order (i) Authorizing the Sale of Residential Properties and (ii) Authorizing Satisfaction of Prepetition Obligations in Connection with Such Sales* (the "Motion"). In support of this Motion, the Debtors incorporate the statements contained in the *Declaration of Deborah Branch in Support of First-Day Motions* filed on the Petition Date (the "First Day Declaration") and further respectfully state as follows:

### I.
### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are §§ 105(a), 361, 363 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").[2]

---

[1] The Debtors in these cases, along with the last four digits of the employer identification number for each of the Debtors, are Kor Duo Investment Partners II, LP (xx-xxx9891), Kor Duo II, LLC (xx-xxx5207) and Barnes Bay Development, Ltd. Barnes Bay Development, Ltd., is a company formed under the laws of Anguilla and, accordingly, does not have an employer identification number.

[2] Unless otherwise noted, section (§) references herein are to the Bankruptcy Code.

# II.
# BACKGROUND

## A.    General Background

3.    On March 17, 2011 (the "<u>Petition Date</u>"), Kor Duo Investment Partners II, LP ("<u>KDIP</u>"), a Delaware limited partnership, Kor Duo II, LLC ("<u>Kor Duo</u>"), a Delaware limited liability company, and Barnes Bay Development Ltd., a company duly incorporated in Anguilla and registered under the Companies Act, Company number 1007701 in the Register of Companies ("<u>Barnes Bay</u>" and, collectively, the "<u>Debtors</u>") filed petitions for relief in this Court under chapter 11 of title 11 of the Bankruptcy Code.

4.    The Debtors are operating their businesses as debtors in possession pursuant to §§ 1107(a) and 1108, and the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases.

5.    Contemporaneously with the filing of these cases, the Debtors have requested entry of an order authorizing them to obtain an additional $5,000,000 postpetition secured superpriority credit facility (the "<u>DIP Loan</u>") from SOF-VIII-Hotel II Anguilla Holdings, L.L.C. (in such capacity, the "<u>DIP Lender</u>").  As of the Petition Date, the Debtors owed approximately $370,000,000 to SOF-VIII-Hotel II Anguilla Holdings, L.L.C. (in such capacity, the "<u>Prepetition Lender</u>") under its prepetition secured credit facility.

6.    In addition, the Debtors have filed a motion for authority to conduct a public auction and sale of substantially all their assets consistent with both § 363 and applicable Anguillan law.  That sale forms one of the cornerstones of the Debtors' proposed chapter 11 plan of reorganization (the "<u>Plan</u>"), which the Debtors anticipate filing (with the support of the Prepetition Lender and the DIP Lender) within the first days of these chapter 11 cases.

## B.    Corporate Structure

7.    Kor Duo is managed by its managing member, Bradford Korzen, and is the general partner of KDIP.  Barnes Bay, which is wholly-owned by KDIP, is the principal operating company of the Debtors.  Barnes Bay owns the The Viceroy Anguilla Resort and Residences ("Viceroy Anguilla" or the "Property"), which comprises the principal assets of the Debtors.  In addition, Barnes Bay holds several bank accounts in the United States and leases office space in Coral Gables, Florida to house its sales and marketing team.

## C.    Viceroy Anguilla

8.    The Viceroy Anguilla Resort and Residences is a luxury resort located on the Caribbean island of Anguilla in the British West Indies.  The resort is situated on 35 acres, with more than 3,200 feet of beach frontage along both Barnes and Meads Bays.  Viceroy Anguilla features 166 exclusive contemporary beachfront and blufftop villas, townhomes and resort residences.  The resort opened on a limited basis in late 2009 when Viceroy introduced 31 free-standing oceanfront villas, 34 ocean view resort residences, guest reception area and the Sunset Lounge and pool.  In 2010, the remaining 69 residences and 32 hotel rooms were completed along with the Viceroy Anguilla's 4 restaurants (Coba, Aleta, Bamboo Bar and Grill and The Half Shell), 2 additional community pools (Aleta and Bamboo), Sea Centre, 8,000 square foot oceanfront Spa, Wellness & Fitness Centre, boutique, Generation V Kid's Club and the Viceroy Anguilla Tennis Academy.  Viceroy Anguilla also features a state of the art 250,000 gallon reverse osmosis water purification plant, on-site central energy plant and roof-top rainwater collection systems.

