

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                              :   Chapter 11
                                                    :
Barnes Bay Development Ltd., *et al.*,[1]           :   Case No. 11-10792 (PJW)
                                                    :
                    Debtors.                        :   Re: Docket No. 9
---------------------------------------------------------------x

### INTERIM ORDER (A) AUTHORIZING DEBTORS (i) TO OBTAIN POSTPETITION FINANCING AND (ii) TO UTILIZE CASH COLLATERAL; (B) GRANTING LIENS AND PROVIDING SUPER PRIORITY CLAIMS; (C) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES; AND (D) PRESCRIBING THE FORM AND MANNER OF NOTICE AND SETTING THE TIME FOR THE FINAL HEARING

This matter came before this Court on the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (the "Debtors") requesting that this Court enter interim and final orders authorizing the Debtors to (i) enter into a senior secured superpriority term loan in the maximum principal amount of $5,000,000 (the "DIP Loan") on an emergency interim basis and final basis, substantially on the terms and conditions set forth in the Commitment Letter; (ii) enter into the Commitment Letter and to perform such other and further acts as may be necessary or appropriate in connection with the Commitment Letter; (iii) grant the DIP Lender, subject only to the Carve-Out, superpriority administrative claim status pursuant to §§ 364(c)(1), 364(c)(2) and 364(d), in respect of all DIP Obligations; (iv) use, in accordance with §§ 361, 363(c)(2) and 363(e) and the Interim Budget, the Pre-Petition Collateral, including the Cash Collateral (as those terms are defined herein), and to provide certain protections to the Prepetition Lender with respect to any diminution in the value of the Pre-Petition Collateral,

---

[1] The Debtors in these cases, along with the last four digits of the employer identification number for each of the Debtors, are Kor Duo Investment Partners II, L.P. (xx-xxx9891), Kor Duo II, LLC (xx-xxx5207) and Barnes Bay Development Ltd. Barnes Bay Development Ltd., is a company formed under the laws of Anguilla and, accordingly, does not have an employer identification number.

[2] Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in the Motion. Unless otherwise noted, section (§) references herein are to the Bankruptcy Code.

EAST\44366637.3
RLF1 3916921v. 3

including the Cash Collateral resulting from the implementation of the DIP Loan, the liens and security interests sought herein to secure the DIP Loan, the use, sale or lease of the Pre-Petition Collateral, including the Cash Collateral or the imposition of the automatic stay pursuant to § 362; (v) schedule, pursuant to Bankruptcy Rule 4001, a preliminary expedited hearing on the Motion and authorize the Debtors to obtain credit under the terms contained in the Commitment Letter and to utilize Cash Collateral from the entry of the Interim Order through the conclusion of the final hearing on the Motion to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates; and (vi) schedule, pursuant to Bankruptcy Rule 4001, the Final Hearing to consider entry of the Final Order authorizing the Debtors, on a final basis, to borrow the balance of the DIP Loan and continue to use Cash Collateral.

This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable as of the Petition Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to § 364 and Bankruptcy Rule 4001(c), and objections, if any, having been withdrawn or resolved or overruled by the Court,

THE MOTION IS GRANTED ON AN INTERIM BASIS, AND THE COURT HEREBY FINDS THAT:

A. On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Court has authorized the joint administration of these Cases for procedural purposes. The Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to §§ 1107 and 1108.

B. The Court has jurisdiction over the Debtors, their estates, these cases and this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Determination of the Motion constitutes a

core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. No trustee, examiner or official committee of unsecured creditors has been appointed in these cases.

D. Pursuant to that certain Second Amended and Restated Loan and Security Agreement, dated July 17, 2009, among Barnes Bay Development, Ltd. ("Barnes Bay"), Citicorp North America, Inc. as Lender ("Citicorp") and Citigroup Global Markets Reality Corp. as Administrative and Collateral Agent ("Citigroup") (the "Senior Credit Agreement" and together with all "Loan Documents" (as defined in the Senior Loan Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Pre-Petition Credit Agreement"), Citicorp made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of Barnes Bay thereunder from time to time;

E. SOF-VIII-Hotel II Anguilla Holdings, LLC (the "Prepetition Lender") has acquired the loans made pursuant to the Pre-Petition Credit Agreement (and all security securing the loans made thereunder) from Citicorp and Citigroup;

A. Pursuant to the Pre-Petition Credit Agreement, Barnes Bay was, as of the Petition Date, indebted to the Prepetition Lender on account of the Pre-Petition Credit Agreement of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $370,000,000 (the "Prepetition Secured Claim").

F. Pursuant to the Pre-Petition Credit Agreement, Barnes Bay granted to and/or for the benefit of the Citigroup and Citicorp, and as subsequently assigned, transferred and acquired by the Prepetition Lender, first priority and continuing pledges, liens and security interests (the

EAST\44366637.3
RLF1 3916921v. 3

3

"Prepetition Liens") in and upon substantially all of Barnes Bay's property and assets whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral"); and

G. Even if the Debtors were authorized to use all available Cash Collateral upon a showing of adequate protection of the interests therein of the Prepetition Lender, such Cash Collateral would be insufficient to provide the Debtors with the working capital necessary to prevent immediate and irreparable harm to the Debtors, their properties and their estates.

H. The Debtors are unable to obtain unsecured credit as an administrative claim allowable under § 503(b)(1) sufficient to finance the operations of the Debtors' business. Except as provided below, the Debtors are unable to obtain credit allowable under §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by the DIP Lender.

I. Consequently, an immediate need exists for the Debtors to obtain the DIP Loan and access Cash Collateral in order to minimize disruption to and avoid the termination of their business operations, and to enhance the possibility of a successful reorganization.

J. For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined by § 363(a) and shall include and consist of, without limitation, all cash proceeds of the Postpetition Collateral (as defined below) and Prepetition Collateral in which the Prepetition Lender holds an interest.

K. For purposes of this Order, the term "Postpetition Collateral" means the Prepetition Collateral and any real and personal, tangible and intangible property and assets acquired by the Debtors on or after the Petition Date.

L. In order to prevent immediate and irreparable harm to the estates pending the Final Hearing, the Debtors need to incur the DIP Loan on an interim basis as provided herein and also need continued use of Cash Collateral as provided herein.

M. The DIP Lender has indicated a willingness to extend the DIP Loan, but only on the terms and conditions set forth in this Order and the Commitment Letter. Under the circumstances of these cases, the terms and conditions of this Order are a fair and reasonable response to the Debtors' request to incur the DIP Loan, and the entry of this Order is in the best interests of the Debtors' estates and their creditors. Such terms and conditions have been negotiated in good faith and at arms' length, and the DIP Loan is being extended in good faith, as that term is used in § 364(e).

N. The notice provided by the Debtors of the Motion, the interim hearing on the Motion, and the entry of this Order satisfy the requirements of §§ 102 and 364, Bankruptcy Rules 2002, 4001(c) and 9014 and Local Rule 9014-1(m) and was otherwise sufficient and appropriate under the circumstances.

WHEREFORE, IT IS HEREBY ORDERED THAT:

1. <u>Authorization to Incur the DIP Loan</u>.

    (a) <u>Approval of Postpetition Documents</u>. The Debtors are hereby authorized and directed to (i) execute the Commitment Letter, including all documents that the DIP Lender deems necessary to implement the transactions contemplated by the Commitment Letter; and (ii) perform each of their obligations under, limit their expenditures, and comply with all of the terms and provisions of the Commitment Letter and this Order pursuant to the terms and conditions of the DIP Loan Agreement, the Interim Budget and this Interim Order. Upon execution and delivery thereof, the Commitment Letter shall constitute valid and binding obligations of the Debtors, enforceable in accordance with their terms.

(b) _Permitted Uses of DIP Loan_. The Debtors are hereby authorized to incur the DIP Obligations and close the DIP Loan solely in accordance with and pursuant to the terms and provisions of the Interim Budget, this Order and the Commitment Letter. Notwithstanding anything to the contrary in this Paragraph 1(b), however, the Debtors are hereby authorized, subject to the Interim Budget, to incur the DIP Loan to pay the Carve-Out when due and payable. If the DIP Lender advances monies to the Debtors and the Debtors use such monies other than in accordance with the terms and provisions of this Order or the Commitment Letter, such advances shall be considered monies advanced under the DIP Loan for purposes of this Order.

2. _Procedure for Delivery of Cash Proceeds_.

(a) _Account Debtors_. Without further order of court, the DIP Lender may direct the Debtors to, or the DIP Lender may directly, instruct all account debtors to make payments directly into the DIP Lender's designated account or such other accounts satisfactory to the DIP Lender, in which event all such cash proceeds shall be applied to the DIP Loan in accordance with Paragraph 6(a) of this Order. The automatic stay is modified to permit such actions.

(b) _Cash Proceeds in DIP Lender's Possession_. The DIP Lender is authorized to collect upon, convert to cash proceeds and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Postpetition Collateral or proceeds of Postpetition Collateral.

(c) _Deposit Accounts_. The DIP Lender shall control all deposits in accounts that are subject to any lockbox, blocked account, account control or similar agreements. All advances from the DIP Loans shall be deposited into the control account as specified by the DIP Lender.

3. <u>Superpriority Administrative Expense Status; DIP Liens</u>. The DIP Claims are hereby granted superpriority administrative expense status under § 364(c)(i) in favor of the DIP Lender. In addition, the DIP Lender is hereby granted, pursuant to §§ 364(c)(2), 364(c)(3) and 364(d), the security interests in and liens on the Post-Petition Collateral (the "<u>DIP Liens</u>") to secure the DIP Loan and DIP Claims. The DIP Liens are and shall be first priority liens *pari passu* with the Prepetition Liens pursuant to § 364(d) in and on the Post-Petition Collateral and shall be *pari passu* with the Pre-Petition Senior Liens and senior to the Post-Petition Replacement Liens and upon entry of this Interim Order all possessory collateral held by the Prepetition Lender or its agent shall be deemed to have been transferred to the DIP Lender and all lockbox, blocked account and similar agreements shall be deemed assigned to the DIP Lender. The DIP Liens shall not be subject to any security interest or lien which is avoided and preserved under § 551, and shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of these cases. Notwithstanding the foregoing, the Debtors are authorized and directed to execute and deliver to the DIP Lender such financing statements, mortgages, instruments and other documents as the DIP Lender may deem necessary or desirable from time to time.

4. <u>Carve-Out Terms</u>. The liens and super priority claims granted to the DIP Lender with respect to the DIP Facility shall be subject and subordinate to a carve-out of the DIP Liens in an amount equal to the sum of (a) $850,000 for the allowed fees and expenses of the respective retained professionals of the Debtors and any statutory committee, whether incurred prior to or following an Event of Default, (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), and (c) any fees payable to the Clerk of the Bankruptcy Court and any

agent thereof (collectively, the "Carve-Out"), subject to the rights of the DIP Lender, and any other party in interest to object to the award of any such fees and expenses.

5. Termination of Right To Incur the DIP Loan.

(a) Termination Date. Unless extended by the Court upon the written agreement of the DIP Lender, the Debtors' authorization to incur the DIP Obligations and use Cash Collateral pursuant to this Order will automatically terminate, and the DIP Lender's commitments shall automatically terminate, upon the earlier to occur (the "Termination Date") of (i) an Event of Default without further notice or order of Court and (ii) failure of the Debtors to obtain the entry of the Final Order on or before forty-five (45) days after the Petition Date.

(b) Rights Upon Termination. Upon the Termination Date, without further notice or order of the Court, at the DIP Lender's election, (i) the DIP Loan shall be immediately due and payable; (ii) the DIP Lender shall be entitled to apply to or set off against the outstanding balance of the DIP Loan any Cash Collateral in the DIP Lender's possession or control in accordance with Paragraph 6(a) of this Order until such DIP Loan is indefeasibly and finally paid in full; and (iii) the Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the DIP Loan in accordance with Paragraph 1(b) of this Order until such DIP Loan is indefeasibly and finally paid in full. On the third Business Day after the Termination Date, but subject in each instance to Paragraph 4 of this Order, (x) effective upon entry of a Final Order, at the DIP Lender's election this Court will conduct a § 363 sale on not less than 20 days' notice of all or such part of the Post-Petition Collateral designated by the DIP Lender, in its sole discretion, and on terms acceptable to the DIP Lender, in its sole discretion, with all proceeds to be used to pay the DIP Loan in the manner set forth in the DIP Loan Agreement (and with the DIP Lender preserving the right to credit bid in such sale, whether

conducted under § 363 or pursuant to a plan); (y) at the DIP Lender's election, without further order of the Court, the DIP Lender shall have automatic and immediate relief from the automatic stay with respect to the Post-Petition Collateral (without regard to the passage of time provided for in Bankruptcy Rule 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Commitment Letter, this Order and applicable nonbankruptcy law with respect to the Post-Petition Collateral; and (z) at DIP Lender's election, the Debtors shall be authorized and directed (subject to notice requirements in these cases, to the extent applicable) to execute a deed in lieu of foreclosure of all or part of the Post-Petition Collateral, in form and substance satisfactory to the DIP Lender, in its sole discretion, and otherwise surrender the Post-Petition Collateral and to cooperate with the DIP Lender in the exercise of its rights and remedies under the Commitment Letter, this Order and applicable nonbankruptcy law with respect to the Post-Petition Collateral; *provided, however*, that (a) during the three Business Day period following the Termination Date, the Debtors shall have the right to seek entry of an order determining that an Event of Default has not occurred; provided that the Debtors may not use Cash Collateral during such three Business Day period unless such use is agreed to in writing by the DIP Lender or is for payment of amounts authorized under the Carve-Out, and the DIP Lender shall have no obligation to advance the DIP Loan to the Debtors; and (b) solely for purposes of determining if the DIP Loan has been paid in full, the value of any deed in lieu accepted by the DIP Lender shall be determined on the date of acceptance by a certified financial appraiser selected by the DIP Lender, in its sole discretion.

(c) <u>State and Foreign Law Restrictions</u>. Effective upon entry of a Final Order providing for such relief (if authorized), in connection with any exercise of rights and remedies by the DIP Lender with respect to the DIP Loan, including any credit bid at any sale of the

Collateral under § 363, the Debtors hereby expressly waive their rights under any "single action," collateral first, anti-deficiency, or other rules or restrictions under state or Anguillan law, and this Court hereby finds and concludes that any all such rules and restrictions with respect to the DIP Loan are superseded by this Order. If for any reason the waivers, findings and conclusions in this Paragraph 5(c) are invalidated by any court of competent jurisdiction after the entry of this Order, the DIP Lender's covenants and agreements under this Paragraph 5(c) shall immediately cease, and the DIP Lender shall be entitled to exercise its rights and remedies with respect to the DIP Loan in the same manner it would have as if DIP Lender had never exercised any of its rights and remedies under the Commitment Letter, this Order or applicable nonbankruptcy law.

6. <u>Additional Consideration For the DIP Loan</u>. As additional consideration for the extension of the DIP Loan:

(a) <u>Application of Cash Proceeds</u>. The DIP Lender, at its election, is authorized to apply all cash proceeds (and all monies received by the DIP Lender under Paragraph 2 of this Order) now or hereafter coming into the DIP Lender's possession or control in accordance with the terms of the DIP Loan Agreement. All such applications shall be final and not subject to challenge by any person, including any trustee, subject only to the right of parties in interest to object solely to applications of attorneys' fees and expenses under and in accordance with Paragraph 7(a) of this Order. Any amounts disgorged in connection with any such objection or determination shall be first applied to repay other debts under the DIP Loan Agreement in accordance with this Paragraph 6(a).

(b) <u>Prohibition Against Use of Cash Proceeds</u>. The Debtors will not use or seek to use Cash Collateral unless, in addition to the satisfaction of all requirements of § 363 for

the use of such Cash Collateral, (i) the DIP Lender has consented to any order authorizing the use of Cash Collateral; (ii) at the time of the entry of such an order, there is no debt under the DIP Loan outstanding, and no commitment or other obligation of the DIP Lender to extend additional monies under the DIP Loan Agreement; or (iii) such Cash Collateral is are first used to immediately and indefeasibly pay the DIP Obligations under the DIP Loan in cash in full.

(c)   Prohibition Against Additional Debt. The Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the DIP Liens, or which is given superpriority administrative expense status under § 364(c)(1), unless, in addition to the satisfaction of all requirements of § 364 for the incurrence of such debt (i) the DIP Lender has consented to any order authorizing the incurrence of additional debt; (ii) at the time of the entry of such an order, there are no monies under the DIP Loan Agreement outstanding, and no obligation of the DIP Lender to extend additional monies under the DIP Loan Agreement; or (iii) such credit or debt is first used to immediately and indefeasibly pay the DIP Loan in cash in full.

(d)   No Surcharge. Effective upon entry of the Final Order, at no time during the cases shall the surcharge provisions of § 506(c), the enhancement of collateral provisions of § 552, or any other legal or equitable doctrine (including unjust enrichment) be imposed upon the DIP Lender or any of the Post-Petition Collateral for the benefit of any party in interest, including the Debtors, any statutory committee creditors, any of the professionals subject to the Carve-Out or any trustee.

(e)   Right to Credit Bid. Subject to the entry of a final order and to the extent allowed under applicable law, pursuant to § 363(k), the DIP Lender shall have the right to use the DIP Loan, the Prepetition Secured Claim or any part thereof to credit bid with respect to any

bulk or piecemeal sale of all or any portion of the Prepetition Collateral or Postpetition Collateral under § 363(b).

(f) <u>Plan</u>. Effective upon entry of a Final Order providing for such relief (if authorized), unless the DIP Lender consents thereto, no order shall be entered confirming a plan in any of these cases unless such order provides for payment in full in cash of all of the DIP Obligations on the effective date thereof, together with releases, exculpations, waivers and indemnification acceptable to the DIP Lender, in its sole discretion.

7. <u>Use of Cash Collateral</u>. Upon entry of this Interim Order, to the extent the Debtors have Cash Collateral on hand as of the Petition Date (the "<u>Petition Date Cash</u>"), the Prepetition Lender has consented to the Debtors' use of such Cash Collateral up to the amount of the Petition Date Cash for the operation of their businesses which, when taken together with the proceeds of the DIP Loan, shall be limited to expenditures in accordance with the Budget, the Commitment Letter and this Interim Order.

8. <u>Adequate Protection of Prepetition Lender</u>. As adequate protection of the Prepetition Lender's interest in the Prepetition Collateral on account of the Debtors' use of Cash Collateral and any decline in the value of the Prepetition Collateral resulting from the imposition of the automatic stay or the Debtors' use, sale or other disposition of Cash Collateral, the Prepetition Lender shall receive the following:

(a) <u>Post-Petition Replacement Liens</u>. The Debtors hereby grant, assign and pledge to the Prepetition Lender post-petition replacement security interests and liens, excluding for purposes of the Interim Order any Avoidance Actions (as defined below) and the proceeds thereof (the "<u>Post-Petition Replacement Liens</u>"), subject to the Carve-Out, on all of the Debtors' receipts following entry of the Interim Order. Upon entry of the Interim Order,

the Post-Petition Replacement Liens shall be valid, perfected and enforceable without further filing, noticing or recording of any document or instrument or the taking of any further actions. The automatic stay is hereby modified to permit the Prepetition Lender and the DIP Lender to take all necessary or appropriate action, whether in the United States or Anguilla, to perfect the Post-Petition Replacement Liens and the DIP Liens, respectively, or to maintain the perfection of the Prepetition Liens.

(b) <u>Super-Priority Claim</u>. The Prepetition Lender is hereby granted a super-priority claim (the "<u>Adequate Protection Super-Priority Claim</u>") that shall have priority over all other claims under § 364(c)(1), 503(b) and 507(b) and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to § 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114, subject only to the Carve-Out. The Adequate Protection Super-Priority Claim shall, subject to the Carve-Out, be payable from and have recourse to all Prepetition Collateral and Postpetition Collateral, including, subject to entry of a final order, the proceeds of claims or causes of action belonging to the Debtors and arising under chapter 5 of the Bankruptcy Code ("<u>Avoidance Actions</u>").

(c) <u>Right to Credit Bid</u>. Subject to the entry of a final order and to the extent allowed under applicable law, the Prepetition Lender shall have the right to credit bid the allowed amount of the Prepetition Secured Claim in connection with any sale of all or substantially all of the Prepetition Collateral, including any sale conducted pursuant to § 363 or included as part of any plan of reorganization or liquidation subject to confirmation under

§ 1129(b)(2)(A)(iii). Nothing herein shall affect or limit the Lender's rights under applicable non-bankruptcy law, including, but not limited to, any right to credit bid the Lender's claim in any auction or proceeding conducted under otherwise applicable non-bankruptcy law.

(d) <u>Additional Protection</u>. The Prepetition Lender reserves the right to petition the Court for such additional adequate protection of the Prepetition Liens as the Prepetition Lender may reasonably require or for relief from or modification of the automatic stay under § 362.

9. <u>Reimbursement of Fees and Expenses</u>. Upon receiving written demand therefor (together with backup documentation supporting such request), the Debtors shall (i) pay or reimburse the Lender for all reasonable out-of-pocket costs and expenses incurred in connection with the negotiation, preparation, execution and delivery of, and any amendment, supplement, waiver or modification to, the Commitment Letter, the Interim Order, the Final Order and any other documents prepared in connection herewith or therewith, their monitoring of and involvement and participation in these chapter 11 cases, and the consummation and administration of the transactions (including the reasonable expenses of the Lender's due diligence investigation including Anguillan counsel, third party appraisers, advisors, consultants, lien and title investigations, and collateral monitoring services) contemplated hereby and thereby, including the reasonable fees and disbursements of advisors and one lead outside counsel and one local outside counsel for each applicable jurisdiction, (ii) pay or reimburse the Lender for all reasonable costs and expenses incurred in connection with the enforcement or preservation of any rights under the Commitment Letter, the Interim Order, or the Final Order, and any such other documents related thereto, including, without limitation, the reasonable fees and disbursements of their respective advisors and one lead outside counsel and one local outside

counsel for each applicable jurisdiction, (including the fees and disbursements of advisors to counsel but no more than one financial advisor) and the reasonable fees and disbursements incurred in obtaining relief from the automatic stay under the Bankruptcy Code or other stay or injunction restricting Lender's enforcement activities and proceedings, conducting the sale of the real property located at the Property pursuant to the laws of Anguilla, (iii) pay, indemnify and hold harmless the Lender from and against any and all recording and filing taxes, assessments and fees and any and all liabilities with respect to, or resulting from any delay in paying, stamp, excise and other similar taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation or administration of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, the Commitment Letter, the Interim Order, or the Final Order, and any such other documents related thereto, and (iv) pay, indemnify and hold harmless the Lender (and its directors, trustees, officers, employees, affiliates, controlling persons, agents, attorneys, professionals, advisors, successors and assigns) from and against, any and all other actual liabilities, obligations, losses, damages, penalties, actions, judgments, suits, and related reasonable and documented out of pocket costs, expenses or disbursements of any kind or nature whatsoever (other than for Lender's gross negligence or willful misconduct as determined by a final and non-appealable order of the Court) including the reasonable fees and disbursements of one lead outside counsel and one local outside counsel for each applicable jurisdiction (including the reasonable fees and disbursements of advisors to counsel, but no more than one financial advisor) with respect to the execution, delivery, enforcement, performance and administration of the Commitment Letter, the Interim Order, or the Final Order, and any such other documents related thereto (all the foregoing in this clause (v), collectively, the "Indemnified Liabilities");

*provided, however,* that the Debtors shall not have any obligation hereunder to the Lender with respect to Indemnified Liabilities arising from the fraudulent actions, gross negligence, bad faith or willful misconduct of Lender (or any of its directors, trustees, officers, employees, affiliates, controlling persons, agents, attorneys, professionals, advisors, successors and assigns) as determined by a final and non-appealable order of the Bankruptcy Court.

10. <u>Restrictions on the Debtors</u>. Other than the Carve-Out and the Permitted Priority Liens, no claim or Lien having a priority superior or *pari passu* with those granted by this Interim Order to the Prepetition Lender or the DIP Lender shall be granted by any Debtor, while any portion of the DIP Loan, adequate protection or the commitment thereunder remains outstanding without the written consent of the DIP Lender and the Prepetition Lender. Except as expressly permitted by the DIP Loan Agreement and this Interim Order, the Debtors will not, at any time during these chapter 11 cases, grant mortgages, security interests or liens in the Post-Petition Collateral or any portion thereof to any other parties pursuant to § 364(d) or otherwise.

11. <u>Miscellaneous Provisions</u>.

(a) <u>Notice of and Objections to Postpetition Expenses</u>. The DIP Lender shall provide summaries of all invoices with respect to the DIP Lender's attorneys' fees and related costs and expenses asserted that are incurred after the entry of this Order to (i) DLA Piper LLP (US), Attn: Richard A. Chesley; 203 North LaSalle Street, Suite 1900, Chicago, IL 60601; (ii) Akin Gump Strauss Hauer & Feld LLP, Attn: Charles R. Gibbs, 1700 Pacific Avenue, Suite 4100, Dallas, TX 75201; (iii) the Office of the United States Trustee, Attn: Richard L. Schepacarter, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox 35, Wilmington, Delaware, 19801 and (iv) counsel for any statutory committee. Any such party may object to the reasonableness of any such fees, costs and expenses; however, any such

objection shall be forever waived and barred unless, (i) the objection is filed with the Court and served upon the DIP Lender and its counsel within 30 days of receipt of the summary of the invoice to which the objection relates and (ii) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses to the extent practicable based upon documentation provided by the DIP Lender. Any hearing on an objection to the fees, costs and expenses set forth on any invoice summary shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. The disallowance of any such fees and expenses shall not affect the DIP Lender's right to collect such amounts from any person or entity other than the Debtors.

(b) <u>Force and Effect of Postpetition Documents</u>. To the extent there is any conflict among the Motion, the Commitment Letter and the terms of this Order, this Order shall govern and control.

(c) <u>Financial Information</u>. The Debtors are hereby directed to deliver to the DIP Lender such financial and other information concerning the business and affairs of the Debtors and any of the Post-Petition Collateral as may be required pursuant to the Commitment Letter and/or as the DIP Lender shall reasonably request from time to time. The Debtors are also directed to allow the DIP Lender access to the premises in accordance with the terms of the DIP Loan Agreement for the purpose of enabling the DIP Lender to inspect and audit the Post-Petition Collateral and the Debtors' books and records.

(d) <u>No Waiver</u>. The DIP Lender's failure, at any time or times hereafter, to require strict performance by the Debtors (or by any trustee) of any provision of this Order or the

Commitment Letter shall not waive, affect or diminish any right of the DIP Lender, as the case may be, thereafter to demand strict compliance and performance therewith. No delay on the part of the DIP Lender in the exercise of any right or remedy under this Order, the Commitment Letter, the Bankruptcy Code, or applicable nonbankruptcy law shall preclude any other or further exercise of any right or remedy. The DIP Lender shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Commitment Letter, the Bankruptcy Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of such party, and directed to the Debtors.

(e) "Responsible Person." Effective upon entry of a Final Order providing for such relief (if authorized), by executing the Commitment Letter or taking any actions pursuant to this Order, the DIP Lender shall not be deemed to be (i) in control of the operations or liquidation of the Debtors or (ii) acting as a "responsible person" with respect to the operation, management or liquidation of the Debtors.

12. Binding Effect.

(a) Order. This Order shall be binding on all parties in interest in the cases and their respective successors and assigns, including any trustee, except that any trustee shall have the right to terminate this Order after notice and hearing. If, in accordance with § 364(e), this Order does not become a final nonappealable order, if a trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect (a) the stipulations, representations and findings contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby with respect to any debts incurred under the DIP Loan

Agreement prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits incurred prior to the effective date of such termination or subsequent order shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein, with respect to the DIP Loan. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

(b) <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the cases (i) confirming any chapter 11 plan; (ii) converting the cases to cases under chapter 7; or (iii) solely to the extent authorized by applicable law, dismissing these chapter 11 cases. The terms and provisions of this Order, including the rights granted to the DIP Lender under §§ 364(c) and (d), shall continue in full force and effect until all of the DIP Loan is indefeasibly and finally paid in cash in full and discharged.

13. <u>Notice of Final Hearing</u>. The Final Hearing is scheduled for April 12, 2011, at 9:30 a.m. (EST). The Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on the DIP Lender, the Debtors' 30 largest unsecured creditors (on a consolidated basis), and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court and received by counsel for the Debtors, the DIP Lender, and the United States Trustee no later than seventy-two hours prior to the commencement of such Final Hearing. Any timely and properly filed and served objection will be heard at the Final Hearing.

Dated: March 21, 2011
      Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE