# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                          : Chapter 11
                                                :
Barnes Bay Development Ltd., *et al.*[1]        : Case No. 11-10792 (PJW)
                                                :
     Debtors.          : (Jointly Administered)
                                                :
                                                : **Proposed Obj. Deadline: June 8, 2011 at 4:00 p.m. (EDT)**
---------------------------------------------------------------x **Proposed Hearing Date: June 14, 2011 at 9:30 a.m. (EDT)**

## MOTION TO ALTER OR AMEND THE COURT'S MAY 24, 2011
## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession file this *Motion to Alter or Amend the Court's May 24, 2011 Order Granting Relief from the Automatic Stay* (the "***Motion***"). In support of this Motion, the Debtors respectfully state as follows:

### I.
### PRELIMINARY STATEMENT

1. At the conclusion of hearings on May 19, 2011, the Court granted Mark Frederickson ("***Frederickson***"), Grant Gibson and Kim Evans ("***Gibson/Evans***"), and RJR Viceroy, Ltd. ("***RJR Viceroy***" and, together with Frederickson and Gibson/Evans, the "***Objectors***") relief from the automatic stay to seek a determination of their rights in certain residential units associated with the Viceroy Anguilla. This relief was granted without the benefit of a properly-filed motion, proper notice of any kind to the Debtors, nor so much as a scintilla of evidence to support the relief requested. Subsequent comments by the Court, however, resulted in the entry of an *Order Granting Relief from the Automatic Stay* [Docket No. 314] (the "***Lift Stay Order***") granting far broader relief than that originally articulated by the

---

[1] The Debtors in these cases, along with the last four digits of the employer identification number for each of the Debtors, are Kor Duo Investment Partners II, L.P. (xx-xxx9891), Kor Duo II, LLC (xx-xxx5207) and Barnes Bay Development Ltd. Barnes Bay Development Ltd., is a company formed under the laws of Anguilla and, accordingly, does not have an employer identification number.

Court. By its terms, the Lift Stay Order can be construed to permit the Objectors to initiate a variety of proceedings in Anguilla, including garnishment proceedings or actions to enforce any judgment they may obtain against Barnes Bay or its assets. This is an inequitable and—in the Debtors' view—unintended result that must be remedied.

2. Accordingly, the Debtors request entry of an order modifying the Lift Stay Order in order to state that the Objectors are granted relief from the automatic stay for the limited purpose of seeking a declaratory judgment in Anguilla as to the validity, priority and extent of their interests, if any, in their respective units.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicate for the relief sought herein is Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

## III.
## BACKGROUND

A. **The Chapter 11 Cases**

5. On March 17, 2011 (the "*Petition Date*"), Kor Duo Investment Partners II, LP ("*KDIP*"), a Delaware limited partnership, Kor Duo II, LLC ("*Kor Duo*"), a Delaware limited liability company, and Barnes Bay Development Ltd., a company duly incorporated in Anguilla and registered under the Companies Act, Company number 1007701 in the Register of Companies ("*Barnes Bay*" and, collectively, the "*Debtors*") filed petitions for relief in this Court under chapter 11 of title 11 of the Bankruptcy Code.

6. The Debtors are operating their businesses as debtors in possession pursuant to §§ 1107(a) and 1108. On March 21, 2011, the Court entered an order directing the joint administration and procedural consolidation of the Debtors' cases. On March 31, 2011, the United States Trustee for the District of Delaware (the "*U.S. Trustee*") appointed an Official Committee of Unsecured Creditors (the "*Committee*").

7. Contemporaneously with the filing of these cases, the Debtors requested entry of an order authorizing them to obtain an additional $5,000,000 postpetition secured superpriority credit facility (the "*DIP Loan*") from SOF-VIII-Hotel II Anguilla Holdings, L.L.C. (in such capacity, the "*DIP Lender*"). As of the Petition Date, the Debtors owed approximately $370,000,000 to SOF-VIII-Hotel II Anguilla Holdings, L.L.C. (in such capacity, the "*Prepetition Lender*") under its prepetition secured credit facility.

8. In addition, the Debtors have filed a motion for authority to conduct a public auction and sale of substantially all their assets consistent with both § 363 and applicable Anguillan law. That sale forms one of the cornerstones of the Debtors' *Joint Chapter 11 Plan of Liquidation* (as amended by the *First Amended Joint Chapter 11 Plan of Liquidation*, filed April 18, 2011, the "*Plan*").

**B. Viceroy Anguilla**

9. Barnes Bay owns The Viceroy Anguilla Resort and Residences ("*Viceroy Anguilla*" or the "*Property*"), a luxury resort located on the Caribbean island of Anguilla in the British West Indies. The resort is situated on 35 acres, with more than 3,200 feet of beach frontage along both Barnes and Meads Bays. Viceroy Anguilla features 166 exclusive contemporary beachfront and blufftop villas, townhomes and resort residences. The resort opened on a limited basis in late 2009 when Viceroy introduced 31 free-standing oceanfront villas, 34 ocean view resort residences, guest reception area and the Sunset Lounge and pool. In

2010, the remaining 69 residences and 32 hotel rooms were completed along with Viceroy Anguilla's four restaurants (Coba, Aleta, Bamboo Bar and Grill and The Half Shell), two additional community pools (Aleta and Bamboo), Sea Centre, an 8,000-square foot oceanfront Spa, Wellness & Fitness Centre, a boutique, the Generation V Kid's Club and the Viceroy Anguilla Tennis Academy. Viceroy Anguilla also features a state of the art 250,000 gallon reverse osmosis water purification plant, on-site central energy plant and roof-top rainwater collection systems.

10. Viceroy Anguilla's residences sell for $600,000 to $6,500,000. All residences are sold fully furnished and feature either private infinity or plunge pools. As of October 2010, buyers have agreed to purchase almost 70% of Viceroy's villas, townhomes and residences.

C. **The Lift Stay Order**

11. On March 17, 2011, the Debtors filed the *Motion for an Order (a) Approving Procedures for the Auction and Sale of the Debtors' Assets and the Assumption of Certain Executory Contracts and Unexpired Leases and (b) Authorizing the Sale of Such Assets Pursuant to the Terms and Conditions of Sale and the Assumption of Such Executory Contracts and Unexpired Leases* (Docket No. 15) (the "***Bid Procedures Motion***"), pursuant to which the Debtors sought authority to commence an auction of substantially all of the Debtors' assets pursuant to procedures set forth more fully in the Bid Procedures Motion.

12. On or about April 5, 2011, each of Frederickson [Docket No. 71], Gibson/Evans [Docket No. 73] and RJR Viceroy [Docket No. 80] filed responses to the Bid Procedures Motion. In addition, In addition, Frederickson and Grant/Evans each filed a supplemental reservation of rights [Docket No. 258 and 259, respectively] joining in the arguments put forth in the RJR Viceroy's response to the Bid Procedures Motion.

13. On May 19, 2011, the Court held a contested evidentiary hearing on the relief requested in the Bid Procedures Motion. In the course of that hearing the Objectors argued *for the first time* that the proposed sale of Viceroy Anguilla pursuant to § 363 was tantamount to a request for relief from the automatic stay under § 362(d) in favor of the Prepetition Lender, and suggested that they, too, should be granted relief from the automatic stay to seek a determination of their own rights, if any, in certain residential units comprising a part of Viceroy Anguilla.

> What this is, is it's a secured party sale, which happens all the time, but the way it happens is an agreed entry of an order granting relief from the stay. If the stay is—*if the stay is lifted, then all parties should be able to go to Anguilla and have the Anguillan court tell us what our rights are.*
>
> \* \* \* \* \*
>
> ...I would submit that if this is an agreed relief from the automatic stay, then the only equitable thing to do, Your Honor, is to allow all parties who assert an interest or a secured claim in this real estate that's being sold by one secured party, to be able to go to Anguilla and *to assert their competing rights and validity and priorities, vis-à-vis the other secured parties.*

Transcript of May 19, 2011 Hearing, at 14:3-8, 16:1-8 [hereinafter "*Transcript*"] (emphasis added). Yet, at no time prior to the hearing did any Objector (or any other party, for that matter) file a motion seeking relief from the automatic stay. Nevertheless, RJR Viceroy's counsel further clarified the relief being requested by the Objectors as follows—

> *We're not going to try to collect affirmatively against the debtor,* but just as in a foreclosure case in a state court, it would be highly unusual to grant relief from the stay for one secured creditor to do a foreclosure sale, and all the other secured creditors can't even assert their interest. That would not be the way that it would be done in the states, and I submit it should not be the way this should be done in Anguilla.

Transcript, at 16:9-16 (emphasis added). During the course of the hearing, therefore, it was clear that the Objectors were asking for nothing more than the ability to seek a declaration of their rights, if any, vis-à-vis the Viceroy Anguilla.

14. Notwithstanding the lack of a properly-filed motion and the absence of any evidence whatsoever demonstrating the existence of a properly-perfected lien of any sort in Viceroy Anguilla, at the conclusion of the May 19 hearing the Court granted the Objectors' oral request and vacated the automatic stay as to the Objectors.

> However, I am going to lift the stay *to allow these three objectors to go to Anguilla and seek a declaratory judgment or whatever relief they think they're entitled to under Anguillan law*, of course, subject to whatever rulings I make. I would hope the court in Anguilla wouldn't infringe upon orders that are proper for this bankruptcy court to enter. But if they want to take a declaratory judgment in Anguilla and the Court rules that their lien is prior to Starwood's, then so be it.

Transcript, at 61:3-11 (emphasis added). Later, however, the Court rephrased the grant of relief as follows:

> And I want to make it clear what the lift stay order says, and that is, it is lifted *to allow these individuals to pursue whatever rights they believe they have* in their units in the Anguillan court.

Transcript, at 67:11-14 (emphasis added). Given the admonishment that preceded this latter version of the Court's ruling, it was this latter version that was incorporated into the Lift Stay Order, which was entered by the Court on May 24, 2011.

## IV.
## RELIEF REQUESTED

15. By this Motion, the Debtors seek entry of an order amending the Lift Stay Order to grant only the more narrowly-tailored relief customarily granted to a party seeking relief from the automatic stay for the purpose of litigating a claim to judgment or seeking a declaration of certain rights.

16. Specifically, the Debtors request entry of an order amending the Lift Stay Order to grant relief from the automatic stay only to the extent necessary to permit the Objectors to

6

seek a declaratory judgment in Anguilla as to the validity, priority and extent of their interests, if any, in their respective units.

## V.
## BASIS FOR RELIEF

17. Bankruptcy Rule 9023, which incorporates Federal Rule of Civil Procedure 59, permits the filing of a motion to alter or amend a judgment (i) to accommodate an intervening change in controlling law; (ii) to account for new evidence not previously available; or (iii) to correct a clear error of law or prevent manifest injustice. *See, e.g., N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal citations omitted).[2]

18. In the instant case, the Debtors believe that amendment of the Lift Stay Order is appropriate to correct a clear error of law and prevent the manifest injustice that would result in the absence of such amendment.

19. First and foremost, the Lift Stay Order was not supported by so much as a scintilla of evidence to support the Objectors' claim that they hold valid liens on any portion of Viceroy Anguilla—whether under U.S. law or Anguillian law—that would entitle them to relief from the automatic stay pursuant to § 362(d). None of the Objectors presented a single document evidencing its alleged interests in Viceroy Anguilla. Indeed, one of the Objectors (RJR Viceroy) indicated that *it has not even filed* the appropriate documents supporting its alleged interests with the Land Registry in Anguilla. Transcript, at 57:15-19 ("I don't have a copy of the caution and I apologize. I've asked my Anguillan counsel about that, she said there's some problem with getting it filed because the debtor didn't do the subdivision of the lot."). To the contrary, the Court heard evidence that the caution held by RJR Viceroy is specifically *not* equivalent to a

---

[2] A motion to alter or amend must be filed within 14 days after entry of judgment. Fed. R. Bankr. P. 9023. As the Lift Stay Order was entered May 24, 2011, this Motion is timely.

7

recorded lien (or charge, in Anguillian parlance). On this basis alone, the Debtors believe it would be appropriate for the Court to *vacate* the Lift Stay Order, much less merely amend it as requested herein. At the very least, however, the Lift Stay Order must be amended to more narrowly and precisely state the relief actually granted to the Objectors.

20. It is clear from the record that the Objectors did not seek, nor do the Debtors believe the Court intended to grant, unfettered relief from the automatic stay. As noted above, counsel for RJR Viceroy was clear in his statements to the Court that RJR Viceroy did not intend to "try to collect affirmatively against the debtor," and the Court's initial ruling specifically limited the Objectors' relief to seeking a declaration from the Anguillian court with respect to their alleged interests in Viceroy Anguilla. Nevertheless, the Court's final comment at the May 19 hearing apparently authorized the Objectors to "pursue whatever rights they believe they have."

21. As a result, the Lift Stay Order now contains stay relief far broader than that which is typically granted even upon a properly-filed motion and an adequate evidentiary presentation. Relief from the stay to "pursue whatever rights they believe they have" could be read to go well beyond even what the Objectors requested and what the Debtors believe the Court actually intended. Despite the assurances of RJR Viceroy's counsel that RJR Viceroy will not seek to collect affirmatively against the debtor, the Lift Stay Order in its current form could easily be interpreted by an Anguillian court as authorizing RJR Viceroy and the other Objectors to take a variety of actions that were almost certainly not contemplated by this Court, including (i) to recover on their outstanding claims, (ii) enforce any judgments obtained against Barnes Bay or Viceroy Anguilla, (iii) seek an order of garnishment (as RJR Viceroy has attempted once before) or (iv) take additional steps to create, perfect or enforce liens against or other interests

8

against the Viceroy Anguilla. Any such direct action by the Objectors against the Debtors or property of their estates would have a disastrous effect on the Debtors' reorganization effort, and would facilitate a singularly inequitable situation by granting unwarranted advantage to the Objectors over similarly situated creditors. The Debtors believe that the Court did not intend such a broad grant of relief. To the extent the Court did intend such broad relief from the automatic stay, the Debtors submit that such a grant was unsupported by any evidence of a protected lien or other interest and therefore represents a manifest injustice to the Debtors.

22. Additional clarity in the Court's ruling is particularly critical given that the Lift Stay Order may ultimately be presented to, and construed by, an Anguillian court that is less familiar with the traditional contours of the automatic stay. Indeed, RJR Viceroy has already submitted the Lift Stay Order as an exhibit to an affidavit filed in opposition to Barnes Bay's request for a stay of certain pending litigation in Anguilla. Whereas RJR Viceroy may understand implicitly (as its statements at the May 19 hearing suggest) that stay relief in this context does not permit a creditor to take additional actions to collect affirmatively against a debtor, the Anguillian court may not possess that implicit understanding. Indeed, the Lift Stay Order by its terms suggests squarely the opposite.

23. For the sake of clarity—and to aid the Anguillian courts in properly tailoring the extent of their own proceedings—the Lift Stay Order should be amended to state that the Objectors are granted relief from the automatic stay for the limited purpose of seeking a declaratory judgment in Anguilla as to the validity, priority and extent of their interests, if any, in their respective units.

9

RLF1 4053581v. 1

# VI.
# NOTICE

24. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Prepetition Lender and the DIP Lender, (iii) counsel to the Committee, (iv) the Residence Purchasers, (v) the Securities and Exchange Commission, (vi) the Internal Revenue Service and (vii) all other parties requesting notice in these proceedings pursuant to Bankruptcy Rule 2002.

# VII.
# CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) granting the Motion in substantially the form attached as **Exhibit A** hereto, and (b) granting such other and further relief as the Court deems appropriate.

Dated: May 31, 2011

By: _____
Paul Heath (No. 3704)
Chun I. Jang (No. 4790)
Travis A. McRoberts (No. 5274)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: 302.651.7700
Facsimile 302.651.7701

-and-

Charles R. Gibbs (admitted *pro hac vice*)
Michael P. Cooley (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**

11