## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ————————————————— x |  |  |
| In re: | : | Chapter 11 |
|  | : |  |
| Barnes Bay Development Ltd., *et al.*[1] | : | Case No. 11-10792 (PJW) |
|  | : |  |
| Debtors. | : |  |
| ————————————————— x |  |  |

## ~~FIRST~~SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

### June 13, 2011

**Akin Gump Strauss Hauer & Feld LLP**
~~AKIN GUMP STRAUSS HAUER & FELD LLP~~
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
(214) 969-2800

and

~~RICHARDS LAYTON & FINGER~~**Richards Layton & Finger**, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 652-3131

Attorneys for Debtors
and Debtors in Possession

~~Dated: April 18, 2011~~

**Brown Rudnick LLP**
Seven Times Square
New York, NY 10036
(212) 209-4800

and

**Womble Carlyle Sandridge & Rice, PLLC**
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
(302) 252-4320

Attorneys for Official
Committee of Unsecured Creditors

---

[1] The Debtors in these cases, along with the last four digits of the employer identification number for each of the Debtors, are Kor Duo Investment Partners II, LP (xx-xxx9891), Kor Duo II, LLC (xx-xxx5207) and Barnes Bay Development, Ltd. Barnes Bay Development, Ltd., is a company formed under the laws of Anguilla and, accordingly, does not have an employer identification number.

# TABLE OF CONTENTS

**Page**

ARTICLEARTICLE I. DEFINITIONS INTRODUCTION .................................................. 1
    A.1.1   Defined TermsIntroduction. .......................................................... 1
    B.    Rules of Interpretation .................................................................. 10
    C.    Computation of Time ..................................................................... 10
    D.    Exhibits ........................................................................................ 11

ARTICLE II.    CLASSIFICATION AND TREATMENT OF CLAIMS .................... 11

    A.    Summary ....................................................................................... 11
    B.    Classification ................................................................................ 11
    C.    Unclassified Claims:  Administrative Claims and Priority Tax Claims .............. 11
    D.1.2   ClassesClassification of Claims and Interests:  Classification, Treatment and Voting Rights. ...................................................................... 131

ARTICLE II DEFINITIONS ............................................................................ 2
    2.1   Defined Terms ............................................................................... 2
    2.2   Rules of Interpretation .................................................................. 12
    2.3   Computation of Time ..................................................................... 13
    2.4   Exhibits ........................................................................................ 13

ARTICLE III TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS ............ 13
    3.1   Administrative Claims ................................................................... 13
    3.2   Priority Tax Claims ....................................................................... 14

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS .......................... 15
    4.1   Class 1 - DIP Claims .................................................................... 15
    4.2   Class 2 - Prepetition Lender Claims ............................................ 15
    4.3   Class 3 - Other Secured Claims ................................................. 16
    4.4   Class 4 – Priority Claims .............................................................. 16
    4.5   Class 5 – General Unsecured Claims .......................................... 16
    4.6   Class 6 – PSA Claims (Tier 1) ..................................................... 17
    4.7   Class 7 – PSA Claims (Tier 2) ..................................................... 17
    4.8   Class 8 – PSA Claims (Tier 3) ..................................................... 18
    4.9   Class 9 – Prepetition Lender Deficiency Claims .......................... 18
    4.10  Classes 10 – Intercompany Indemnity Claims ............................ 19
    4.11  Classes 11 – Interests and Interest Related Claims .................... 19
    4.12  Election of Alternative Treatments by PSA Creditors ................... 19

ARTICLE III. ARTICLE V ACCEPTANCE OR REJECTION OF THIS PLAN ................ 1721
    A.5.1   Impaired Classes of Claims Entitled to Vote ............................... 1721
    B.5.2   Classes Deemed to Accept this Plan .......................................... 1722
    C.5.3   Classes Deemed to Reject this Plan ........................................... 1722
    D.5.4   Nonconsensual Confirmation ....................................................... 1822

ARTICLE IV. ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN ............ 18 22

    A. 6.1   Implementation of Plan ................................................ 18 22

    B. 6.2   The Asset Sale ............................................................ 18 22

    C. 6.3   Formation Funding of Newco the Plan ....................... 18 23

    D.   DIP Facility ................................................................ 18

    E. 6.4   Other Issues ................................................................ 18 23

    F. 6.5   Causes of Action ........................................................ 19 23

    G. 6.6   Appointment and Term of the Responsible Person ...... 20 24

    H. 6.7   Duties of the Responsible Person ............................... 20 25

    I. 6.8   No Recourse to Protected Parties Omitted ................ 21 26

    J.   Transfer Free and Clear of Taxes ............................... 22

    K. 6.9   Discharge of Debtors' Professionals .......................... 22 26

    L. 6.10   Dissolution of the Committee ................................... 22 27

    M.   Funding of the Plan ................................................... 23

    N.   Wind-down Reserve Account ..................................... 23

    O.   Distributable Cash ..................................................... 24

    P. 6.11   Employee Matters ..................................................... 24 27

    Q. 6.12   Corporate and Limited Liability Company Action ...... 24 27

    R. 6.13   Dissolution of the Debtors ........................................ 24 28

    S. 6.14   Saturday, Sunday or Legal Holiday ............................ 24 28

ARTICLE V. ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRE D LEASES ....... 25 28

    A. 7.1   Rejection of Remaining Executory Contracts and Unexpired Leases ............. 25 28

    B. 7.2   Assumption and Cure of Executory Contracts .......................... 25 28

    C. 7.3   Cure of Defaults of Assumed Executory Contracts ...................... 26 29

    D. 7.4   Effect of Assumption and Assignment ....................... 26 29

    E. 7.5   Rejection Damages Bar Date ..................................... 26 30

    F. 7.6   Insurance Policies ..................................................... 27 30

    ARTICLE VI. 7.7 DISTRIBUTIONS PSAs ............................................ 27 31

ARTICLE VIII DISTRIBUTIONS ................................................................. 31

    A. 8.1   General Provisions Concerning Distributions ............ 27 31

    B. 8.2   Disbursing Agent ...................................................... 28 31

    C. 8.3   Time and Manner of Distributions ............................. 28 31

    D. 8.4   Delivery of Distributions ........................................... 29 32

    E. 8.5   Undeliverable Distributions ...................................... 29 32

    F. 8.6   Claims Administration Responsibility ....................... 29 32

    G. 8.7   Procedures for Treating and Resolving Disputed and Contingent Claims ...... 30 33

    H. 8.8   Setoffs and Recoupment ........................................... 30 34

    I. 8.9   Allowance and Disallowance of Claims Subject to § 502 ............. 31 34

    J. 8.10   Cancellation of Instruments and Agreements ............. 31 34

    K. 8.11   No Interest on Claims ............................................... 31 34

~~L.~~8.12 Withholding Taxes ................................................................... ~~31~~34

~~M.~~8.13 Reports .......................................................................................... ~~31~~35

~~ARTICLE VII.~~ ARTICLE IX EFFECT OF CONFIRMATION ............................. ~~32~~35

    ~~A.~~9.1 Vesting of Assets ................................................................... ~~32~~35

    ~~B.~~9.2 Binding Effect ...................................................................... ~~32~~35

    ~~C.~~9.3 Discharge of Claims and Termination of Interests ............ ~~32~~35

    ~~D.~~9.4 Injunction ............................................................................. ~~32~~36

    ~~E.~~9.5 Term of Injunctions or Stays ............................................... ~~33~~36

    ~~F.~~9.6 Exculpation and Releases .................................................... ~~33~~36

    ~~G.~~9.7 Releases by Holders of Claims and Interests ..................... ~~34~~37

    ~~H.~~9.8 Reservation of Causes of Action/Reservation of Rights ...... ~~34~~38

~~ARTICLE VIII.~~ ARTICLE X CONDITIONS PRECEDENT ............................... ~~35~~38

    ~~A.~~10.1 Conditions Precedent to Effective Date ............................. ~~35~~38

    ~~B.~~10.2 Revocation, Withdrawal or Non-Consummation of Plan ........... ~~35~~38

~~ARTICLE IX.~~ ARTICLE XI ADMINISTRATIVE PROVISIONS ......................... ~~36~~39

    ~~A.~~11.1 Retention of Jurisdiction by the Bankruptcy Court .............. ~~36~~39

    ~~B.~~11.2 Payment of Statutory Fees ................................................ ~~37~~40

    ~~C.~~11.3 Headings .......................................................................... ~~37~~40

    ~~D.~~11.4 Binding Effect of Plan ...................................................... ~~37~~41

    ~~E.~~11.5 Final Order ....................................................................... ~~38~~41

    ~~F.~~11.6 Withholding and Reporting Requirements ........................ ~~38~~41

    ~~G.~~11.7 Tax Exemption and Expedited Tax Determination ............ ~~38~~41

    ~~H.~~11.8 Governing Law ................................................................. ~~38~~42

    ~~I.~~11.9 Plan Supplement ................................................................ ~~39~~42

    ~~J.~~11.10 Severability ..................................................................... ~~39~~42

    ~~K.~~11.11 Revocation ................................................................... ~~39~~42

    ~~L.~~11.12 Substantial Consummation ........................................... ~~39~~43

    ~~M.~~11.13 Conflict ........................................................................ ~~39~~43

    ~~N.~~11.14 Amendments and Modifications ................................... ~~40~~43

    ~~O.~~11.15 Notices ......................................................................... ~~40~~43

    ~~P.~~11.16 Filing of Additional Documents ................................... ~~41~~44

    ~~Q.~~11.17 Direction to a Party ...................................................... ~~41~~44

    ~~R.~~11.18 Successors and Assigns ................................................ ~~41~~45

    ~~S.~~11.19 Waiver of Subrogation .................................................. ~~41~~45

200451608 v1
RLF1 3980152v. 1

# ARTICLE I
## INTRODUCTION

### 1.1 *Introduction.*

Kor Duo Investment Partners II, L.P., Kor Duo II, L.L.C. and Barnes Bay Development Ltd., as debtors and debtors in possession in these Chapter 11 Cases, and the Official Committee of Unsecured Creditors respectively propose the following ~~First~~Second *Amended Joint Chapter 11 Plan of Liquidation* (the "Plan"). This Plan is proposed jointly by the Debtors and the Committee, and on behalf of each Debtor as its individual, separate plan under chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, results of operations, historical financial information and properties, and for a summary and analysis of the Plan. All holders of Claims against or Interests in a Debtor are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. **The Debtors and the Committee urge all Holders of Claims in Impaired Classes receiving Ballots to accept the Plan.**

This Plan constitutes a chapter 11 plan of liquidation for each of the Debtors. Except for Administrative Claims, and Priority Tax Claims, all Claims against and Interests in a particular category of Debtors are placed in Classes for each category of the Debtors described below. In accordance with § 1123(a)(1), the Debtors and the Committee have not classified Administrative Claims or Priority Tax Claims, as described below. Further, given that only Barnes Bay has creditors in classes which are Impaired and entitled to vote on this Plan, for purposes of voting and making Distributions only, creditors of all the Debtors will be combined in classes set forth below.

### 1.2 *Classification of Claims and Interests.*

The table below classifies Claims against and Interests of all Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to §§ 1122 and 1123(a)(1). The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and a Claim or Interest shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1: DIP Claims | Not Impaired | No |
| Class 2: Prepetition Lender Claims | Not Impaired | No |
| Class 3: Other Secured Claims | Impaired | Yes |
| Class 4: Priority Claims | Not Impaired | No |
| Class 5: General Unsecured Claims | Impaired | Yes |
| Class 6: PSA Claims (Tier 1) | Impaired | Yes |
| Class 7: PSA Claims (Tier 2) | Impaired | Yes |
| Class 8: PSA Claims (Tier 3) | Impaired | Yes |

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 9:  Prepetition Lender Deficiency Claims | Impaired | Yes |
| Class 10:  Intercompany Indemnity Claims | Impaired | No |
| Class 11:  Interest and Interest Related Claims | Impaired | No |

Administrative Expenses, DIP Claims and Priority Tax Claims of the kinds specified in §§ 507(a)(1), 502(i) and 507(a)(8) have not been classified and are excluded from the following Classes in accordance with § 1123(a)(1).

## ARTICLE I.II

### DEFINITIONS

A.2.1  *Defined Terms*

For the purposes of this Plan, the following terms (which appear in this Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.  Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules.  Unless otherwise noted herein, section (§) references are to the Bankruptcy Code.

1.  "**ACH**" shall mean an automated clearing house transaction through a domestic bank.

2.  "**Acquired Assets**" shall mean all assets of the Debtors other than the Property and the Causes of Action.  For the sake of clarity, the Acquired Assets shall include all Executory Contracts on the Assumed Contracts Schedule, cash, Project personalty, stock in trade, inventories, supplies, equipment and fixtures, books and records, licenses and permits, Intellectual Property, goodwill and other assets of Barnes Bay, and shall specifically exclude all Causes of Action, including Avoidance Actions.

3.  "**Administrative Budget**" shall mean the wind-down budget of the Debtors approved by the DIP Lender for the post-Effective Date wind-down and dissolution of the Debtors and their Estates, which shall be filed as part of the Plan Supplement.

4.  "**Administrative Claim**" shall mean any Claim for costs and expenses of administration of these Chapter 11 Cases incurred or accrued during the period from and after the Petition Date up to and including the Effective Date with priority under § 507(a)(2), including costs and expenses allowed under § 503(b), the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Claim arising under § 503(b)(9), any Claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, any Professional Fee Claim, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. §1930, with respect to which an Administrative Expense Request was filed on or prior to the Bar Date established for Claims or the Administrative Expense Request Deadline, as applicable.

5.    "**Administrative Expense Request**" shall mean a request or application for allowance or payment of an Administrative Claim.

6.    "**Administrative Expense Request Deadline**" shall mean the date set forth in the Confirmation Order as the deadline for filing Administrative Expense Requests (excluding Professional Fee Claims) that are not subject to the Bar Date Order, which deadline shall be forty-five (45) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

7.    "**Affiliate**" has the meaning set forth in § 101(2).

8.    "**Allowed**" shall mean, when used with respect to a Claim or Interest, any Claim or Interest that: (a) has been allowed by a Final Order of the Bankruptcy Court; (b) has been Scheduled in a liquidated amount, other than a Claim that is scheduled as disputed, contingent or unliquidated; (c) is the subject of a timely Proof of Claim that has been filed as of the relevant Bar Date and no objection thereto, or motion or proceeding to subordinate, disallow or otherwise limit recovery, has been filed; or (d) is the subject of a timely Proof of Claim that has been filed as of the relevant Bar Date and (i) any objection or motion or proceeding to subordinate, disallow or otherwise limit recovery that has been filed has been resolved by a Final Order or (ii) the Responsible Person has reviewed the Claim and determined that the Claim is valid and no objection to such Claim will be filed.  An Allowed Claim shall not include interest on the amount of any Claim except (i) with respect to an Allowed Claim filed pursuant to § 506(b), (ii) as specifically provided in this Plan, or (iii) as provided by Final Order of the Bankruptcy Court.  If the Debtors, the Committee, or the Responsible Person ~~shall~~ object to any Claim in accordance with § 502(d), such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

~~9.    "**Allowed [_____] Claim**" or "**Allowed [_____] Interest**" shall mean an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, General Unsecured Claim, Convenience Class Claim or Interest Related Claim, as the case may be.~~

10.    "**Assumed Contracts Schedule**" shall mean the list of Executory Contracts to be assumed by the Buyer on the Effective Date, which list is included in the Plan Supplement as Exhibit D and shall include (i) Executory Contracts to be assumed and assigned to the Buyer pursuant to the ~~Terms and Conditions of Sale and the~~ Plan and (ii) Executory Contracts previously assumed by the Debtors by order of the Bankruptcy Court.

11.    "**Assumed Liabilities**" shall mean the liabilities assumed by the Buyer under the <u>Plan and as set forth in the</u> Terms and Conditions of Sale.

12.    "~~**Auction**" shall mean the auction for the sale of the Property and Acquired Assets pursuant to the Bid Procedures Order.~~

13.    "**Avoidance Action**" shall mean any claim or Cause of Action arising under chapter 5 of the Bankruptcy Code.

14.     "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

15.     "**Bankruptcy Court**" shall mean the United States District Court for the District of Delaware with jurisdiction over the Chapter 11 Cases, the Debtors and their Estates and, to the extent of any reference made pursuant to 28 U.S.C. §157, the United States Bankruptcy Court for the District of Delaware, or any court having competent jurisdiction to enter the Confirmation Order.

16.     "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. §2075, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

17.     "**Bar Date**" shall mean May 16, 2011 at 4:00 p.m. prevailing Pacific time, and such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, excluding governmental units, asserting a Claim must have filed a Proof of Claim or be forever barred from asserting such Claim.

18.     "**Bar Date Order**" shall mean that certain order of the Bankruptcy Court dated as of April 12, 2011, establishing May 16, 2011 at 4:00 p.m. prevailing Pacific time as the Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

19.     "**Bid Procedures Order**" shall mean the order entered by the Bankruptcy Court on ———————May 19, 2011 and authorizing the Debtors and the Prepetition Lender, as applicable, to conduct the Public Sale of the Property and the Acquired Assets.

20.     "**Barnes Bay**" shall mean Barnes Bay Development, Ltd., a company formed under the laws of Anguilla.

21.     "**Business Day**" shall mean a day other than Saturday, Sunday, a legal holiday as defined in Bankruptcy Rule 9006(a) or other day on which the Bankruptcy Court is authorized or required by law to close.

22.     "**Buyer**" means the Prepetition Lender, in its capacity as buyer of the Acquired Assets and the Property at the Auction, or the Prevailing Party, as applicable.

"**Buyer**" shall mean the Person that is selected as the party submitting the highest or otherwise best bid to acquire the Acquired Assets and the Property at the Public Sale.

23.     "**Cash**" shall mean cash and cash equivalents (including, but not limited to, bank deposits, security deposits paid by any Debtor that are maintained in a segregated or ear-marked account, checks, similar items and securities or instruments of the type permitted under § 345) in certified or immediately available funds.

24.     "**Causes of Action**" shall mean any and all actions, proceedings, causes of action, obligations, suits, judgments, damages, demands, debts, accounts, controversies, agreements, promises, liabilities, powers to avoid transfers, legal remedies, equitable remedies, and claims

(and any rights to any of the foregoing) belonging to a Debtor or its Estate, whether core or non-core, known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, known or unknown, foreseen or unforeseen, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured, whether asserted or assertable directly or derivatively or as a defense, counterclaim or cross-claim, in law, equity or otherwise including any recharacterization, subordination, avoidance or other claim, power or right arising under or pursuant to § 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

"**Caution**" shall have the meaning provided under the Revised Statutes of Anguilla, Chapter R30, Registered Land Act.

25. "**Chapter 11 Cases**" shall mean the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court and jointly administered under Case No. 11-10792 (PJW).

"**Charge**" shall have the meaning provided under the Revised Statutes of Anguilla, Chapter R30, Registered Land Act.

26. "**Claim**" shall have the meaning set forth in § 101(5).

27. "**Class**" shall mean each category of Holders of Claims or Interests specified in Article II.B of this Plan.

28. "**Committee**" shall mean the Official Committee of Unsecured Creditors of the Debtors appointed by the United States Trustee in the Chapter 11 CasesCase, as its composition may change from time to time.

29. "**Confirmation Date**" shall mean the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

30. "**Confirmation Hearing**" shall mean the hearing at which the Bankruptcy Court considers confirmation of this Plan.

31. "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming this Plan and approving the transactions contemplated herein, pursuant to § 1129.

"**Consent Judgments**" shall mean those certain judgments entered in 2010 by the Eastern Caribbean Supreme Court in the High Court of Justice of Anguilla approving settlements of litigation between Barnes Bay and PSA Creditors and providing for the repayment of deposits previously paid by such PSA Creditors to Barnes Bay in connection with the purchase of Residence Properties.

32. "**Creditor**" shall have the meaning set forth in § 101(10).

"**Cure Amount**" shall mean, with respect to any Executory Contract, the amount, if any, that must be paid in connection with the assumption of such contract or lease to satisfy the requirements of § 365(b)(1)(A).

33. "**Debtors**" shall mean, collectively, Barnes Bay, KDIP and Kor Duo.

34. "**DIP Borrower**" shall mean Barnes Bay.

35. "**DIP Claim**" shall mean all Claims of the DIP Lender against any Debtor or its Estate arising from or relating to the DIP Facility.

36. "**DIP Collateral**" shall mean all of the property of the Estates encumbered by a Lien in favor of the DIP Lender to secure the DIP Claims and the DIP Facility pursuant to the DIP Orders.

37. "**DIP Facility**" shall mean that certain debtor-in-possession financing and security agreement approved pursuant to the DIP Orders, as such facility may be amended from time to time.

38. "**DIP Lender**" shall mean the Prepetition Lender, in its capacity as a DIP Lender, and any other lenders identified in the DIP Facility.

39. "**DIP Orders**" shall mean the interim and final orders entered by the Bankruptcy Court approving the DIP Facility [Docket Nos. 32 and ____, respectively].

40. "**Disallowed**" shall mean, when used with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not Scheduled and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Holder thereof and the Debtors or the Responsible Person or (e) has been withdrawn by the Holder thereof.

41. "**Disbursing Agent**" shall mean the Responsible Person, unless another Person is designated to be the Disbursing Agent by the Responsible Person.

42. "**Disclosure Statement**" shall mean the *Disclosure Statement in Support of Second Amended Joint Chapter 11 Plan of Liquidation,* dated [June ~~_____~~], 2011~~,~~ ~~and all exhibits thereto,~~ filed in connection with the Plan pursuant to § 1125 and approved by the Bankruptcy Court, including all exhibits thereto.

43. "**Disputed**" shall mean, when used with respect to any Claim, a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including any Claim that (i) has been Scheduled as contingent, unliquidated, disputed or in an amount equal to zero or an unknown amount, and no Proof of Claim has been filed with respect to such Claim, or (ii) is the subject of an objection, Cause of Action or other challenge filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; *provided*, *however*, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

200451608 v1
RLF1 3980152v. 1

44. ~~"**Distributable Cash**" shall mean the amount of available Cash with respect to the Effective Date Distributions that exceed as of the Effective Date (i) payment of the Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims, (ii) retention of amounts determined by the Responsible Person needed to (a) reserve for Disputed Claims, and (b) pay or reserve for the Administrative Budget, plus any net proceeds of the Causes of Action.~~

45. "**Distribution**" shall mean any disbursement or transfer of Cash or other property in accordance with this Plan, or the Cash or other property as distributed.

46. "**Distribution Fund**" shall mean the fund which shall be established on the Effective Date by the Responsible Person ~~to pay (in the event any payments are to be made to holders of such Claims) Class 4 Priority Claims, Class 5 PSA Unsecured Claims, Class 6 General Unsecured Claims and Class 7 Prepetition Lender Deficiency Claims. After the Effective Date, Distributable Cash shall be held in the Distribution Fund.~~in one or more accounts to make Distributions to Holders of Allowed Claims.

47. "**Effective Date**" shall mean the earlier of (i) the first Business Day after the Confirmation Order has become a Final Order or (ii) the date that the Debtors, after obtaining the consent of the Committee, file a notice with the Bankruptcy Court indicating that all conditions precedent to the Plan becoming effective have been satisfied or waived and that such date shall be the Effective Date.

48. ~~"**Effective Date Distribution**" shall mean the Distribution of Distributable Cash by the Responsible Person to Holders of allowed Class 5 PSA Unsecured Claims, allowed Class 6 General Unsecured Claims and allowed Class 7 Prepetition Lender Deficiency Claims on the Effective Date.~~

"**Enforcement Option**" shall have the meaning set forth in Section 4.12(b) of the Plan.

49. "**Estates**" shall mean the estates of the Debtors created by § 541.

50. "**Executory Contract**" shall mean any executory contract or unexpired lease subject to § 365, as to which one or more of the Debtors is a party.

51. "**Face Amount**" shall mean (i) when used in reference to a Disputed or Disallowed Claim, the full stated amount, not including interest, claimed by the Holder of such Claim in any Proof of Claim timely filed with the Voting and Claims Agent or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the amount of such Allowed Claim.

52. "**Final Decree**" shall mean the decree contemplated under Bankruptcy Rule 3022.

53. "**Final Order**" shall mean an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Cases that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or to seek reargument, reconsideration, amended findings or conclusions, or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or to seek rehearing, reconsideration, amended findings or conclusions, has been waived in writing or, if an appeal, petition for certiorari, request for

200451608 v1
RLF1 3980152v. 1

reargument, reconsideration, amended findings or conclusions, or rehearing thereof has been pursued or granted then such appeal, reargument, reconsideration, request for amended findings or conclusions, petition for certiorari or rehearing has been denied or dismissed, and the time to take any further appeal or to seek certiorari or further reargument, reconsideration, amended findings or conclusions, or rehearing has expired.  Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means the Confirmation Order with respect to which no stay is in effect.

54.     "**General Unsecured Claim**" shall mean any Claim that is not a Secured Claim, Administrative Claim, Priority Claim, Priority Tax Claim, PSA Claim, Intercompany Indemnity Claim or Interest Related Claim.

55.     "**Governmental Bar Date**" shall mean September 12, 2011 at 4:00 p.m. prevailing Pacific time.

"**Guaranty Claim**" shall mean any claim by a PSA Creditor against a Person other than a Debtor on account of a written **[or oral]** guaranty providing for the refund of any deposit paid on account of a Residence Property.

"**HOA Fees Guaranty**" shall mean the guarantee provided by the Buyer to each PSA Creditor who exercises the Purchase Option, signs a Rental Program Agreement and closes on the purchase of a Residence Property for Homeowners Association fees associated with such Residence Property, which guarantee shall commence upon such closing and end upon the expiration of one (1) year or two (2) years, as applicable, after the later to occur of the Effective Date and such closing date.

56.     "**Holder**" shall mean the owner or holder of any Claim, Membership Interest or Interest.

57.     " **Impaired**" shall have the meaning set forth in § 1124.

58.     "**Intellectual Property**" shall mean collectively, patents, copyrights, trademarks, service marks, tradenames, trademark registrations, service mark registrations, licenses and know-how and the right to use the Barnes Bay or Viceroy Anguilla name.

59.     "**Intercompany Indemnity Claim**" shall mean a Claim of any Debtor against any other Debtor, any Affiliate of a Debtor, any member of a Debtor, any partner of a Debtor or any direct or indirect holder of an interest in any Debtor or its Affiliate regardless of whether such Claim arose before, on or after the Petition Date.

60.     "**Interest**" shall mean any "equity security" in a Debtor, as such term is defined in § 101(16), including any stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any equity interest in a Debtor.

61.     "**Interest Related Claim**" shall mean any Claim, including pursuant to § 510(b), against the Debtors arising from the purchase or sale of an Interest in the Debtors, or any Claim against the Debtors by a Person that asserts equitable or contractual rights of reimbursement, contribution or indemnification arising from such Claim.

62. **"IRS"** shall mean the Internal Revenue Service.

63. **"KDIP"** shall mean Kor Duo Investment Partners II, L.P., a Delaware limited partnership.

64. **"Kor Duo"** shall mean Kor Duo II, L.L.C., a Delaware limited liability company.

65. **"Lien"** shall mean any lien, mortgage, hypothecation, charge, security interest, right of first refusal, option, nonexecutory purchase agreement, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation. Lien shall include the land use and condominium regime currently in place and as may be amended from time to time affecting the Property and the Acquired ~~Asest~~Assets.

66. **"Local Rules"** shall mean Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**"MOU"** shall mean the Memorandum of Understanding entered into on September 17, 2010 between the Government of Anguilla and SOF-VIII-Hotel II Anguilla Holdings, LLC, including any amendments or addenda thereto.

67. **"Newco"** means Buyer, or its designee, which on and after the Effective Date shall hold, directly or indirectly, all of the Acquired Assets and Property of the Debtor in the event the Prepetition Lender is the Buyer.

**"Nystrom Letter"** shall mean the letters, including any documents included therewith, transmitted by the Debtors to certain PSA Creditors beginning on or about April 27, 2011 and offering terms for the sale of the corresonding Residence Properties.

68. **"Organization Documents"** shall mean any certificate filed with the Secretary of State or the corresponding office in Anguilla prior to the Effective Date, including any certificate of incorporation or certificate of formation, and any amendments or restatements thereto, and the bylaws or limited liability company agreements, as applicable, and any amendments and restatements thereto, of each of the Debtors.

69. **"Other Secured Claims"** shall mean Claims other than the DIP Claims or the Prepetition Lender Claims that are secured by a Lien on property in which the Debtors have an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order of the Bankruptcy Court, or that are subject to setoff under § 553, to the extent of the value of the Claim Holder's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a). ~~No Holder of a PSA Unsecured Claim is the Holder of an Other Secured Claim.~~

70. **"Person"** shall have the meaning set forth in § 101(41).

71. **"Petition Date"** shall mean March 17, 2011, the date the Debtors commenced the Chapter 11 Cases.

200451608 v1
RLF1 3980152v. 1

72. "**Plan**" shall mean this ~~First~~Second *Amended Joint Chapter 11 Plan of Liquidation* (as the same may be modified or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules) and any exhibits hereto and any documents incorporated herein by reference.

73. "**Plan Supplement**" means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, including without limitation the Terms and Conditions of Sale and the Assumed Contracts Schedule.

74. "**Post-Confirmation Expense**" shall mean any fees, costs and expenses including fees due pursuant to 28 U.S.C. §1930, fees of the Responsible Person, attorneys' fees, the fees of other professionals employed by the Responsible Person in connection with the post-Effective Date liquidation of the Debtors after the Effective Date.

75. "**Prepetition Collateral**" shall mean substantially all of the property of the Debtors as of the Petition Date encumbered by a Lien in favor of the Prepetition Lender to secure the Prepetition Lender Claims and the Prepetition Facility, as such property is described in the Prepetition Facility.

76. "**Prepetition Lender**" shall mean SOF-VIII-Hotel II Anguilla Holdings, LLC.

77. "**Prepetition Facility**" shall mean the Second Amended and Restated Credit Agreement dated July 17, 2009, as amended, and the other loan and security documents executed in connection therewith.

78. "**Prepetition Lender Claims**" shall mean the Claims of the Prepetition Lender arising under the Prepetition Facility~~.~~, but only to the extent that such Claims are (i) "secured claims" as determined by § 506(a)(1) or (ii) successfully bid by the Prepetition Lender at the Public Sale as a credit bid that results in the designation and approval by the Court of the Prepetition Lender as the Buyer.

79. "**Prepetition Lender Deficiency Claims**" shall mean the sum of (i) ~~that portion~~the Claims of the Prepetition Lender ~~Claim that exceeds the value of the collateral securing such~~arising under the Prepetition Facility, but excluding the Prepetition Lender Claims, and (ii) all Claims by the Prepetition Lender for unsecured advancements made by the Prepetition Lender to the Debtors prior to ~~protect the collateral securing the Prepetition Facility~~the Petition Date.

80. ~~"**Prevailing Party**" shall mean a Person, other than the Prepetition Lender in its capacity as Buyer, that is selected as the party submitting the highest or otherwise best bid to acquire the Acquired Assets and Property at the Auction.~~

81. "**Priority Claim**" shall mean any Claim entitled to priority pursuant to § 507 that is not an Administrative Claim or a Priority Tax Claim.

82. "**Priority Tax Claim**" shall mean any Claim of the kind specified in § 507(a)(8) or a tax Claim afforded secured status pursuant to § 506.

83. "**Professional**" shall mean any Entity (i) retained pursuant to a Final Order in accordance with §§ 327, 363 or 1103 and to be compensated for services rendered before or on the Effective Date in accordance with §§ 328, 329, 330, 331 and 363, or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to § 503(b)(4). This term excludes Persons that may be selected and employed by the Responsible Person on and after the Effective Date.

84. "**Professional Fee Claim**" shall mean any Claim asserted by a Professional or other Entity for compensation for legal, financial advisory, accounting and other services and reimbursement of expenses Allowed pursuant to §§ 328, 330(a), 331, 363, 503(b) or 1103 or otherwise for the period commencing on the Petition Date and through the Effective Date, including any Claim by a Professional for fees or expenses incurred subsequent to the Effective Date in connection with the prosecution or resolution of any dispute or objection, of any final application for fees and expenses.

85. "**Proof of Claim**" shall mean a proof of claim filed in the Chapter 11 Cases pursuant to § 501 or any order of the Bankruptcy Court, together with supporting documents.

"**Property**" shall mean that certain 34-acre freehold estate described as Registration Section West End Block 17810B Parcels 143, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 197, 198, 199, 200 and all 174 strata lots created on Parcel 201 and is situated at West End, Anguilla together with all land, development, improvements, rights, easements and licenses associated therewith, and more commonly known as The Viceroy Anguilla Resort and Residences.

86. "~~**Pro Rata**~~" ~~shall mean the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.~~

87. "~~**Property**~~" ~~shall mean all land, development, improvements, rights, easements and licenses at the Viceroy Anguilla located at Barnes Bay, West End, Anguilla, AI2640 and all rights affecting such property that run with the land, all as more fully described in the Prepetition Facility.~~

88. "**Protected Party**" shall mean any of the Debtors, the Responsible Person, the PSA Guarantors, the Prepetition Lender, the DIP Lender, the Estates, the Committee, the Buyer and each of their respective officers, directors, current (but not former) employees, members, shareholders, advisors, attorneys, representatives, professionals and other agents.

"**PSA**" shall mean any Purchase and Sale Agreement for the purchase of a Residence Property.

"**PSA Creditor**" shall mean any Creditor holding a PSA Claim.

"**PSA Claim**" shall mean any Claim arising from the rejection or termination of a PSA, including all PSA Claims (Tier 1), PSA Claims (Tier 2) and PSA Claims (Tier 3), less that portion of any such Claim that is entitled to treatment as a Priority Claim pursuant to § 507(a)(7).

"**PSA Claim (Tier 1)**" shall mean certain Claims arising from PSAs that were terminated prior to the Petition Date. For the avoidance of doubt, the Holders of PSA Claims (Tier 1) are identified on Exhibit A, Schedule 1.

"**PSA Claim (Tier 1) Distribution**" shall mean a Distribution equal to 50.00% of the amount of such Allowed PSA Claim (Tier 1).

"**PSA Claim (Tier 2)**" shall mean certain Claims arising from pending or threatened prepetition litigation relating to a PSA that either (i) resulted in the entry of a Consent Judgment or out-of-court settlement agreed to by Barnes Bay and the corresponding PSA Creditor, or (ii) was subjected to a standstill agreement executed by Barnes Bay and such PSA Creditor prior to the Petition Date. For the avoidance of doubt, the Holders of PSA Claims (Tier 2) are identified on Exhibit A, Schedule 2.

"**PSA Claim (Tier 2) Distribution**" shall mean a Distribution equal to 25.00% of the amount of such Allowed PSA Claim (Tier 2).

"**PSA Claim (Tier 3)**" shall mean any Claim that arises from a PSA and is not a PSA Claim (Tier 1) or a PSA Claim (Tier 2). For the avoidance of doubt, the Holders of PSA Claims (Tier 3) are identified on Exhibit A, Schedule 3.

"**PSA Claim (Tier 3) Distribution**" shall mean a Distribution equal to 15.00% of the amount of such Allowed PSA Claim (Tier 3).

"**PSA Claim Distributions**" shall mean, collectively, the PSA Claim (Tier 1) Distribution, the PSA Claim (Tier 2) Distribution and the PSA Claim (Tier 3) Distribution.

"**PSA Enforcement Action**" shall mean any judicial, administrative or other action or proceeding commenced by or on behalf of a PSA Creditor to determine or enforce the rights, if any, of a PSA Creditor in the Property or any Residence Property arising on account of any Caution, Charge or other interest arising under Anguillian law and claimed by such PSA Creditor.

89. "**PSA Guarantors**" shall mean Lubert-Adler Partners, L.P., Lubert-Adler Management, Inc., Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., Lubert-Adler Real Estate Capital Fund IV, L.P., Kor Realty Group, LLC, Kor Hotel Management, LLC (d/b/a Viceroy Hotel Group), Viceroy International Holdings, Ltd., Viceroy Cayman Ltd., Viceroy Anguilla Hotel Ltd. and all of their respective officers, directors, shareholders, partners, members, agents and employees, as applicable.

"**Public Sale**" shall mean the public sale of the Property and Acquired Assets conducted in accordance with Anguillian law and pursuant to the Bid Procedures Order.

"**Purchase Option**" shall have the meaning set forth in Section 4.12(a) of the Plan.

-12-

"**Purchase Price**" means the purchase price paid by a Buyer who is not the Prepetition Lender to purchase the Property and the Acquired Assets.

90.    "**PSA Unsecured Claim**" shall mean the General Unsecured Claim of any Person who (i) submitted a deposit for a private villa or condominium unit at the Property pursuant to Purchase and Sale Agreement prior to the Petition Date and (ii) subsequently makes an affirmative election to have its Purchase and Sale Agreement rejected by the Debtors under the Plan.

91.    "**PSA Unsecured Recovery Pool**" shall mean either (i) the $4 million Cash payment that the Prepetition Lender shall make pursuant to the Terms and Conditions of Sale in the event that the Prepetition Lender is the Buyer or (ii) the Cash payment that the Prevailing Party shall make pursuant to the Terms and Conditions of Sale, which funds shall become Distributable Cash

92.    "**Purchase and Sale Agreements**" shall mean those Executory Contracts for the purchase of private villas or condominium units of the Property.

93.    "**Released Party**" means each of (in each case solely in their respective capacities) (i) the directors and officers of the Debtors who are directors or officers of the Debtors immediately prior to the Effective Date; (ii) the DIP Lender; (iii) the Prepetition Lender; (iv) the PSA Guarantors; (v) the Buyer; (vi) the ~~Creditors'~~ Committee and the current and former members thereof (in such capacity); and (vii) the Debtors' agents, financial advisors, accountants, investment bankers, consultants, attorneys, employees, partners and representatives; and (vii) with respect to each of the foregoing Entities in clauses (i) through (vi), such Entities' subsidiaries, affiliates, members, officers, directors, agents, financial advisors, accountants, investment bankers, consultants, attorneys, employees, partners and representatives, in each case, only in their capacity as such.

"**Rental Program Agreement**" shall mean the agreement associated with any new PSA executed by and between a PSA Creditor and Barnes Bay and providing for the participation by such PSA Creditor in a rental program for Residence Properties.

94.    "**Responsible Person**" shall have the meaning set forth under the Internal Revenue Code Section 6672.  On the Effective Date, the Responsible Person shall be Kevin Nystrom.

"**Residence Property**" shall mean any private villa or condominium unit of the Property.

95.    "**Scheduled**" with respect to any Claim, shall mean listed on the Schedules.

96.    "**Schedules**" shall mean the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

97.    "**Secretary of State**" shall mean the Secretary of State of the State of Delaware.

98. "**Subsequent Distribution**" shall mean any Distribution made after the Effective Date Distribution.

99. "**Terms and Conditions of Sale**" shall mean those the Terms and Conditions of Sale approved by the Bankruptcy Court as an exhibit to the Bid Procedures Order provided as part of the Plan Supplement.

100. "**Voting and Claims Agent**" shall mean Kurtzman Carson Consultants LLC, the claims, noticing and balloting agent appointed by the Bankruptcy Court in the Chapter 11 Cases.

101. "**Wind-down Reserve Account**" shall mean one or more reserve accounts to be established on the Effective Date by the Responsible Person in accordance with Article IV.N of this Plan.

B. 2.2 *Rules of Interpretation*

For purposes of the Plan, (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Article __" and "Section __.__" are references to articles or sections hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in § 102 shall apply; and (h) any immaterial effectuating provisions may be interpreted by the Debtors in a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

C. 2.3 *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D. 2.4 *Exhibits*

All Exhibits to this Plan and the Plan Supplement are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

-14-

# ARTICLE ~~II.~~III

## ~~CLASSIFICATION AND~~ TREATMENT OF <u>CERTAIN UNCLASSIFIED</u> CLAIMS

### ~~A.~~ ~~Summary~~

~~This Plan constitutes a chapter 11 plan of liquidation for each of the Debtors.  Except for Administrative Claims, and Priority Tax Claims, all Claims against and Interests in a particular category of Debtors are placed in Classes for each category of the Debtors described below.  In accordance with § 1123(a)(1), the Debtors have not classified Administrative Claims or Priority Tax Claims, as described below.  Further, given that only Barnes Bay has creditors in classes which are Impaired and entitled to vote on this Plan, for purposes of voting and making Distributions only, creditors of all the Debtors will be combined in classes set forth below.~~

### ~~B.~~ ~~Classification~~

~~The table below classifies Claims against and Interests of all Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to §§ 1122 and 1123(a)(1).  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and a Claim or Interest shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.~~

| ~~CLASS~~ | ~~STATUS~~ | ~~ENTITLED TO VOTE~~ |
|---|---|---|
| ~~Class 1:  DIP Claims~~ | ~~Not Impaired~~ | ~~No~~ |
| ~~Class 2:  Prepetition Lender Claim~~ | ~~Not Impaired~~ | ~~No~~ |
| ~~Class 3:  Other Secured Claims~~ | ~~Impaired~~ | ~~Yes~~ |
| ~~Class 4:  Priority Claims~~ | ~~Not Impaired~~ | ~~No~~ |
| ~~Class 5:  PSA Unsecured Claims~~ | ~~Impaired~~ | ~~Yes~~ |
| ~~Class 6:  General Unsecured Claim~~ | ~~Impaired~~ | ~~Yes~~ |
| ~~Class 7:  Prepetition Lender Deficiency Claims~~ | ~~Impaired~~ | ~~Yes~~ |
| ~~Class 8:  Intercompany Indemnity Claims~~ | ~~Impaired~~ | ~~No~~ |
| ~~Class 9:  Interest and Interest Related Claims~~ | ~~Impaired~~ | ~~No~~ |

### ~~C.~~ ~~Unclassified Claims:  Administrative Claims and~~ Priority Tax Claims

As provided in § 1123(a)(1), Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving Distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims in accordance with the terms set forth in this Article II.C.

200451608 v1
RLF1 3980152v. 1

*Administrative Claims*

a.   **(i) Non-Professional Fee Claims**

(a)   General.   The Responsible Person shall pay each Holder of an Allowed Administrative Claim against any Debtor (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, on or as soon as practicable within ten (10) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.  All Administrative Claims against the Debtors which are not due and payable on or before the Effective Date and are not Assumed Liabilities shall be paid in the ordinary course of business when due in the ordinary course and shall be provided for in the Administrative Budget.  Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim against any Debtor may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Responsible Person.  Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. §1930 that have not been paid as of the Effective Date shall be paid by the Responsible Person no later than thirty (30) days after the Effective Date or when due in the ordinary course.  Allowed Administrative Claims, including any unpaid portion of the DIP Claims in the event the DIP Lender or the Prepetition Lender is not the Prevailing PartyBuyer, must be paid in full or fully reserved for in Cash pending allowance by the Bankruptcy Court before any Distribution may be made to any other Holder of an Allowed Claim.

(i)   **Administrative Claims and Administrative Expense Request Deadline**

(b)   Statutory Fees.   All outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. §1930 that have not been paid as of the Effective Date shall be paid by the Responsible Person no later than thirty (30) days after the Effective Date or when due in the ordinary course.

(c)   Bar Date for Administrative Claims.   Each Holder of an Administrative Claim other than the DIP Lender must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than the Administrative Expense Request Deadline for all Administrative Claims that are not subject to the Bar Date Order; *provided*, *however*, that any such Administrative Expense Request need not be filed with a hearing date.  Nothing herein extends a Bar Date established in the Bar Date Order.

b.(d)   Professional Fee Claims.

(i)   The Responsible Person shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from each of the Debtors' Estates pursuant to §§ 327-330 and 503(b)(2)-(b)(6), in Cash, in the amount awarded to such Professionals by interim fee application order or Final Order of the Bankruptcy Court, as soon as practicable after the Effective Date in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases or in accordance with any trial Order issued by the Bankruptcy Court, but

in any event within five (5) Business Days of the Bankruptcy Court's approval of such fees and expenses following the Effective Date.

~~Exhibit A to the~~(ii)    The Plan Supplement shall include an estimate of fees and expenses for Professionals, including all retainers, holdbacks ~~and~~, fees and expenses accrued through the Effective Date ~~in order to permit there to be an Effective Date Distribution~~and any reductions in fees and expenses agreed upon by the respective Professionals.  The Administrative Budget shall set forth the estimated fees and expenses to be incurred by Professionals from the Effective Date through the close of the Chapter 11 Cases, which post-Effective Date fees and expenses shall be paid without further order of the Court.

(iii)    Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtors, Lender and Responsible Person at the addresses listed in ~~Article IX.O~~Section 11.15 of ~~this~~the Plan and on the Office of the United States Trustee so that it is received no later than thirty (30) days after the Effective Date, unless otherwise extended by agreement of the Claimant and the Responsible Person, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors and their Estates, and their successors and assigns.  Allowed Professional Fee Claims must be paid in full or reserved in full in Cash pending allowance by the Bankruptcy Court prior to any payment to Holders of Allowed Claims.

~~2.~~3.2    *Priority Tax Claims*

The Responsible Person shall pay, at the Responsible Person's discretion, each Holder of an Allowed Priority Tax Claim against any Debtor in full in Cash ~~on or as soon as practicable~~within ten (10) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.  All Allowed Priority Tax Claims against the Debtors which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.  The Responsible Person can prepay any Allowed Priority Tax Claim at any time after the Effective Date without any penalty or charge.

Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with such Claims.  Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.

~~D.    Classes of Claims and Interests:  Classification, Treatment and Voting Rights~~

~~Holders of Claims and Interests are divided into Classes and treated as follows:~~

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

The categories of Claims and Interests listed below classify Claims and Interests in or against the Debtors for all purposes, including voting, Confirmation, and Distribution, pursuant

to the Plan and pursuant to §§ 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and the remaining portion of such Claim or Interest, if any, shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

### ~~1.~~4.1 *Class 1 - DIP Claims*

**a.     ~~Classification~~**

(a)     Class 1 consists of all Allowed DIP Claims for each of the Debtors.

**b.     ~~Treatment~~**

(b)     If the Prepetition Lender and the DIP Lender are the Buyer, on the Effective Date the Responsible Person shall, at the exclusive election and direction of the DIP Lender, either ~~(A) pay the Holders of all Allowed DIP Claims in full in Cash, (B~~i) convert the DIP Claims to a debt of Newco, or (~~B~~ii) discharge the DIP Claims in whole or in part. If the Prepetition Lender and the DIP Lender are not the Buyer, the Responsible Person shall pay the Holders of all Allowed DIP Claims in full in Cash on the Effective Date. Upon final and indefeasible payment and satisfaction in full of all Allowed DIP Claims, all Liens and security interests granted to secure such obligations shall be terminated and of no further force or effect. All DIP Claims are deemed Allowed under the Plan consistent with all terms of the DIP Facility and related documents.

**c.     ~~Voting~~**

(c)     Class 1 is not Impaired. Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to § 1126(f). Therefore, holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

### ~~2.~~4.2 *Class 2 - Prepetition Lender ~~Claim~~Claims*

**a.     ~~Classification~~**

(a)     Class 2 consists of all Allowed Prepetition Lender Claims~~, up to the value of the Prepetition Collateral under the Prepetition Facility, for each of the Debtors~~, less the *pro rata* value of the Prepetition Collateral that secured the DIP Claims.

**b.     ~~Treatment~~**

(b)     On the Effective Date, the ~~Responsible Person shall pay the Holders of all~~Prepetition Lender shall receive the following treatment in full and complete satisfaction of its Allowed Prepetition Lender Claims~~in full in Cash or, in~~:

(i) if the ~~event~~Buyer is the Prepetition Lender ~~and~~, the ~~DIP Lender are the Buyer, satisfied in whole or in part and included in~~Prepetition Lender may, at its sole discretion, either waive or convert into the debt of Newco~~, at the exclusive option~~ any or all of the remaining Prepetition Lender~~.~~ Claims; or

(ii) if the Buyer is not the Prepetition Lender, the Prepetition Lender shall receive the net proceeds of the Purchase Price up to the lesser of (A) the Allowed amount of the Prepetition Lender Claims and (B) 100% of such net proceeds.

Upon final and indefeasible payment ~~and/~~or satisfaction in full of all Prepetition Lender Claims as provided above, all Liens and security interests granted to secure such ~~obligation~~obligations shall be terminated and of no further force or effect. All Prepetition Lender Claims are deemed Allowed under the Plan consistent with the Prepetition Facility and related documents.

~~c.    Voting~~

(c) Class 2 is not Impaired. Holders of Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to § 1126(f). Therefore, holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

### ~~3.~~4.3 *Class 3 - Other Secured Claims*

~~a.    Classification~~

(a) Class 3 consists of all Other Secured Claims for each of the Debtors. ~~The Debtors do not believe there are any Holders of Class 3 Claims.~~

~~b.    Treatment~~

(b) The Responsible Person, at its election, shall either (i) pay each Holder of an Allowed Other Secured Claim, in full, in Cash, with interest, as soon as practicable, but not later than thirty (30) days, after the Effective Date, or (ii) return to such Holder the property securing such Allowed Other Secured Claim as the indubitable equivalent of such Holder's interest in such property.

~~c.    Voting~~

(c) Class 3 is Impaired. Therefore, Holders of Allowed Class 3 Claims, if any, are entitled to vote to accept or reject the Plan.

### ~~4.~~4.4 *Class 4 – Priority Claims*

~~a.    Classification~~

(a) Class 4 consists of all Allowed Priority Claims for each of the Debtors.

**b.   Treatment**

(b)    The Responsible Person shall pay each Holder of an Allowed Class 4 Claim, Allowed in relative order of priority pursuant to § 507, in full, in Cash, without interest, as soon as practicable but not later than thirty (30) days after the Effective Date.

**c.   Voting**

(c)    Class 4 is not Impaired.   Holders of Claims in Class 4 are conclusively deemed to have accepted this Plan pursuant to § 1126(f).   Therefore, Holders of Claims in Class 4 are not entitled to vote to accept or reject the Plan.

**~~5.~~4.5**    *Class 5 - ~~PSA~~General Unsecured Claims*

**a.   Classification**

(a)    Class 5 ~~Claims consist solely~~ consists of all ~~PSA~~General Unsecured Claims.

**b.   Treatment**

(b)    In full and final satisfaction of Allowed Class 5 Claims, the Responsible Person shall pay the Holders of all Allowed Class 5 Claims in full in Cash, without interest, within ten (10) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.

(c)    Class 5 is Impaired.   Therefore, Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

**4.6**    *Class 6 – PSA Claims (Tier 1)*

(a)    Class 6 Claims consist solely of all PSA Claims (Tier 1).   For the avoidance of doubt, on the Effective Date, all PSAs shall be deemed rejected or terminated, as applicable, and of no further force or effect.

~~The Debtors propose to assume and assign to the Buyer each Purchase and Sale Agreement; provided, however, the Debtors will reject any Purchase and Sale Agreement for which the corresponding nonDebtor counterparty has elected on its ballot to have such agreement rejected.   In connection with the assumption of each Purchase and Sale Agreement, all pre-petition defaults under such Purchase and Sale Agreement will be cured by a reduction in the remaining amount to be paid by the Class 5 Holder to acquire the corresponding villa or condominium unit equal to the diminution in value of the ownership of such villa or condominium unit from the contractual date of delivery until the available date of delivery~~(b) For purposes of this Section 4.6(b) of the Plan, each PSA Claim (Tier 1) shall be conclusively deemed Allowed up to the full amount listed in the Debtors' Schedules; any amount claimed above the amount listed in the Schedules shall be subject to the procedures described in Section 8.6(b) of the Plan.   Each Holder of an Allowed PSA ~~Unsecured~~ Claim ~~arising from the rejection of a Purchase and Sale Agreement~~(Tier 1) shall receive ~~a Pro~~

~~Rata~~in full and complete satisfaction of its Allowed PSA Claim (Tier 1) a PSA Claim (Tier 1) Distribution, payable in Cash ~~of the PSA Unsecured Recovery Pool on or as soon as practicable~~within ten (10) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim. ~~For the avoidance of doubt, any Class 5 Holder that fails to make an affirmative election shall be deemed to have consented to the assumption by the Debtors and assignment to the Buyer of its Purchase and Sale Agreement on the terms set forth in~~Any Holder of an Allowed PSA Claim (Tier 1) that accepts a PSA Claim (Tier 1) Distribution shall retain all Guaranty Claims notwithstanding the releases described in Section 9.7 of the Plan, and the injunction described in Section 9.4 of the Plan.

<p style="text-align:center">~~c.~~ ~~Voting~~</p>

(c)     In lieu of the foregoing treatment, any Holder of an Allowed PSA Claim (Tier 1) may affirmatively elect either the Purchase Option or the Enforcement Option, in either case subject to the terms and conditions set forth in Section 4.12 of the Plan, including without limitation the waiver of any right to receive a Distribution under the Plan or otherwise to seek payment of such Claim from the Debtors or their Estates.

(d)     Class 6 is Impaired. Therefore, Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

**4.7     *Class 7 – PSA Claims (Tier 2)***

(a)     Class 7 Claims consist solely of all PSA Claims (Tier 2). For the avoidance of doubt, on the Effective Date, all PSAs shall be deemed rejected or terminated, as applicable, and of no further force or effect.

(b)     For purposes of this Section 4.6(b) of the Plan, each PSA Claim (Tier 2) shall be conclusively deemed Allowed up to the full amount listed in the Debtors' Schedules; any amount claimed above the amount listed in the Schedules shall be subject to the procedures described in Section 8.6(b) of the Plan. Each Holder of an Allowed PSA Claim (Tier 2) shall receive in full and complete satisfaction of its Allowed PSA Claim (Tier 2) a PSA Claim (Tier 2) Distribution, payable in Cash within ten (10) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim. Any Holder of an Allowed PSA Claim (Tier 2) that accepts a PSA Claim (Tier 2) Distribution shall retain all Guaranty Claims notwithstanding the releases described in Section 9.7 of the Plan, and the injunction described in Section 9.4 of the Plan.

(c)     In lieu of the foregoing treatment, any Holder of an Allowed PSA Claim (Tier 2) may affirmatively elect either the Purchase Option or the Enforcement Option, in either case subject to the terms and conditions set forth in Section 4.12 of the Plan, including without limitation the waiver of any right to receive a Distribution under the Plan or otherwise to seek payment of such Claim from the Debtors or their Estates.

(d)     Class ~~5~~7 is Impaired. Therefore, Holders of Allowed Class ~~5~~7 Claims are entitled to vote to accept or reject the Plan.

*Class 6**8** – ~~General Unsecured~~PSA Claims (Tier 3)*

       (a)     Class 8 Claims consist solely of all PSA Claims (Tier 3). For the avoidance of doubt, on the Effective Date, all PSAs shall be deemed rejected or terminated, as applicable, and of no further force or effect.

       (b)     For purposes of this Section 4.6(b) of the Plan, each PSA Claim (Tier 3) shall be conclusively deemed Allowed up to the full amount listed in the Debtors' Schedules; any amount claimed above the amount listed in the Schedules shall be subject to the procedures described in Section 8.6(b) of the Plan. Each Holder of an Allowed PSA Claim (Tier 3) shall receive in full and complete satisfaction of its Allowed PSA Claim (Tier 3) a PSA Claim (Tier 3) Distribution, payable in Cash within ten (10) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim. Any Holder of an Allowed PSA Claim (Tier 3) that accepts a PSA Claim (Tier 3) Distribution shall retain all Guaranty Claims notwithstanding the releases described in Section 9.7 of the Plan, and the injunction described in Section 9.4 of the Plan.

       (c)     In lieu of the foregoing treatment, any Holder of an Allowed PSA Claim (Tier 3) may affirmatively elect either the Purchase Option or the Enforcement Option, in either case subject to the terms and conditions set forth in Section 4.12 of the Plan, including without limitation the waiver of any right to receive a Distribution under the Plan or otherwise to seek payment of such Claim from the Debtors or their Estates.

       ~~a.     **Classification**~~

~~Class 6 consists of all General Unsecured Claims except those General Unsecured Claims in Class 5 or 7.~~

       ~~b.     **Treatment**~~

~~In full and final satisfaction of Allowed Class 6 Claims, the Responsible Person shall pay the Holders of all Allowed Class 6 Claims in full in Cash, without interest, on or as soon as practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.~~

       ~~c.     **Voting**~~

       (d)     Class 6**8** is Impaired. Therefore, Holders of Allowed Class 6**8** Claims are entitled to vote to accept or reject the Plan.

       7.4.9     *Class 7**9** – Prepetition Lender Deficiency Claims*

       ~~a.     **Classification**~~

       (a)     Class 7**9** consists of all the Prepetition Lender Deficiency Claims, if any, against all the Debtors.

(b) On the occurrence of the Effective Date, in full and final satisfaction of Allowed Class 9 Claims, Holders of Class 9 Claims shall be deemed to have waived any right to a Distribution on account of such Claims.

**b.** **Treatment**

In full and final satisfaction of Allowed Class 7 Claims, Holders of Class 7 Claims shall agree to waive any recovery on account of such Claims in the event the Prepetition Lender and the DIP Lender are the Buyer. To the extent that the Buyer is not the Prepetition Lender, the Prepetition Lender Deficiency Claims shall be entitled to receive either (i) a Distribution that is, on a percentage recovery basis, no less than the percentage recovery received by the holders of Allowed PSA Unsecured Claims or (ii) such other recovery as may be agreed to by the Holders of Class 7 Prepetition Lender Deficiency Claims; provided however, that the Holder of the Prepetition Lender Deficiency Claim shall not be entitled to receive a total Distribution that exceeds 100% of the face amount of the Allowed Prepetition Lender Claims plus interest from the Petition Date to date of the final payment of the Allowed Prepetition Lender Deficiency Claims.

**c.** **Voting**

(c) Class 79 is Impaired. Therefore, Holders of Class 79 Claims are entitled to vote to accept or reject the Plan.

**8.4.10** *Classes 810 – Intercompany Indemnity Claims*

**a.** **Classification**

(a) Class 810 consists of all Intercompany Indemnity Claims.

**b.** **Treatment**

(b) Intercompany Indemnity Claims in Class 810 shall be waived, released and forever discharged. No Distribution shall be paid under the Plan on account of any Allowed Intercompany Indemnity Claim.

**c.** **Voting**

(c) Holders of Intercompany Indemnity Claims in Class 810 shall receive no Distribution under this Plan and are conclusively deemed to reject the Plan pursuant to § 1126(g).

**9.4.11** *Classes 911 – Interests and Interest Related Claims*

**a.** **Classification**

(a) Class 911 consists of all Interests and Interest Related Claims against any of the Debtors.

**b.    Treatment**

(b)    No Distribution shall be paid under the Plan on account of any Interest or Allowed Interest Related Claim.  On the Effective Date, all Interests in any of the Debtors shall be deemed canceled, null and void, and of no force and effect.

**c.    Voting**

(c)    Holders of Interests and Interest Related Claims in Class 9̶11 are conclusively deemed to reject the Plan pursuant to § 1126(g).  Therefore, Holders of Interests and Allowed Interest Related Claims in Class 9̶11 are not entitled to vote to accept or reject this Plan.

### 4.12    *Election of Alternative Treatments by PSA Creditors*

Any Holder of a PSA Claim in Class 6, Class 7 or Class 8 may elect, in lieu of receiving a PSA Claim Distribution, to exercise either the Purchase Option or the Enforcement Option.

(a)    Purchase Option.

A PSA Creditor electing to purchase a Residence Property in lieu of receiving a PSA Claim Distribution may elect to purchase a Residence Property on the following terms and conditions:

(i)    Same Unit.  The PSA Creditor shall execute a new PSA for the purchase of the Residence Property identified in such PSA Creditor's prepetition PSA.  The purchase price for such Residence Property shall be based on the purchase price offered by Barnes Bay to such PSA Creditor in the corresponding Nystrom Letter or otherwise, and shall reflect a credit equal to 100% of the face amount of such PSA Creditor's Scheduled PSA Claim.

(ii)    Trade Up.  The PSA Creditor shall execute a new PSA for the purchase of an available Residence Property of higher value than the Residence Property identified in such PSA Creditor's prepetition PSA.  The purchase price for such Residence Property shall reflect a credit equal to 110% of the face amount of such PSA Creditor's Scheduled PSA Claim.

(iii)    Trade Down.  The PSA Creditor shall execute a new PSA for the purchase of an available Residence Property of lesser value than the Residence Property identified in such PSA Creditor's prepetition PSA.  The purchase price for such Residence Property shall reflect a credit equal to 100% of the face amount of such PSA Creditor's Scheduled PSA Claim.

(iv)    Multiple Residence Properties.  In the event that a PSA Creditor has entered into a PSA for two Residence Properties, then such PSA Creditor shall have the option to execute a new PSA for the purchase of either or both Residence Properties.  If the PSA Creditor elects to enter into a new PSA to purchase the larger (on a square footage basis) of the two Residence Properties,

-24-

then the purchase price for such Residence Property shall reflect a credit equal to 100% of the face amount of such PSA Creditor's Scheduled PSA Claim; *provided, however*, that the purchase price shall be negotiated by and between the Lender or Buyer, as applicable, and the applicable PSA Creditor. If the PSA Creditor elects to enter into a new PSA to purchase the smaller (on a square footage basis) of the two Residence Properties, then the purchase price for such Residence Property shall reflect a credit equal to 100% of the deposit paid by such PSA Creditor on account of the smaller Residence Property and 50% of the deposit paid by such PSA Creditor on account of the larger Residence Property, and the purchase price shall be negotiated by and between the Lender or Buyer, as applicable, and the applicable PSA Creditor.

Each PSA Creditor shall have the exclusive, nontransferable right to purchase the Residence Property identified in such PSA Creditor's prepetition PSA by making a timely election as proscribed in this 4.12 and executing a new PSA for the purchase of such Residence Property, and such Residence Property shall not be deemed "available" to other PSA Creditors for purposes of options (ii) and (iii) above unless such PSA Creditor fails to make such election (at which point such right of first refusal shall expire and the Residence Property shall become "available" for purposes hereof). If more than one PSA Creditor has placed a deposit on the same Residence Property, then the exclusive right to purchase such Residence Property shall belong to the PSA Creditor that was first in time to place a deposit on such Residence Property. Any PSA Creditor that elects the Purchase Option shall be deemed to have irrevocably waived, released and discharged any and all Guaranty Claims.

Any PSA Creditor that elects the Purchase Option must execute a new PSA for the purchase of a Residence Property on or prior to August 1, 2011 and the closing for such sale must occur on or prior to September 19, 2011, in each case unless otherwise agreed to in writing by the Debtors or, on and after the Effective Date, the Buyer. If the Buyer is not the Prepetition Lender, any PSA Creditor that has executed a new PSA after the Petition Date but prior to the date of the Public Sale shall have the right, within five (5) Business Days after the Public Sale, to rescind such election. Upon such rescission, the new PSA shall become null and void, the PSA Creditor's prepetition PSA shall be fully reinstated, releases given in any addendum or related agreement executed after the Petition Date shall be of no further force or effect, and such PSA Creditor shall receive the applicable PSA Claim Distribution in full and final satisfaction of such PSA Creditor's PSA Claim.

In addition, each PSA Creditor that elects the Purchase Option shall have the exclusive right to enter into the Rental Program Agreement pursuant to which the PSA Creditor will be entitled to receive the HOA Fees Guaranty. Further, each PSA Creditor that elects the Purchase Option shall be entitled to receive the waiver of tax levy and applicable alien land holder license fees pursuant to the MOU. The Debtors and the Buyer, as applicable, each agree that they will not sell any available Residence Property for a price per square foot that is less than five percent (5%) lower than the lowest price per square foot for any comparable unit sold pursuant to the Purchase Option under the Plan. This restriction shall be effective for a period of six (6) months commencing on the Effective Date. A "comparable unit" shall be determined based on size, location and view.

200451608 v1
RLF1 3980152v. 1

Nothing contained herein shall prohibit a PSA Creditor from executing a new PSA for the purchase of a Residence Property prior to the Effective Date, provided that such transaction is otherwise in compliance with the applicable orders of the Bankruptcy Court. Any such PSA that has not been fully consummated and resulted in a transfer of title to the purchaser prior to the Effective Date shall be assumed by the Debtors and assigned to the Buyer pursuant to Article VII hereof.

(b)      Enforcement Option.

A PSA Creditor electing to pursue the Enforcement Option may, notwithstanding any other term of the Plan (including the provisions of Article IX hereof), commence one or more PSA Enforcement Actions.

(c)      Form and Manner of Election.

Any PSA Creditor wishing to elect either the Purchase Option or the Enforcement Option must affirmatively elect such treatment either (i) on the Ballot by which it votes to accept or reject the Plan or (ii) in a writing signed by the PSA Creditor and received by the Debtors on or prior to the Voting Deadline; *provided*, *however*, that any PSA Creditor that commences a PSA Enforcement Action on or prior to the Voting Deadline shall be deemed conclusively to have affirmatively elected the Enforcement Option. Once such an election is made and, if applicable, received by the Debtors, such election shall be irrevocable and binding on any successor in interest with respect to such PSA Claim, but shall not preclude the Debtor or other Persons from objecting to such Claim on any applicable ground.

The election by a PSA Creditor of either the Purchase Option or the Enforcement Option shall be deemed to constitute a waiver by such PSA Creditor of any right to seek receive a Distribution under the Plan or otherwise to seek payment of such Claim from the Debtors or their Estates.

Any PSA Creditor that that fails to timely elect either the Purchase Option or the Enforcement Option shall be conclusively deemed to have waived all rights to exercise either the Purchase Option or the Enforcement Option, including any right to commence a PSA Enforcement Action against any Person.

## ARTICLE ~~III.~~V

## ACCEPTANCE OR REJECTION OF THIS PLAN

### ~~A.~~5.1   *Impaired Classes of Claims Entitled to Vote*

Except as otherwise provided in an order~~(s)~~ of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 3 ~~(—~~Other Secured Claims~~)~~, Class 5 ~~(PSA Unsecured Claims), Class 6 (—~~General Unsecured Claims, Class 6—PSA Claims (Tier 1), Class 7—PSA Claims (Tier 2), Class 8—PSA Claims (Tier 3) and Class ~~7 (9—~~Prepetition Lender Deficiency Claims) ~~shall be~~are Impaired under the Plan. Pursuant to § 1126(c), Holders of Claims in Classes 3, 5, 6, 7, 8 and 9 are entitled to vote to accept or reject this Plan. If and to the extent any other Class identified as being not Impaired is Impaired (whether as a result of the terms of

this Plan or any modification or amendment thereto), upon such determination, such Class shall then be entitled to vote to accept or reject this Plan.

### ~~B.~~5.2   *Classes Deemed to Accept this Plan*

Class 1 (DIP Claims), Class 2 (Prepetition Lender Claims) and Class 4 (Priority Claims) are not Impaired ~~by this~~under the Plan.  Pursuant to § 1126(f), Holders of Claims in Classes 1, 2 and 4 are therefore conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in Classes 1, 2 and 4 will therefore not be solicited.

### ~~C.~~5.3   *Classes Deemed to Reject this Plan*

~~Holders of~~ Class ~~8~~10 (Intercompany Indemnity Claims) and Class ~~9~~11 (Interests and Interest Related Claims) are Impaired and not entitled to receive any Distribution under this Plan.  Pursuant to § 1126(g), therefore, Holders of Claims and Interests Classes ~~8~~10 and ~~9~~11 are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims in Classes ~~8~~10 and ~~9~~11 therefore will not be solicited.

### ~~D.~~5.4   *Nonconsensual Confirmation*

~~The~~To the extent necessary, the Debtors intend to request that the Bankruptcy Court confirm this Plan pursuant to § 1129(b).

## ARTICLE ~~IV.~~VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

### ~~A.~~6.1   *Implementation of Plan*

Prior to the Effective Date, the Debtors shall continue to operate their businesses subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  This Plan contemplates and is predicated upon the sale of the Property and Acquired Assets, the transfer of the Property and Acquired Assets to Buyer on the Effective Date, the dissolution of the Debtors and the liquidation of the Estates.

### ~~B.~~6.2   *The Asset Sale*

The Buyer shall ~~have~~be the Person identified at the Public Sale and approved by the Court as having submitted the highest and otherwise best bid for the Property and the Acquired Assets at the ~~Auction~~Public Sale pursuant to the Bid Procedures Order and the Terms and Conditions of Sale, which includes ~~assuming~~the assumption of those Executory Contracts set forth on the Assumed Contracts Schedule ~~and and assuming, among others,~~, any new PSAs executed after the Petition Date but not yet closed as of the Effective Date and the postpetition operating liabilities of the Debtors as Assumed Liabilities.  The sale of the Property and Acquired Assets shall be consummated on the Effective Date pursuant to the Plan as contemplated by §§ 363 and 1123(a)(5)(D).  ~~On the Effective Date, the Buyer shall assume the Purchase and Sale Agreements except for any Purchase and Sale Agreement for which the~~

corresponding nonDebtor party has elected to have such agreement rejected, and shall retain the proceeds derived therefrom.

### C.6.3    Formation*Funding* of Newco*the Plan*

All Cash consideration necessary for the payment of Distributions under the Plan and the funding of the Administrative Budget will be derived from (i) Cash on hand on the Effective Date, (ii) Cash proceeds received by the Debtors from the DIP Lender, the Prepetition Lender or from the sale of the Property and Acquired Assets to the Buyer, and (iii) to the extent the foregoing are insufficient to fund all payments and Distributions to be made pursuant to the Plan, the Buyer shall provide sufficient Cash to cover such shortfall, which Cash shall be in addition to the purchase price paid by the Buyer in connection with the Public Sale.  Any such contributions of Cash by the Buyer to fund Distributions under the Plan shall be deemed to have been "gifted" by the Buyer directly to the recipients of such Distributions.

To the extent not otherwise provided for herein or ordered by the Court, the Responsible Person shall estimate appropriate reserves of Cash to be set aside (or secured in the form of an appropriate credit facility from the Buyer) in order to pay or reserve for Disputed Claims, accrued expenses and for the payment of prospective expenses and liabilities of the Estates after the Effective Date.  Without limitation, these reserves shall include funds for the Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Disputed Claims and all amounts due pursuant to 28 U.S.C. §1930.

Notwithstanding any contrary provision contained herein, the Responsible Person shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Responsible Person to determine reserves and amounts to be paid to parties in interest.

Newco will be formed on or before the Effective Date by the Prepetition Lender as a new entity, which will purchase and subsequently hold, directly or indirectly, the Property and the Acquired Assets in the event the Prepetition Lender and the DIP Lender are the Buyer.  The Buyer shall adequately capitalize Newco and provide Newco with adequate working capital, among other things, so as to provide adequate assurance of Newco's ability to perform under all assumed executory contracts and unexpired leases.

### D.    DIP Facility

The DIP Lender has provided the DIP Facility in the principal amount of $5 million.  The interest rate is LIBOR plus 1,000 basis points.  The DIP Facility is secured by all assets of Barnes Bay and matures on the earlier of (i) the four (4) month anniversary of the Petition Date; (ii) the Effective Date; (iii) the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code; (iv) at the sole discretion of the DIP Lender, upon an event of default under the DIP Facility; or (v) upon payment in full of all obligations under the DIP Facility.

Entry of the Confirmation Order shall constitute the approval, pursuant to §§ 105(a), 1123(a)(5)(B) or 1123(a)(5)(C), effective as of the Effective Date, of the transfer of the Property and Acquired Assets and certain of the Debtors' liabilities to the Buyer pursuant to the Terms and Conditions of Sale. The Buyer shall be entitled to the protections afforded pursuant to § 363(m).

Notwithstanding the reorganization provided for herein, each and every Debtor shall remain severally responsible for the payment of quarterly fees pursuant to 28 U.S.C. §1930 to the Office of the United States Trustee until such time as a particular case is closed pursuant to a Final Decree or other order of the Bankruptcy Court, dismissed, or converted to Cash under another chapter of the Bankruptcy Code.

F.6.5    *Causes of Action*

~~Except for those Causes of Action listed on Exhibit A to the Plan, all~~All Causes of Action, including all Avoidance Actions, shall be transferred to and vest fully in the Responsible Person. Pursuant to § 1123, the Responsible Person shall be authorized to commence all Causes of Action on behalf of all of the Debtors ~~and/~~or their Estates (except for any Cause of Action that may be released pursuant to this Plan). The authorization shall be approved without limitation, notwithstanding any other applicable law that could restrict any such transfer or authorization, all of which shall be determined by the Bankruptcy Court in the Confirmation Order to be void as against public policy. ~~After the Effective Date, Causes of Action and the Avoidance Actions, may be prosecuted, settled or abandoned with or without Court approval by the Responsible Person. Notwithstanding anything to the contrary herein, no Distribution shall be made to the Holder of any Claim, including by way of setoff or recoupment by such Claimant, if the Debtors, the Committee, or the Responsible Person has taken action to recover, or given notice to the applicable party of intent to take such action, on a Cause of Action against the Holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until~~Net proceeds, if any, recovered on account of any Cause of Action after the payment of any expenses incurred in connection with the prosecution of such Cause of Action ~~is resolved by Final Order or otherwise in accordance with this section~~or the recovery of such proceeds shall be distributed by the Responsible Person to the Lender.

On the Effective Date, the Responsible Person shall be substituted as the party in interest instead of the Debtors or the Committee for all Causes of Action. The Responsible Person shall succeed, on the Effective Date, in all respects to all of the rights, privileges and immunities of the Debtors, including without limitation, the attorney-client privileges and any other evidentiary privileges of the Debtors.

Nothing in this Plan or the Confirmation Order shall limit, impair or otherwise restrict the rights of the Responsible Person to bring any Claim or Cause of Action, except for those actions otherwise released pursuant to this Plan, against any Person for any reason whatsoever, including the failure of this Plan to identify ~~and/~~or describe any such potential Claim~~(s)~~ or ~~causes~~Cause of ~~action(s)~~Action with specificity. No Person may rely on the absence of a specific reference in the Plan or Disclosure Statement to any Cause of Action against them as an indication that the

Debtors, the Responsible Person or the Buyer will not pursue any and all available Causes of Action against them. ~~In addition to the general reservation of rights and notwithstanding the language in § 1127(b), the Responsible Person and the Buyer reserve the right to modify the Plan at any time prior to or after substantial consummation of the Plan to include such specificity, if necessary, or otherwise desirable; provided, however, that the Responsible Person or the Buyer shall comply with the notice requirements set forth in § 1127(b) and Bankruptcy Rule 2002 in connection with any such modifications.~~ Except as otherwise specifically released pursuant to the Confirmation Order, it is the Responsible Person's intent not to waive any Cause of Action.

Except to the extent a Cause of Action or Avoidance Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or pursuant to a Bankruptcy Court order, the Responsible Person expressly reserves all Causes of Action for later adjudication. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, Claim preclusion, estoppel (judicial, equitable or otherwise), or laches shall apply to such Causes of Action or Avoidance Actions upon, after, or as a consequence of the Confirmation Order. In accordance with § 1123(b)(3), all Causes of Action and Avoidance Actions that a Debtor may hold against a Person shall vest in the Responsible Person pursuant to the terms of this Plan.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE RESPONSIBLE PERSON SHALL ~~HAVE NO FIDUCIARY DUTY TO INVESTIGATE,~~NOT COMMENCE ~~OR PURSUE TO COLLECTION AND JUDGMENT~~ ANY CAUSE OF ACTION AGAINST ~~ANY HOLDER OF AN ALLOWED CLASS 6 CLAIM, THE PREPETITION LENDER OR~~ THE DIP LENDER, THE PREPETITION LENDER, ANY PSA CREDITOR OR ANY OTHER HOLDER OF ~~A~~AN ALLOWED CLAIM ~~THAT IS PAID IN FULL UNDER THE TERMS~~OR INTEREST OTHER THAN ANY PSA CREDITOR THAT ELECTS TO EXERCISE THE ENFORCEMENT OPTION PURSUANT TO SECTION 4.12 OF THE PLAN, AGAINST WHOM ALL CAUSES OF ACTION ARE EXPRESSLY PRESERVED.

### ~~G.~~6.6 *Appointment and Term of the Responsible Person*

The initial Responsible Person shall be Kevin Nystrom. To the extent that the Responsible Person becomes incapacitated or is otherwise unable or unwilling to assume and carry out his duties under the Plan, a Responsible Person shall be selected by mutual agreement of the Prepetition Lender and the Committee or, if after the Effective Date, by the Buyer. The terms of the Responsible Person's employment, including the compensation of the Responsible Person and the appointment of any successor to the Responsible Person, will be set forth in a separate agreement to be filed as part of the Plan Supplement.

### ~~H.~~6.7 *Duties of the Responsible Person*

In addition to the duties as set forth elsewhere in this Plan, the Responsible Person shall have the following duties:

(a) to investigate and, if necessary and appropriate, to prosecute, enforce (or not prosecute or enforce), or to compromise, release or settle any Causes of Action on behalf of the Estates;

(b) to implement the Administrative Budget and establish such accounts as may be necessary or appropriate for the maintenance of the Administrative Budget and the Distribution Fund.

2. to invest the PSA Unsecured Recovery Pool in accordance with Local Rule 4001-3;

3. to create the Wind-down Reserve Account, implement the Administrative Budget and deposit funds to such reserve;

(c) to file any and all reports, pleadings and other documents necessary to carry out the provisions of this Plan;

(d) to make any and all Distributions required or permitted to be made under this Plan;

6. to pay any and all Distributions on account of Allowed Claims;

(e) to make and file tax returns and final tax returns for any of the Debtors;

(f) to request the entry of a Final Decree;

(g) to take any and all actions, including any action set forth in Article IV.R Section 6.13 hereof, necessary to dissolve and cancel the existence of each of the Debtors in the State of Delaware and in any other jurisdiction in which any Debtor is organized or qualified to do business;

(h) to determine reserve amounts for Post-Confirmation Expenses and Disputed Claims; and

(i) to take any and all other actions necessary or appropriate to implement this Plan and the liquidation of the Debtors in accordance with applicable law, provided, that nothing herein shall permit the Responsible Person to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; and provided further that, the Responsible Person shall not renew or extend such insurance coverage, or other new or substitute coverage.

In connection with the execution of his duties under this Plan, the Responsible Person shall be authorized:

(a) to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his duties as responsible person of and for the Estates;

(b.) to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

(c.) to authorize, renew, extend and benefit from any of the Debtors' insurance policies and rights of indemnification;

(d.) to retain and pay professionals (including any of the Debtors' or the Committee's former Professionals) or other Persons to assist the Responsible Person in the liquidation of the Estates, without prior Bankruptcy Court approval, and to designate another Person to be the Disbursing Agent as set forth in ~~Article VI~~Section 8.2 of the Plan;

(e.) to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his duties as responsible person of and for the Estates;

(f.) to object to the allowance of, and settle, any Disputed Claim;

(g.) to settle any Cause of Action without notice or a hearing where the Cause of Action has an alleged estimated value of $50,000 or less or, after notice to any party affected by the settlement, and a hearing to seek an order of the Bankruptcy Court approving the compromise, release or settlement of any Cause of Action that has an alleged estimated value of greater than $50,000; and

(h.) to employ such other procedures, not inconsistent with this Plan, necessary for the Responsible Person to perform his duties hereunder.

The Responsible Person shall be deemed the Estates' representative in accordance with the provisions of the Bankruptcy Code, including § 1123 and shall have all powers, authority and responsibilities specified in this Plan, including the powers of a trustee under §§ 108, 704, and 1106 and Rule 2004 of the Bankruptcy Rules (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting Claims, defenses, offsets and privileges), to the extent not inconsistent with this Plan.

### 6.8 *Omitted*

### I. ~~No Recourse to Protected Parties~~

~~Notwithstanding that the Allowed amount of any particular Disputed Claim may be reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or subsequently Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other Holders of Allowed Claims in the relevant Class, no Holder of a Claim shall have recourse to the Protected Parties, or their successors or assigns, or the Holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under § 502(j). THUS, THE ENTRY OF AN ORDER ESTIMATING A CLAIM FOR PURPOSES OF DISTRIBUTION MAY LIMIT THE DISTRIBUTION TO BE MADE ON SUCH CLAIM, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH CLAIM.~~

~~**J.**  **Transfer Free and Clear of Taxes**~~

~~Any and all transfers of real or personal property owned by the Debtors shall be free of any and all state and local stamp taxes and similar taxes pursuant to § 1146(a), provided, however, that upon the Effective Date, Newco shall pay to the Government of Anguilla those taxes agreed upon pursuant to the Memorandum of Understanding dated September 17, 2010, as amended.  In the event that the Prevailing Party acquires the Property and Acquired Assets, that party shall be required to satisfy all tax obligations under Anguillan law or as otherwise agreed to with the Government of Anguilla.~~

### ~~K.~~6.9  *Discharge of Debtors' Professionals*

On the Effective Date, the Debtors' Professionals and agents shall be released and discharged from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to § 503(b) for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order.  The Professionals retained by the Debtors shall not be entitled to compensation and reimbursement of expenses for services rendered to or on behalf of the Debtors after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date~~; provided, however, that to the extent~~.  For the avoidance of doubt, nothing contained herein shall prohibit the Debtors or the Responsible Person from engaging any of the Debtors' Professionals for the purpose of rendering services to the Debtors or the Responsible Person, as applicable, on and after the Effective Date, and any such fees and expenses ~~are~~ incurred ~~after the date that is fifteen business days prior to the deadline to file final fee applications, any such fees and expenses must be submitted to the Responsible Person and shall~~in connection with such post-Effective Date services may be paid by the Debtors or Responsible Person ~~within 20 days of submission of such fees and expenses~~, as applicable, without further order of the Bankruptcy Court.

### ~~L.~~6.10 *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released and discharged from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims and expense reimbursement requests for members of the Committee; (iii) requests for compensation and reimbursement of expenses pursuant to § 503(b) for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order.  The Professionals retained by the Committee and the respective members thereof shall not be entitled to

200451608 v1
RLF1 3980152v. 1

compensation and reimbursement of expenses for services rendered to the Committee after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date; provided, however, that to the extent any such fees and expenses are incurred after the date that is fifteen business days prior to the deadline to file final fee applications, any such fees and expenses must be submitted to the Responsible Person, and shall be paid by the Responsible Person within 20 days of submission of such fees and expenses..

**M. Funding of the Plan**

The Cash Distributions to be made pursuant to the Plan will be made and the Cash necessary to fund the Wind-down Reserve Account will be derived from (i) Cash on hand on the Effective Date, (ii) Cash proceeds received by the Debtors from the DIP Lender, the Prepetition Lender or from sale of the Property and Acquired Assets to the Prevailing Party; and (iii) any payments to be received by the Debtors or the Responsible Person from the prosecution and enforcement of Causes of Action and other funds available after the Effective Date.

To the extent not otherwise provided for herein or ordered by the Court, the Responsible Person shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for Disputed Claims, accrued expenses and for the payment of prospective expenses and liabilities of the Estates after the Effective Date. Without limitation, these reserves shall include funds for the Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Disputed Claims and all amounts due pursuant to 28 U.S.C. §1930.

Notwithstanding any contrary provision contained herein, the Responsible Person shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Responsible Person to determine Distributable Cash, reserves and amounts to be paid to parties in interest.

**N. Wind-down Reserve Account**

On the Effective Date, or as soon thereafter as reasonably practicable, the Responsible Person shall create the Wind-down Reserve Account and shall hold in such reserve account the Cash transferred by the Debtors and, if such funds from the Debtors are inadequate, from the Buyer to fund such account. The Responsible Person shall pay Plan administration costs and costs of holding and liquidating any non-Cash property, including but not limited to taxes, professional fees and the fees and expenses of the Responsible Person from the Wind-down Reserve Account. After all costs associated with the wind down of the Estates have been paid, and/or upon the reasonable determination of the Responsible Person that the funds in the Wind-down Reserve Account exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Wind-down Reserve Account shall be designated as Distributable Cash.

**O. Distributable Cash**

Distributable Cash shall be allocated to the Distribution Fund. Distributions of Cash, if any, to Holders of Allowed Claims in Classes 5, 6, or 7 shall be made solely from the

~~Distribution Fund. The Responsible Person shall make the Effective Date Distribution and each Subsequent Distribution of Distributable Cash.~~

### ~~P.~~6.11 *Employee Matters*

Upon the Effective Date, the terms and conditions of employment of all existing management and employees at the Property shall remain unchanged. To the extent not earlier terminated in accordance with their terms or assumed by the Buyer, all employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans are deemed terminated as of the Effective Date in accordance with their terms with no further action required by the Debtors or the Responsible Person, and to the extent any of such employee programs constitute distinct executory contracts with individual employees or otherwise, such contracts are deemed rejected unless otherwise listed on the Assumed Contracts Schedule. The Responsible Person is authorized to take any actions to permit the termination of such programs and discharge all benefit liabilities to participants and beneficiaries of such programs. The transactions contemplated by the Terms and Conditions of Sale shall not require notice or give rise to any Claim under the Worker Adjustment and Retraining Notification Act or other comparable applicable law.

### ~~Q.~~6.12 *Corporate and Limited Liability Company Action*

On the Effective Date, the matters under this Plan involving or requiring corporate or limited liability company action of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors, members or shareholders, as applicable, and execution of all documentation incident to this Plan, notwithstanding any otherwise applicable non-bankruptcy law or the Organization Documents of the Debtors, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, members or shareholders, as applicable, of the Debtors. To the extent necessary, the Responsible Person shall be vested with authority to execute any document necessary to effectuate such action.

### ~~R.~~6.13 *Dissolution of the Debtors*

As soon as practical after the Effective Date, the Responsible Person shall file any documents necessary and proper pursuant to applicable law to dissolve the Debtors and the Debtors shall dissolve and cease to exist.

### ~~S.~~6.14 *Saturday, Sunday or Legal Holiday*

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day.

200451608 v1
RLF1 3980152v. 1

# ARTICLE ~~V.~~VII

## TREATMENT OF EXECUTORY CONTRACTS ~~AND UNEXPIRED LEASES~~

### ~~A.~~7.1 *Rejection of Remaining Executory Contracts ~~and Unexpired Leases~~*

On the Effective Date, except for any Executory Contract that (i) previously expired or terminated by its own terms, (ii) was previously assumed or rejected by an order of the Bankruptcy Court pursuant to § 365, (iii) is assumed pursuant to this Plan or (iv) is the subject of a pending motion to assume or assume and assign as of the Confirmation Date, shall be deemed rejected pursuant to §§ 365 and 1123, effective as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to §§ 365 and 1123 as of the Effective Date.

### ~~B.~~7.2 *Assumption and Cure of Executory Contracts*

The ~~Debtors will file, as Exhibit ___ to the Plan Supplement, the~~ Assumed Contracts Schedule, which will be filed as part of the Plan Supplement, shall identify ~~(i)~~ Executory Contracts to be assumed and assigned to the Buyer pursuant to the Terms and Conditions of Sale and the Plan ~~and (ii) Executory Contracts previously assumed by the Debtors by order of the Bankruptcy Court, provided, however, that the~~. The Debtors reserve the right to amend the Assumed Contracts Schedule at any time up to three (3) Business Days before the Confirmation Hearing to delete any Executory Contract ~~contained~~listed therein or, with the consent of the affected counterparty, to add any Executory Contract to the Assumed Contracts Schedule. The Debtors will provide notice of any amendment to the Assumed Contracts Schedule to the parties to the Executory Contracts added or removed, to the Prepetition Lender, the Buyer and the Committee. The Assumed Contracts Schedule shall include a designation of the ~~monetary cure amount~~Cure Amount, if any, proposed by the Debtors ~~believe is owed with respect to~~to be paid in connection with the assumption and assignment of each Executory Contract ~~set forth~~listed therein~~; however, such schedules shall be filed under seal and provided individually to each counterparty or in the Bid Procedures Order~~.

On the Effective Date, each Executory Contract that is identified in the Assumed Contracts Schedule shall be deemed assumed in accordance with the provisions and requirements of §§ 365 and 1123, and all defaults, if any, shall be deemed cured by the payment of the Cure Amount, if any, corresponding to such Executory Contract.

Except as provided elsewhere in this Plan ~~or in the Bid Procedures Order, any non-Debtor party that objects to the~~, any Person objecting to the proposed assumption or assignment of an Executory Contract, including on the basis of any objection to (~~i~~i) the amount of the proposed ~~cure payment~~Cure Amount, if any, to be paid in connection with such assumption and assignment, (~~2~~ii) ability of the Buyer to provide "adequate assurance of future performance" ~~under~~of such Executory Contract (within the meaning of § 365), or (~~3~~iii) any other matter pertaining to the assumption or assignment of such Executory Contract, shall file ~~and~~an serve ~~its~~such objection ~~thereto in writing no later than 4:00 p.m. (prevailing Eastern Time)~~ on or before the ~~day that is seven (7) days after the Debtors file and serve the Assumed Contracts Schedule. The failure of any non-Debtor party to an Executory Contract to file and serve an~~

~~objection as set forth in this Section V.B. by the deadline shall be deemed consent to the assumption or~~ deadline for the filing of objections to Confirmation of the Plan.  To the extent any such objections are filed, the hearing on such objections shall be scheduled for the same date as the Confirmation Hearing.  Failure to timely file an objection to the proposed assumption and assignment of ~~the contract or lease and to such cure amount.  On the Effective Date, in addition to all Executory Contracts that have been previously assumed by the Debtors by order of the Bankruptcy Court, each~~an Executory Contract ~~that is identified in the Assumed Contracts Schedule shall be deemed assumed in accordance with the provisions and~~, including any proposed Cure Amount associated therewith, shall constitute consent to the assumption and assignment of such Executory Contract, including the Cure Amount, if any, payable in connection therewith, and an acknowledgment that such assumption and assignment satisfies all requirements of §§ 365 ~~and 1123, and all defaults, if any, shall be deemed cured by the payment of the monetary cure amount, if any, corresponding to such Executory Contract~~(b), (c) and (f).

If any Person files an objection to the proposed assumption or assignment of an Executory Contract, the Debtors reserve the right to delete such contract or lease from the Assumed Contracts Schedule and declare such contract or lease to be rejected pursuant to Section 7.1 hereof.

### ~~C.~~7.3   *Cure of Defaults of Assumed Executory Contracts*

~~The cure amounts owed under the Executory Contracts to be assumed or assumed and assigned pursuant to the Plan, as set forth in the Assumed Contracts Schedule, or as otherwise established by the Bankruptcy Court at the Confirmation Hearing, shall be satisfied, pursuant to § 365(b)(1), by the Buyer.  In the event of a dispute regarding (1) the amount of the proposed cure payment, if any, to be paid in connection with such assumption, (2) ability of the Buyer to provide "adequate assurance of future performance" under such Executory Contract (within the meaning of § 365), or (3) any other matter pertaining to assumption of such Executory Contract, the hearing on any such dispute by the Bankruptcy Court shall be scheduled for the same date as the Confirmation Hearing.  The cure payments required by § 365(b)(1) shall be made on the date that is five (5) Business Days following the entry of a Final Order authorizing the assumption of the Executory Contracts.~~

All Cure Amounts to be paid in connection with the Executory Contracts to be assumed and assigned pursuant to the Plan shall be paid by the Buyer not more than ten (10) days after the occurrence of the Effective Date.

### ~~D.~~7.4   *Effect of Assumption and Assignment*

Each Executory Contract assumed or assumed and assigned pursuant to this Article V (or pursuant to Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by the Buyer in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment.  To the extent applicable, all Executory Contracts assumed during the Chapter 11 Cases, including those assumed pursuant to Article V.B, (i) shall be deemed modified as needed such that the transactions contemplated by the Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract; and (ii) shall not

constitute a breach of any anti-alienation provision thereof. Any consents required in connection with the assignment to the Buyer of any Executory Contract on the Assumed Contracts Schedule shall be deemed satisfied upon entry of the Confirmation Order.

This Plan shall not affect any Executory Contract that was assumed, rejected or assumed and assigned pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date.

### E.7.5    *Rejection Damages Bar Date*

Except to the extent another bar date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Voting and Claims Agent at the following applicable address:

> Kurtzman Carson Consultants LLC
> 2355 Alaska Avenue
> El Segundo, CA 90245
> Attn: Travis K. Vandell

and a copy served on counsel for the Buyer, the Debtors, counsel for the Committee and the Responsible Person, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a Distribution or be enforceable against the Debtors, their Estates, the Buyer or any of their successors and their assigns. Any Claim arising from the rejection of an Executory Contract, other than a PSA Claim arising from the rejection or termination of a PSA shall be treated as a Claim in either Class 5 or Class 6General Unsecured Claim. Nothing in this Plan extends or modifies any previously applicablethe Bar Date, except as specifically provided herein.

### F.7.6    *Insurance Policies*

To the extent any or all of the insurance policies set forth on Exhibit B to this Plan are considered to be Executory Contracts, then notwithstanding anything contained in this Plan to the contrary, this Plan shall constitute a motion to assume, or assume and assign to the Buyer, the insurance policies set forth on Exhibit B to this Plan to the Buyer and the Responsible Person, as their interests may appearthe Assumed Contracts Schedule as indicated thereon. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval ofan order authorizing such assumption or assumption and assignment pursuant to § 365(a) effective as of the Effective Date and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments areCure Amount shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each suchbe paid in connection with the assumption or assumption and assignment of any insurance policy set forth on Exhibit B to this Planidentified on the Assumed Contracts Schedule. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors reserve the right to seek rejection ofreject any such insurance

-38-

policy ~~or other available relief.  This Plan shall not affect contracts that have been assumed and assigned by order of.~~

~~the Bankruptcy Court prior to the Confirmation Date.~~  For the avoidance of doubt, certain insurance policies that are not Executory Contracts (including any insurance ~~policies that are not executory contracts, insurance policies~~policy (i) that is not an Executory Contract, (ii) that may have expired prior to the Petition Date, ~~insurance policies~~(iii) that was in existence on the Petition Date ~~and insurance policies~~, or (iv) that was entered into by the Debtors after the Petition Date) ~~of~~shall be retained by the Debtors ~~set forth~~or assigned to the Buyer as indicated on Exhibit B ~~are retained and transferred to the Buyer and the Responsible Person, as their interets may appear, pursuant to this~~to the Plan.  To the extent that pending Claims ~~that are covered by insurance exist~~existing as of the Effective Date~~,~~ that are covered by such insurance policies, the proceeds from such insurance policies shall be used to reduce the amount of any such Claim ~~filed~~asserted against the Debtors ~~and such insurer.~~  The corresponding insurers may succeed to ~~the Claim of~~such ~~creditor~~Claims by way of subrogation, but only to the extent, priority and class of ~~such~~the underlying Claim itself, subject to any and all defenses, counterclaims and Causes of Action~~.~~; *provided*, *however*, that in order to commence or continue any action or other proceeding of any kind against ~~and/~~or to recover from the Debtors ~~and/~~or the Debtors' insurance policies, a ~~Claimant~~Person must first seek and obtain from the Bankruptcy Court relief from the automatic stay ~~or plan injunction~~(11 U.S.C. § 362(a)) or the injunctive provisions of Section 9.4 of the Plan, as applicable~~, from the Bankruptcy Court~~.

### 7.7  *PSAs*

To the extent any PSA is determined to be an Executory Contract, such PSA shall be deemed rejected by the Debtors, and any claim for rejection damages shall be filed, in accordance with Sections 7.1 and 7.5 of the Plan.

## ARTICLE ~~VI.~~VIII

## DISTRIBUTIONS

### ~~A.~~8.1  *General Provisions Concerning Distributions*

At the written request of the Responsible Person, any creditor holding multiple Allowed Claims shall provide the Responsible Person a single address to which any Distributions shall be sent.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day.

The Debtors and the Responsible Person may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Allowed Claim, any Claims or Causes of Action of any nature whatsoever that the Debtors ~~and/~~or the Responsible Person may have asserted against the Claimant, but neither the failure to do so nor the allowance of any Disputed Claim hereunder shall constitute a waiver or release by

the Debtors~~,~~ or the Responsible Person of any such Claim or Cause of Action ~~any may have~~ against such Claimant.

To the extent ~~that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution~~<u>applicable, Distributions</u> shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to <u>interest and</u> such other amounts<u> comprising a part of the Claim</u>.

<s>B.</s><u>8.2</u>    *Disbursing Agent*

Unless otherwise designated by the Responsible Person, the Responsible Person shall be the Disbursing Agent, and the Disbursing Agent shall make all Distributions under this Plan.

<s>C.</s><u>8.3</u>    *Time and Manner of Distributions*

<u>Distributions of Cash</u> to Holders of Allowed Claims in Classes 5, 6, 7 and 8 shall be made solely from the Distribution Fund.

The Responsible Person shall make ~~the Effective Date~~<u>all</u> Distributions under the Plan on account of Allowed Claims ~~not later than 30~~<u>within ten (10)</u> days after <u>the later to occur of (i)</u> the Effective Date<u> and (ii) the date such Claim becomes an Allowed Claim</u>, except as otherwise ordered by the Bankruptcy Court. ~~The Responsible Person shall have the power to make interim Distributions to Holders of Allowed Claims in Classes 5, 6 and 7 if the Responsible Person determines that such interim Distributions are warranted and economical; provided, that the Responsible Person shall make interim Distributions at least annually, subject to the availability of Distributable Cash. In no event shall the Responsible Person make any Distribution that would exceed the amount of Distributable Cash. If the Responsible Person determines to make interim Distributions to Holders of Allowed Claims, the Responsible Person will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims.~~ Amounts withheld ~~will~~<u>may</u> be placed in an interest-bearing account, which interest shall be used by the Responsible Person to fund ongoing expenses and costs relating to such reserves, including taxes in respect of Disputed Claims, if any.

At the option of the Responsible Person, any Distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). ~~Any Distribution of less than $25 will be considered de minimis, and Holders of Allowed Claims that are entitled to any Distribution of less than $25 may not receive any Distribution unless and until the aggregate of such Distributions exceeds $10,000. To the extent that the aggregate of such Distributions never exceeds $10,000, such funds shall remain with and vest for Distribution to other Holders of Allowed Claims.~~

200451608 v1
RLF1 3980152v. 1

### ~~D.~~8.4 *Delivery of Distributions*

Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors, the Responsible Person or the Voting and Claims Agent have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Responsible Person after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Responsible Person has not received a written notice of a change of address.

### ~~E.~~8.5 *Undeliverable Distributions*

If a Distribution to a Holder of a Claim is returned as undeliverable, no further Distributions to such Holder of a Claim shall be made unless and until the Responsible Person is notified of the then-current address of such Holder, at which time (subject to the terms of the last sentence of this Article VI.E) all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions shall be returned to the Responsible Person until such Distributions are Claimed. All funds or other undeliverable Distributions returned to the Responsible Person in respect of any Claim and not Claimed within four (4) months of return shall be forfeited and remain with and vest in the ~~Distributable Cash~~Distribution Fund for Distribution to other Holders of Allowed Claims. Any unclaimed funds held in ~~Distributable Cash~~Distribution Fund and aggregating less than $10,000 is entered may be donated to a charity selected by the Responsible Person without further order of the Court upon entry of a Final Decree.

### ~~F.~~8.6 *Claims Administration Responsibility*

~~1.~~(a) Reservation of Rights to Object to Claims. Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to ~~or after~~ the Effective Date, the Responsible Person (on behalf of the Estates) reserves ~~any and~~ all objections to ~~any and all Claims, Interests or motions or requests for the~~the allowance and payment of ~~Claims~~any Claim or ~~Interests~~Interest, including any ~~and all objections~~objection to the validity or amount of any such Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.

~~**2. Objections to Claims**~~

(b) Objections to Claims. Prior to the Effective Date, the Debtors or any other party that has filed an objection to the allowance of a Claim shall be responsible for pursuing such objection. From and after the Effective Date, the Responsible Person will retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making Distributions, if any, on account of Claims subject to the other provisions of the Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court (including the partial deemed allowance of PSA Claims pursuant to Sections 4.6(b), 4.7(b) and 4.8(b) of the Plan, as applicable), any objections to Claims by the Responsible Person will be filed and served not later than 180 days after the Effective Date, provided that the Responsible Person may

request an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of his business judgment.  A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.  The Responsible Person shall be substituted for the Debtors with respect to any objections pending as of the Effective Date.

### 3. ~~Filing of Objections~~

(c)      Filing of Objections.  An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the party filing such objection effects service in accordance with Bankruptcy Rule 3007.

### 4. ~~Determination of Claims~~

(d)      Determination of Claims.  Except as otherwise agreed by the Responsible Person, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has become a Final Order) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors or the Responsible Person on or prior to any applicable deadline for filing such objection or application with respect to such Claim.  Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan.  Nothing contained in this ~~Article VI.F~~Section 8.6 shall constitute or be deemed a waiver of any Claim, right or Cause of Action that the Debtors or the Responsible Person may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. §157.

### ~~G.~~8.7    *Procedures for Treating and Resolving Disputed and Contingent Claims*

#### ~~1.~~(a)     No Distributions Pending Allowance

No ~~payments~~payment or ~~Distributions~~Distribution will be made with respect to ~~all or~~ any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  Any Proof of Claim filed with all of the dollar amounts listed as contingent, unknown or otherwise containing unliquidated amounts shall be deemed to be a Disputed Claim and shall be treated as such for Distribution purposes in accordance with the terms of this paragraph.

#### ~~2.~~(b)     Claim Estimation

The Debtors ~~or~~and the Responsible Person, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to § 502(c)~~; provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to § 502(c) and (ii) the timing and procedures for such estimation proceedings, if any~~.

200451608 v1
RLF1 3980152v. 1

### H.8.8   *Setoffs and Recoupment*

The Responsible Person may, pursuant to §§ 502(d), 553 and 558 or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan, any Claims or Causes of Action of any nature whatsoever that any Debtor or its Estate may have against the Holder of such Claim; *provided*, *however*, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any setoff or recoupment the Debtors may have against the Holder of such Claim, nor of any other Claim or Cause of Action.

### I.8.9   *Allowance and Disallowance of Claims Subject to § 502*

Allowance and disallowance of Claims shall be in all respects subject to the provisions of § 502, including subsections (b), (d), (e), (g), (h) and (i) thereof.

### J.8.10   *Cancellation of Instruments and Agreements*

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the Buyer, the Responsible Person or the Estates; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

### K.8.11 *No Interest on Claims*

Unless otherwise specifically provided for in this Plan, the Confirmation Order or a post-petition agreement in writing between the Debtors and a Holder of a Claim that has been approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to receive any Distribution on account of interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, nor shall any interest shall not accrue on or be paid on any Disputed Claim in respect of the period from and after the Effective Date to the date a final Distribution is made when and if such on account of any Disputed Claim that subsequently becomes an Allowed Claim and paid under the terms of the Plan after the Effective Date.

### L.8.12 *Withholding Taxes*

The Responsible Person shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan.  As a condition to making any Distribution under this Plan, the Responsible Person may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Responsible Person may deem necessary to comply with applicable tax reporting and withholding laws.

-43-

**M.8.13** *Reports*

From the Effective Date, until a Final Decree is entered, the Responsible Person shall submit quarterly reports to the United States Trustee setting forth all receipts and disbursements as required by the United States Trustee guidelines.

## ARTICLE ~~VII.~~IX

## EFFECT OF CONFIRMATION

### A.9.1   *Vesting of Assets*

On the Effective Date, pursuant to §§ 1141(b) and (c), the Property and Acquired Assets shall be released from the custody and jurisdiction of the Bankruptcy Court and shall vest in the Buyer free and clear of all Claims, Liens (excluding Liens that run with the land shall continue to encumber and benefit the Property, including the land use and condominium regime currently in place), encumbrances, charges and other interests, including any Tax Liens or Claims, except as provided in the Plan.  From and after the Effective Date, the Buyer may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan. On the Effective Date, all other property of the Estates not vesting in the Buyer, including all Causes of Action, shall vest in the Responsible Person, free and clear of all Claims, Liens, encumbrances, charges and other interests, including any Tax Liens or Claims, except as provided in the Plan.

### B.9.2   *Binding Effect*

On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Interest in any Debtor, including such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is  Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a Distribution under the Plan.

### C.9.3   *Discharge of Claims and Termination of Interests*

Except as provided in the Plan, the rights afforded in and the payments and Distributions to be made under the Plan shall terminate all Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors, or their assets or properties to the fullest extent permitted by § 1141.  Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Interests shall be precluded and enjoined from asserting against the Buyer, the Responsible Person or the Estates, their successors or assignees or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder has filed a Proof of Claim or proof of interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

### ~~D.~~9.4  *Injunction*

Except as otherwise expressly provided in this Plan or in the Confirmation Order, including Sections 4.12(b) and 9.7 of the Plan, and except in connection with the enforcement of the terms of this Plan or any documents provided for or contemplated in this Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from:  (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party or any property of any Protected Party with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Interest.  Nothing contained in this ~~Article VII.D~~Section 9.4 of ~~this~~the Plan shall prohibit the Holder of a Claim or Interest with respect to which a Proof of Claim was timely filed from litigating its right to seek to have such Claim or Interest declared an Allowed Claim or Interest and paid in accordance with the Distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtors or the Responsible Person under this Plan.

### ~~E.~~9.5  *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under §§ 105 or 362, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the entry of the Final Decree.

### ~~F.~~9.6  *Exculpation and Releases*

None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any Claim, Cause of Action, liability to any other Protected Party, to any Holder of a Claim or an Interest only in their capacity as such, for any act or omission taken in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation and/or pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan and/or the property to be distributed under this Plan, except for the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall form an absolute defense to any such Claim, cause of action or liability.  Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of § 1125(e).

Each party to which this section applies shall be deemed to have granted the releases set forth in this section notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, which would limit the effect of such releases to those Claims or Causes of Action actually known or suspected to exist at the time of execution of the release.

Notwithstanding anything set forth above or elsewhere in this Plan, nothing in this Plan discharges, releases, precludes, or enjoins: (i) any environmental liability to any governmental unit that is not a Claim; (ii) any environmental Claim of any governmental unit arising on or after the Confirmation Date; (iii) any environmental liability to any governmental unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtor.

### ~~G.~~9.7 *Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, each ~~holder~~Holder of a Claim or an Interest ~~that votes to accept the Plan but does not select the "release opt out" provided in the Ballot~~(other than any PSA Creditor that elects the Enforcement Option) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors and the Released Parties from any and all Claims, Interests, Claims obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative Claims or Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Released Parties, the Chapter 11 Cases, the Plan, the Disclosure Statement, the DIP Loan Agreement, the PSAs (including any Claims relating to alleged errors and/or omissions in the offering materials used to market and sell the ~~Residential~~Residence Property and any Claims related to alleged non-registration or other alleged non-compliance with applicable laws) or related agreements, instruments or other documents, the DIP Loan Agreement, and other related agreements, other than Claims, Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct as determined by a Final Order; *provided*, *however*, that nothing herein shall be deemed a waiver or release of a Releasing Party's right to receive a Distribution pursuant to the terms of the Plan, nor shall anything herein be deemed a waiver or release of the right of any PSA Creditor to assert Guaranty Claims other than any PSA Creditor that elects the Purchase Option. For the avoidance of doubt, ~~notwithstanding anything to the contrary herein~~, this Release by Holders of Claims and Interests is not and shall not be deemed a waiver of the Debtors' rights or Claims against the holders of General Unsecured Claims, including to the Debtors' rights to assert setoffs,

200451608 v1
RLF1 3980152v. 1

recoupments or counterclaims, or to object or assert defenses to any General Unsecured Claim, and all such rights and Claims are expressly reserved; *provided, however,* the Debtors shall release all claims against any Holder of a PSA Claim that has elected the Purchase Option.

### ~~H.~~9.8 *Reservation of Causes of Action/Reservation of Rights*

Unless otherwise set forth herein, nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action or Avoidance Actions that the Debtors, the Responsible Person, or the Estates may have or may choose to assert against any Person.

## ARTICLE ~~VIII.~~X

## CONDITIONS PRECEDENT

### ~~A.~~10.1 *Conditions Precedent to Effective Date*

This Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

~~1.~~(a)    The Confirmation Order shall be in form and substance acceptable to the Debtors, the Buyer, the Prepetition Lender and the Committee in their absolute discretion;

~~2.~~(b)    The Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness; the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under § 1144 shall have been made, or, if made, shall remain pending;

(c)    The Buyer shall have consented in all respects to, and agreed to be bound by, the terms of the Plan.

~~3.~~(d)    The appointment of the Responsible Person shall have been approved by order of the Bankruptcy Court;

~~4.~~(e)    All necessary documents relating to the sale of the Property and Acquired Assets (including, the transfer of ownership of the Property to the Buyer under Anguillan law) shall be in form and substance acceptable to the Prepetition Lender, Debtors, Buyer and Committee and shall be executed; and

~~5.~~(f)    Prepetition Lender shall have paid to the PSA Guarantors $1,296,000 on account of the Hirsch and Mazzei settlement.

### ~~B.~~10.2 *Revocation, Withdrawal or Non-Consummation of Plan*

If, after the Confirmation Order is entered, each of the conditions precedent to the Effective Date have not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Debtors, the Buyer, the Prepetition Lender or the Committee, the Confirmation Order may be vacated by the Bankruptcy Court; *provided,*

*however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. A condition precedent to the Effective Date may only be waived by a writing executed by the Debtors, the Buyer and the Committee. If the Confirmation Order is vacated pursuant to this Article VIII.B, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors, (iii) prejudice in any manner the rights of the Debtors in the Chapter 11 Cases, or (iv) constitute a release, indemnification or exculpation by the Debtors, the Estates or any other party pursuant to this Plan.

## ARTICLE ~~IX.~~XI

### ADMINISTRATIVE PROVISIONS

~~A.~~11.1 *Retention of Jurisdiction by the Bankruptcy Court*

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to §§ 105(a) and 1142, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including the following:

~~1.~~(a) all matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

~~2.~~(b) all matters relating to the ownership of a Claim or Interest;

~~3.~~(c) all matters relating to the Distribution to holders of Allowed Claims and to the determination of Claims;

~~4.~~(d) any and all matters involving the Responsible Person;

~~5.~~(e) all matters relating to or arising in connection with the allowance or estimation of Claims filed, both before and after the Confirmation Date, including any objections to the classification of any Claim;

~~6.~~(f) to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

~~7.~~(g) all matters relating to the construction and implementation of this Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

~~8.~~(h) all matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including

disputes arising under agreements, documents or instruments executed in connection with this Plan;

~~9.~~(i)    to consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

~~10.~~(j)    all applications for allowance of compensation and reimbursement of Professional Fee Claims under §§ 328, 330, 331, 503(b), 1103 or 1129(a)(4);

~~11.~~(k)    to hear and determine all motions or requests for the payment of Claims entitled to priority under § 507(a)(2), including compensation and reimbursement of expenses of parties entitled thereto;

~~12.~~(l)    all Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets for the Responsible Person or the Buyer as applicable pursuant to the terms of this Plan, as successor-in-interest to any of the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

~~13.~~(m)    all matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146;

~~14.~~(n)    any other matter not inconsistent with the Bankruptcy Code;

~~15.~~(o)    all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

~~16.~~(p)    to enter the Final Decree closing the Chapter 11 Cases; and

~~17.~~(q)    to enforce all orders previously entered by the Bankruptcy Court.

~~B.~~11.2 *Payment of Statutory Fees*

All fees through the Effective Date pursuant to 28 U.S.C. §1930 shall be paid on or before the Effective Date to the extent that an invoice for such fees has been provided to the Debtors prior to the Effective Date.  All fees invoiced after the Effective Date pursuant to 28 U.S.C. §1930 shall be paid by the Responsible Person from ~~Distributable Cash~~the Distribution Fund.

-49-

### ~~C.~~ 11.3 *Headings*

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

### ~~D.~~ 11.4 *Binding Effect of Plan*

Except as otherwise provided in § 1141(d)(3) on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the Responsible Person and their respective successors or assigns, whether or not the Claim or Interest of such Holders is Impaired under this Plan and whether or not such Holder has accepted this Plan. The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including the Responsible Person and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

### ~~E.~~ 11.5 *Final Order*

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors after consultation with the Committee and the Buyer and upon written notice to the Bankruptcy Court, provided that the Effective Date shall occur within 48 hours of the effectiveness of such waiver. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

### ~~F.~~ 11.6 *Withholding and Reporting Requirements*

In connection with this Plan and all instruments issued in connection herewith and Distributions hereunder, the Responsible Person shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution. Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### ~~G.~~ 11.7 *Tax Exemption and Expedited Tax Determination*

Pursuant to § 1146, any and all transfers of real or personal property owned by the Debtors shall be free of any and all state and local stamp taxes and similar taxes pursuant to § 1146(a); *provided*, *however*, that upon the Effective Date, so long as the Prepetition Lender is the Buyer, Buyer shall pay to the Government of Anguilla those taxes agreed upon pursuant to the Memorandum of Understanding dated September 17, 2010, as amended. In the event that the ~~Prevailing Party acquires the Property and Acquired Assets, that party~~Buyer is not the

Prepetition Lender, Buyer shall be required to satisfy all tax obligations under Anguillan law or as otherwise agreed to with the Government of Anguilla.

The Debtors and Responsible Person are authorized to request an expedited determination of taxes under § 505(b) for any or all returns filed for, on or behalf of, the Debtors for any or all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

### H.11.8 *Governing Law*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors incorporated or organized in Delaware, corporate and limited liability company governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

### I.11.9 *Plan Supplement*

The Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Debtors, the Committee, the Buyer and the Prepetition Lender and shall be filed with the Bankruptcy Court no later than ten (10) Business Daysdays before the deadline for voting to accept or reject the Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims or Interests, and provided further that amendment of the Assumed Contract Schedule shall be governed by Article V.B of this Plan. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

### J.11.10 *Severability*

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### K.11.11 *Revocation*

The Debtors reserve the right to revoke and withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan, then this Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee or any other Person or to prejudice in any manner the rights of the Debtors, the Committee or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Committee.

~~L.~~11.12        *Substantial Consummation*

On the Effective Date, for purposes of § 1127(b) and other applicable sections of the Bankruptcy Code, the Plan shall be deemed to be substantially consummated as such term is defined in § 1101.

~~M.~~11.13        *Conflict*

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.  The terms of the Confirmation Order shall govern in the event of any inconsistency with the Plan or the summary of the Plan set forth in the Disclosure Statement.

~~N.~~11.14        *Amendments and Modifications*

The Debtors, the Buyer, the Prepetition Lender and the Committee jointly may agree to alter, amend or modify this Plan under § 1127(a) at any time prior to the Confirmation Hearing.  After the Confirmation Date and prior to "substantial consummation" (as such term is defined in § 1101(2)) and Section ~~IX.K.~~11.12 of the Plan, any Debtor, the Committee or the Responsible Person may institute proceedings in the Bankruptcy Court pursuant to § 1127(b) to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to those parties set forth in Bankruptcy Rule 2002, and the solicitation of all Creditors and other parties-in-interest shall not be required.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests.

~~O.~~11.15        *Notices*

Any notices required under this Plan or any notices or requests by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

(a)        To the Debtors:

Akin Gump Strauss Hauer & Feld LLP
Attn:  Charles R. Gibbs, Esq.
Attn:  Michael P. Cooley, Esq.
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone:  214-969-2800
Facsimile:  214-969-4343

With a copy to:

Richards, Layton & Finger, P.A.
Attn:  Paul N. Heath, Esq.
One Rodney Square
920 North King Street
Wilmington, DE  19801

(b)     To the Prepetition Lender and the DIP Lender:

DLA Piper LLP (US)
Attn:  Richard A. Chesley, Esq.
Attn:  Stacey T. Kern, Esq.
203 North LaSalle Street
Suite 1900
Chicago, Illinois  60601-1293

(c)     To the Committee:

Brown Rudnick LLP
Attn:  ~~Andrew Dash~~Gordon Z. Novod, Esq.
Seven Times Square
New York, New York  10036

With a copy to:

Womble Carlyle Sandridge & Rice, PLLC
Attn:  Steven K. Kortanek, Esq.
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

### ~~P.~~11.16     *Filing of Additional Documents*

On or before substantial consummation of this Plan, and without the need for any further order or authority, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### ~~Q.~~11.17     *Direction to a Party*

From and after the Effective Date, the Debtors or the Responsible Person may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

**R.11.18**      *Successors and Assigns*

The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

**S.11.19**      *Waiver of Subrogation*

Notwithstanding any provision of this Plan to the contrary, all Holders of Claims shall be deemed to have waived any and all subrogation rights which they may have with respect to the Distributions made pursuant to this Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under this Plan.

200451608 v1
RLF1 3980152v. 1

Dated: ~~April 18~~June 13, 2011
Wilmington, Delaware

                              Respectfully submitted,

                              BARNES BAY DEVELOPMENT, LTD.
                              KOR DUO INVESTMENT PARTNERS II, LP
                              KOR DUO II, LLC


                              By:  ___/s/ Kevin Nystrom_____
                                    Name:____Kevin Nystrom_____
                                    Title:_____Chief Restructuring Officer___


                              OFFICIAL COMMITTEE OF UNSECURED
                              CREDITORS


                              By:   ___/s/ Sarah Bayko_____
                                    Exclusive Resorts Real Estate Holding II, LLC
                                    Committee Co-Chair
                                    By:_____Sarah Bayko_____



**Prepared by:**

Paul Heath (No. 3704)
Chun I. Jang (No. 4790)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  302.651.7700
Facsimile  302.651.7701

        -and-

Charles R. Gibbs (admitted *pro hac vice*)
Michael P. Cooley (admitted *pro hac vice*)
~~Sara J.L. Wahl (admitted *pro hac vice*)~~
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  214.969.2800

# TABLE OF CONTENTS
(continued)

Facsimile:   214.969.4343

**<u>Exhibit A</u>**
~~**Causes of Action**~~

**<u>Schedule 1</u>**
**<u>PSA Creditors Holding PSA Claims (Tier 1)</u>**

Exclusive Resorts Real Estate Holdings II, LLC
Joel Greenberg and Marcy Gringlas
RJR Viceroy, Ltd.
Lee Zoeller

**<u>Schedule 2</u>**
**<u>PSA Creditors Holding PSA Claims (Tier 2)</u>**

Mark Frederickson
Elliot Eichner and David Sonnenblick
Jeff Cook
W.O. Viceroy
Martha and Kevin King
Jonathan Simon
Lee Skolnick and JoAnn Secor-Skolnick
Grant Gibson and Kim Evans
Anthony Graham
Philip McFillin
George Kalogridis

**Schedule 3**
**PSA Creditors Holding PSA Claims (Tier 3)**

Gary L. Tilkin
Stephan Paluszek
Steven Tuttleman
Gary Black and Florence Black
David B. Small
Adam Zoia
Royal Butterfly LLC
Jacob Stephan
JMC Anguilla, Inc.
Fiorellina Boscia Facchini
John Fitzgerald
LGT Properties, Inc.
Dennis Nardoni
Jack's Cove Ltd.
Richard P. Savitt
Carlo Parisi and Chery Parisi
Michael Braver
Caribbean Sun, LLC
Howard Drayzen
Dave Purpora
Steve Kinzelberg
Armond and Joanne Ferri
William C. Winget
Frank Gallo
Catherine Davis and Lynn Davis
Ruth Jones
David Glenn
Watson Properties, LLC
Thomas P. Lydon and Sharon K. Lydon

Richard P. Savitt and Gary Luciani
Richard Afrookteh and Carole Sue Sheain
Michael Pollack
Barbara Barrielle
Jay Delsing and Corey Pavin
Frank Faillace and Herbert Fingerhut
Anthony D. Antorino
Peter Greenspan
Ursula Langley
Richard Girouard
Stacy Pesacov and Melissa White
Fredy Dellis
Azure Water, LLC
Gary Madonna and Penny Wittenberg
Kathleen Synnott
Jack Edgar Bentham
Clamasuka Realty Co LLC
ArthurMarcus and Hildo Shuman
Global Forex Trading 1, LLC
August & Karen Pellizzi
Doug Harmon
Art Mannarn and Judy Deutscher
Zollo Nieto
David Ott
Sandra Taylor
22 Bond Street
Paul Duffy
Scott Timcoe/Daniel Lonergan
Sozo Anguilla, Inc.

EAST\44304571.12
RLF1 3980152v. 1

**<u>Exhibit B</u>**

**<u>Insurance Polices</u>**

**<u>Exhibit C</u>**

**<u>Confirmation Order</u>**