9. Viceroy Anguilla's residences sell for $600,000 to $6,500,000. All residences are sold fully furnished and feature either private infinity or plunge pools. As of October 2010, buyers have agreed to purchase almost 70% of Viceroy's villas, townhomes and residences.

10. The Property is managed by Viceroy International Holdings, Ltd, through its wholly-owned subsidiary Viceroy Hotel Anguilla Ltd, as agent for the Debtors in accordance with the management agreement executed by Barnes Bay and KHM Viceroy Anguilla LLC (a wholly-owned subsidiary of Kor Hotel Management LLC), and subsequently assigned by KHM Viceroy Anguilla LLC to Viceroy Hotel Anguilla Ltd, a wholly-owned subsidiary of Viceroy International Holdings, Ltd.

11. As of December 31, 2010, the Debtors reported assets of approximately $530,993,428 and liabilities of $461,948,716 on their consolidated balance sheets. In 2010, the Property and related assets produced approximately $16,719,357 in consolidated revenues, and reported a consolidated net loss of $13,648,468 for the year ended December 31, 2010.

12. Additional background information on the Debtors, their businesses and the relief requested in this pleading can be found in the First Day Declaration.

**D.    Contracts to Sell Residential Properties**

13. As described in the First Day Affidavit and in more detail below, among the Debtors' principal activities are the marketing, development and sale of villas and condominiums at the Viceroy Anguilla (the "Residential Properties"). At the closing of sale of a Residential Property, the Debtors normally remit to their Lender, which holds a security interest and lien upon such Residential Property, the balance that is outstanding (the "Direct Secured Debt") with respect to direct advances previously made by the Lender allocable to that Residential Property, together with applicable interest and fees. The Debtors fund their business operations by, among

other things, collecting Homeowners' Association fees and other payments from the purchasers of Residential Properties.

14.	The Debtors believe that these sales of Residential Properties arising in the ordinary course of business and may continue without a court order pursuant to § 363(c)(1). Nevertheless, out of an abundance of caution, and to provide clarity and comfort to the Debtors' customers, title companies, title insurers and other parties in interest, however, the Debtors request entry of an order authorizing them to proceed with the sales of Residential Properties without the need for further court approval.

15.	In addition, to ensure quality customer service, the Debtors seek clarification that they may enter into new contracts for the sale of Residential Properties and close on such sales, without the expense and delay of requesting entry of an order approving each individual sale. To continue to close on the sale of Residential Properties, the Debtors must be able to transfer title to their customers free and clear of all liens, claims, encumbrances and other interests in such property. It would be particularly burdensome for all parties involved if the Debtors were required to seek prior court approval before closing each such sale transaction.

16.	In addition, the Debtors strive to make the home buying experience easy and seamless for their customers. To that end, the Debtors institute and adopt from time to time certain customer-related programs (the "Customer Programs") designed to incentivize new purchases, enhance customer satisfaction, sustain goodwill and ensure that the Debtors remain competitive. Among other things, the Customer Programs may include the Debtors' agreement to pay brokers' or other closing fees on their customers' behalf. Because the Debtors anticipate that these Bankruptcy Cases may create some apprehension for homebuyers presently under contract with respect to the Debtors' ability to honor their contractual obligations, the Debtors

seek clarification that they retain authority to honor their prepetition obligations and commitments to modify such contracts to address market conditions or other negotiating changes, as is necessary, and to provide appropriate incentives consistent with ordinary business practices.[3]

**III.**
**RELIEF REQUESTED**

17.     As set forth in detail above, it is essential to the continued operation of the Debtors' businesses that they are permitted to continue to consummate sales of Residential Properties in the ordinary course of business. The failure to continue with the standard closings of Residential Properties would severely impair the Debtors' ability to (i) reorganize and (ii) maximize the value of their estates for the benefit of their creditors.

18.     In view of the foregoing, the Debtors thus have determined, in the exercise of their sound business judgment, that the relief sought herein is necessary and appropriate under the circumstances. The Debtors specifically request that the Court (i) enter an order pursuant to §§ 105, 361, 363 and 1108 and (ii) approve the following procedures and grant the Debtors the necessary authorization with respect thereto:

---

[3] Among the documents that the Debtors may need to amend or modify are: (a) the Master Declaration of Covenants, Conditions, Easements and Restrictions of the Resort at Anguilla, registered in the Anguilla Land Registry on July 30, 2010 (the "Master Declaration"); (b) the Declaration of Covenants, Conditions, Easements and Restrictions of Resort Residences at Anguilla, registered in the Anguilla Land Registry on June 7, 2010 (the "Condominium Declaration," and together with the Master Declaration, the "Declarations"); (c) the Memorandum of Understanding, dated September 17, 2010, entered into between SOF-VIII-Hotel II Anguilla Holdings, LLC, as developer, and the Government of Anguilla, as amended (the "MOU"); (d) the Use Restriction Restrictive Agreement executed by Barnes Bay Development Ltd. and registered in the Anguilla Land Registry; (e) those certain access easements for twenty-two condominium units; (f) the Villas Management Agreement, for the management of the Villas at Anguilla Homeowners Association, Ltd.; (g) the Condominium Management Agreement, for the management of the Resort Residences at Anguilla Homeowners Association Ltd.; (h) the Rental Program Agreement to be entered into by Viceroy Hotel Anguilla Ltd. and certain purchasers of Residential Properties; (i) the Rental Program Summary, summarizing the terms of the rental program; the Unit Maintenance and Operation Agreement; (j) the Master Budget; (k) the Condominium Budget; and (l) the Villas Budget (collectively, the "Operative Documents").

(a)      The Debtors are authorized, pursuant to §§ 1108 and 363(c)(1), to continue selling Residential Properties in the ordinary course of business without the necessity of further hearing or order of the Court. Notwithstanding the foregoing, the Debtors shall seek prior court approval of any proposed sale of a Residential Property for which the proposed sale price is less than the aggregate amount of Direct Secured Debt associated with such property.

(b)      All sales of Residential Properties by the Debtors shall be free and clear of any and all liens, claims, interests and encumbrances and other interests, pursuant to § 363(f), with any perfected liens attaching to the proceeds of such sales in the same force, effect and priority as such liens had immediately prior to the closing of such sale, subject to the rights and defenses of the Debtors and any party in interest.

(c)      As adequate protection of the Lender's interest in the Residential Properties, pursuant to §§ 361 and 363(e), the Debtors shall be authorized and required to remit payment to the Lender at closing in an amount equal to the Direct Secured Debt in connection with any sale property.

(d)      The foregoing payments of adequate protection shall not constitute any finding by the Court, or any admission by the Debtors, with respect to the validity, priority or extent of any related Direct Secured Claim, as to which any and all rights shall be preserved.

(e)      The Debtors shall be authorized to make modifications as are necessary to the Operative Documents for the sale and marketing of Residential Properties.

(f)      The Debtors shall be authorized to market Residential Properties through the Customer Programs in the ordinary course of the Debtors' business and to incur the expenses associated therewith.

## IV.
## BASIS FOR RELIEF

**A.**      **The Debtors are Authorized to Continue to Sell Residential Properties In The Ordinary Course of Business**

19.      As described above, continuation of the Debtors' core business, the development, construction and sale of Residential Properties, is critical to their efforts to reorganize. The continuation of such business activities is consistent with the applicable provisions of the Bankruptcy Code. Pursuant to §§ 1107 and 1108, the Debtors, as debtors-in-possession, are

authorized and empowered to operate their business and manage their affairs in the ordinary course of business. 11 U.S.C. §§ 1107 and 1108. Likewise, § 363(c)(1) specifically authorizes the Debtors to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing." 11 U.S.C. §363(c)(l); *see also In re Millard Dev. Corp.*, No. 90-27588-BKC-AJC, 2004 WL 1347049, at *1 (Bankr. S.D. Fla. Apr. 16, 2004) ("contracts entered into post-petition in the ordinary course of business do not require court approval"); *Matter of D'Lites of Am., Inc.*, 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989) ("Section 363(c)(1) allows a debtor-in-possession to use estate property in the ordinary course of business without a prior hearing . . . so that the debtor-in-possession can exercise reasonable judgment in carrying out its everyday affairs and can avoid excessive judicial involvement in its reorganization.").

20.     To the extent the Bankruptcy Code imposes restrictions on a debtor's ordinary course business operations, a bankruptcy court has the authority to grant the relief requested herein pursuant to § 363(b), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1). Although § 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate outside the ordinary course of business, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See In re Martin*, 91 F.3d 389, 394-95 (3d. Cir. 1996) (requiring "legitimate business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 799 (Bankr. D. Del. 2007) (applying sound business justification standard in authorizing modification of employee bonus compensation plan); *In re Network Access Solutions, Corp.*, 330 B.R. 67,74

(Bankr. D. Del. 2005); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169,176 (D. Del. 1991).

21.     In these chapter 11 cases, it is clear that sufficient business justification exists for the Debtors to continue to close on sales of Residential Properties, as well as to continue to contract for the sale of Residential Properties on a postpetition basis.  One of the Debtors' core business activities is the sale of Residential Properties, and the Debtors must continue to sell Residential Properties in order to ensure sufficient cash flow during these Bankruptcy Cases. Additionally, allowing the Debtors to continue to sell their Residential Properties is in the best interests of the Debtors' estates, creditors and all parties in interest in these cases because it is the Debtors' primary method to generate cash to pay their creditors.

22.     For these reasons, the Debtors submit that the relief requested herein is proper because the sales of Residential Properties are (i) conducted in the ordinary course of the Debtors' business and (ii) based on the Debtors' sound business judgment.

**B.     The Debtors Should be Authorized to Sell Residential Properties Free and Clear of Liens, Claims, Encumbrances and Other Interests**

23.     Pursuant to § 363(f), a debtor may sell property free and clear of any interest in such property of an entity other than the estate, only if—

> (1)   applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
> (2)  such entity consents;
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)  such interest is in *bona fide* dispute; or
> (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because § 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of Residential Properties.

*See Folger Adam Sec. Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d. Cir. 2000) (discussing how § 363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims and interests if "any one of [the] five prescribed conditions" is met); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr, D. Del. 2002) (stating that a court may approve a sale "free and clear" provided at least one of the subsections of § 363(f) is met); *see also In re DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del. 2004) (providing that the debtor could sell the subject property free and clear of liens if it met the requirements of a single subsection of § 363(f)).

24.     With respect to each current or prospective lien, claim, encumbrance or other interest in the Debtors' real estate assets, the Debtors can satisfy at least two, if not more of these elements, as the Lender consents to the continued sale of Residential Properties, which will inure to the benefit of all stakeholders by reducing the total amount of the Debtors' secured debt, and, in each instance, the sale of the Real Property Interest will exceed the amount of the Direct Secured Debt secured by such Real Property Interest.

## V.
## NOTICE

25.     No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.  Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Prepetition Lender and the DIP Lender, (iii) the Debtors' 30 largest unsecured creditors on a consolidated basis, (iv) the Residence Purchasers (as defined in the First Day Declaration), (v) the Securities and Exchange Commission, (vi) the Internal Revenue Service, and (vii) all other parties requesting notice in these proceedings pursuant to Bankruptcy Rule 2002.

# VI.
## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) granting the Motion, and (ii) granting such other and further relief as the Court deems appropriate.

Dated: March 17, 2011
      Wilmington, Delaware

By: */s/ Paul N. Heath*
    Paul N. Heath (No. 3704)
    Chun I. Jang (No. 4790)
    **RICHARDS, LAYTON & FINGER, P.A.**
    One Rodney Square
    920 North King Street
    Wilmington, DE 19801
    Telephone: 302.651.7700
    Facsimile 302.651.7701

        **-and-**

    Charles R. Gibbs (pro hac vice motion pending)
    Michael P. Cooley (pro hac vice motion pending)
    Sara J.L. Wahl (pro hac vice motion pending)
    **AKIN GUMP STRAUSS HAUER & FELD LLP**
    1700 Pacific Avenue, Suite 4100
    Dallas, Texas 75201
    Telephone: 214.969.2800
    Facsimile: 214.969.4343

    **PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

**EXHIBIT A**

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

..............................................................x
In re:                                              :     Chapter 11
                                                    :
Barnes Bay Development, Ltd., *et al.*,[1]          :     Case No. 11- _____
                                                    :
                    Debtors.                        :
..............................................................x

## ORDER (I) AUTHORIZING THE SALE OF RESIDENTIAL PROPERTIES AND (II) AUTHORIZING SATISFACTION OF CERTAIN PREPETITION OBLIGATIONS IN CONNECTION WITH SUCH SALES

This matter coming before the Court on the *Motion for an Order (i) Authorizing the Sale of Residential Properties and (ii) Authorizing Satisfaction of Prepetition Obligations in Connection with Such Sales* (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (iv) notice of the Motion and the Hearing was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is necessary and essential for the Debtors' reorganization and such relief is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

---

[1] The Debtors in these cases, along with the last four digits of the employer identification number for each of the Debtors, are Kor Duo Investment Partners II, LP (xx-xxx9891), Kor Duo II, LLC (xx-xxx5207) and Barnes Bay Development, Ltd. Barnes Bay Development, Ltd., is a company formed under the laws of Anguilla and, accordingly, does not have an employer identification number.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to §§ 105, 361, 363 and 1108,[3] the Debtors are authorized to continue selling Residential Properties in the ordinary course of business in accordance with the following procedures:

> (a)     The Debtors are authorized, pursuant to §§ 1108 and 363(c)(1), to continue selling Residential Properties in the ordinary course of business without the necessity of further hearing or order of the Court. Notwithstanding the foregoing, the Debtors shall seek prior court approval of any proposed sale of a Residential Property for which the proposed sale price is less than the aggregate amount of Direct Secured Debt associated with such property.

> (b)     All sales of Residential Properties by the Debtors shall be free and clear of any and all liens, claims, interests and encumbrances and other interests, pursuant to § 363(f), with any perfected liens attaching to the proceeds of such sales in the same force, effect and priority as such liens had immediately prior to the closing of such sale, subject to the rights and defenses of the Debtors and any party in interest.

> (c)     As adequate protection of the Lender's interest in the Residential Properties, pursuant to §§ 361 and 363(e), the Debtors shall be authorized and required to remit payment to the Lender at closing in an amount equal to the Direct Secured Debt in connection with any sale property.

> (d)     The foregoing payments of adequate protection shall not constitute any finding by the Court, or any admission by the Debtors, with respect to the validity, priority or extent of any related Direct Secured Claim, as to which any and all rights shall be preserved.

> (e)     The Debtors shall be authorized to make modifications as are necessary to the Operative Documents for the sale and marketing of Residential Properties.

> (f)     The Debtors shall be authorized to market Residential Properties through the Customer Programs in the ordinary course of the Debtors' business and to incur the expenses associated therewith.

---

[3] Unless otherwise noted, section (§) references herein are to the Bankruptcy Code.

3. The Debtors and any other authorized intermediary participating in any postpetition closing of sales of Residential Properties are authorized to transfer title, deed property and take any other actions necessary to transfer ownership to the buyer of Residential Properties.

4. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these cases and upon any chapter 7 trustee appointed in the event of a subsequent conversion of these cases to cases under chapter 7.

5. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Dated: _____, 2011
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE