**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------

In re:                                  :    Chapter 11
                                         :
Barnes Bay Development Ltd., *et al.*,[1]   :    Case No. 11-10792(PJW)
                                         :    (Jointly Administered)
            Debtors.                     :
                                         :    Re: Docket Nos. 9, 32, ___
------------------------------------------------------

### FINAL ORDER (A) AUTHORIZING DEBTORS (i) TO OBTAIN POST-PETITION FINANCING AND (ii) TO USE CASH COLLATERAL; (B) GRANTING LIENS AND PROVIDING SUPER-PRIORITY CLAIMS; AND (C) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES

This matter came before this Court on the motion (the "Motion")[2] [D.I. 9] of the above-captioned debtors and debtors-in-possession (the "Debtors") requesting that this Court enter interim and final orders authorizing the Debtors to (i) enter into a senior secured super-priority term loan in the maximum principal amount of $5,000,000 (the "DIP Loan")[3] on an emergency interim basis and final basis, substantially on the terms and conditions set forth in the Commitment Letter; (ii) enter into the Commitment Letter and to perform such other and further acts as may be necessary or appropriate in connection with the Commitment Letter; (iii) grant the DIP Lender, subject only to the Carve-Out, liens and super-priority administrative claim status pursuant to §§ 364(c)(1), 364(c)(2) and 364(d), in respect of all DIP Obligations; (iv) use, in accordance with §§ 361, 363(c)(2) and 363(e) and the Interim Budget, the Pre-petition Collateral, including the Cash Collateral (as those terms are defined herein), and to provide certain

---

[1] The Debtors in these cases, along with the last four digits of the employer identification number for each of the Debtors, are Kor Duo Investment Partners II, L.P. (xx-xxx9891), Kor Duo II, LLC (xx-xxx5207) and Barnes Bay Development Ltd. Barnes Bay Development Ltd., is a company formed under the laws of Anguilla and, accordingly, does not have an employer identification number.

[2] Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in the Motion. Unless otherwise noted, section (§) references herein are to the Bankruptcy Code.

[3] By agreement of the parties pursuant to the terms and conditions of the DIP Loan Agreement (as defined herein), the maximum aggregate amount of the DIP Loan has been increased to $12,500,000.

EAST\44943628.5

protections to the Pre-petition Lender with respect to any diminution in the value of the Pre-petition Collateral, including the Cash Collateral, resulting from the implementation of the DIP Loan, the liens and security interests sought to secure the DIP Loan, the use, sale or lease of the Pre-petition Collateral, including the Cash Collateral, or the imposition of the automatic stay pursuant to § 362; (v) schedule, pursuant to Bankruptcy Rule 4001, a preliminary expedited hearing on the Motion and authorize the Debtors to obtain credit under the terms contained in the Commitment Letter and to use Cash Collateral from the entry of the Interim Order through the conclusion of the final hearing on the Motion to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates; and (vi) schedule, pursuant to Bankruptcy Rule 4001, the Final Hearing to consider entry of the Final Order authorizing the Debtors, on a final basis, to borrow the balance of the DIP Loan and continue to use Cash Collateral; and the Court having heard the Motion at an expedited interim hearing on March 21, 2011 and having entered the Interim Order on the Motion ("Interim Order") [D.I. 32] on March 21, 2011.

This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable as of the Petition Date.

Having examined the Motion, upon consideration of the record of these cases before this court, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a final hearing pursuant to § 364 and Bankruptcy Rule 4001(c), and objections having been withdrawn or resolved or overruled by the Court,

THE MOTION IS GRANTED ON A FINAL BASIS AS SET FORTH HEREIN, AND THE COURT HEREBY FINDS THAT:

A.     On the Petition Date, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Court authorized the joint administration of these cases

for procedural purposes. The Debtors remain in possession of their properties and continue to operate their businesses as debtors in possession pursuant to §§ 1107 and 1108.

B.    The Court has jurisdiction over the Debtors, their estates, these cases and this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.    The Office of the United States Trustee appointed the official committee for unsecured creditors ("Committee") on March 31, 2011.

D.    Pursuant to that certain Second Amended and Restated Loan and Security Agreement, dated July 17, 2009, among Barnes Bay Development, Ltd. ("Barnes Bay"), Citicorp North America, Inc. as Lender ("Citicorp") and Citigroup Global Markets Reality Corp. as Administrative and Collateral Agent ("Citigroup") (the "Senior Secured Credit Agreement" and together with all "Loan Documents" (as defined in the Senior Secured Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Pre-petition Credit Agreement"), Citicorp made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of Barnes Bay thereunder from time to time.

E.    Prior to the Petition Date, SOF-VIII-Hotel II Anguilla Holdings, LLC ("SOF Anguilla" and, in such capacity, the "Pre-petition Lender") acquired the loans made pursuant to the Pre-petition Credit Agreement (and all security securing the loans made thereunder) from Citicorp and Citigroup.

F.    Pursuant to the Pre-petition Credit Agreement, Barnes Bay, as of the Petition Date, was indebted to the Pre-petition Lender under the Pre-petition Credit Agreement, exclusive

of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $392,000,000 (the "Pre-petition Secured Claim"). In addition, the Pre-petition Lender made pre-Petition Date unsecured protective advances to Barnes Bay in the approximate principal amount of $14,000,000 (the "Pre-petition Unsecured Claims").

G.      Pursuant to the Pre-petition Credit Agreement, Barnes Bay granted to and/or for the benefit of the Pre-petition Lender first-priority and continuing pledges, liens and security interests (the "Pre-petition Liens") in and upon substantially all of Barnes Bay's property and assets, whether real or personal, tangible or intangible and wherever located, whether then or thereafter existing or acquired, and all the proceeds, products, offspring, rents, issue and profits thereof (the "Pre-petition Collateral").

H.      The Debtors admit, stipulate and agree that:

(i)      As of the Petition Date, Barnes Bay was indebted and liable to the Pre-petition Lender, without objection, defense, counterclaim or offset of any kind, under the Pre-petition Credit Agreement for the Pre-petition Secured Claim, in the approximate principal amount of $392,000,000 plus accrued but unpaid interest, costs, fees and expenses. In addition, as of the Petition Date, Barnes Bay was indebted and liable to the Pre-petition Lender, without objection, defense, counterclaim or offset of any kind, for the Pre-petition Unsecured Claim in the approximate principal amount of $14,000,000.

(ii)     Each of the Pre-petition Secured Claim and the Pre-petition Unsecured Claim is (i) a legal, valid, binding, and enforceable against Barnes Bay; and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim,

cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. The Debtors do not have, hereby forever release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to either of the Pre-petition Secured Claim or the Pre-petition Unsecured Claim, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, against the Pre-petition Lender and its respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

(iii)    As security for the payment of the Pre-petition Secured Claim, Barnes Bay granted to and/or for the benefit of the Pre-petition Lender, the Pre-petition Liens, which constitute first-priority and continuing pledges, liens and security interests in and upon the Pre-petition Collateral, which includes substantially all of Barnes Bay's property and assets, as more fully described in the Pre-petition Credit Agreement.

(iv)    The Pre-petition Liens are legal, valid, enforceable, non-avoidable, and fully perfected security interests in and liens upon the Pre-petition Collateral not subject to avoidance, re-characterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, and, as of the Petition Date, and without giving effect to this Final Order, the Debtors are not aware of any Liens or security interests having priority over the Pre-petition Liens, except certain "Permitted Liens" (as defined in the Pre-petition Credit Agreement). The Pre-petition Liens on the Pre-petition Collateral were granted to

the Pre-petition Lender for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans secured thereby.

I.     Even if the Debtors were authorized to use all available Cash Collateral, such Cash Collateral would be insufficient to provide the Debtors with the working capital necessary to prevent immediate and irreparable harm to the Debtors, their properties and their estates and the Debtors would be incapable of providing adequate protection of the interests therein of the Pre-petition Lender.

J.     The Debtors are unable to obtain unsecured credit as an administrative claim allowable under § 503(b)(1) sufficient to finance the operations of the Debtors' business. Except as provided below, the Debtors are unable to obtain credit allowable under §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by the DIP Lender.

K.     Consequently, a need exists for the Debtors to obtain the DIP Loan and access Cash Collateral in order to minimize disruption to and avoid the termination of their business operations, and to enhance the possibility of a successful reorganization.

L.     The DIP Lender has indicated a willingness to extend the DIP Loan, but only on the terms and conditions set forth in this Final Order and under the $12,500,000.00 Senior Secured Super-priority Debtor-In-Possession Term Loan and Security Agreement and Stipulation to Use of Cash Collateral, a copy of which is attached hereto as Exhibit A (the "DIP Loan Agreement"), among Barnes Bay, as borrower, Kor Duo and KDIP, as accommodation parties and the Pre-petition Lender, as DIP Lender, Administrative Agent and Collateral Agent thereunder (in each such capacity as defined in the DIP Loan Agreement), and the Pre-petition Lender.

M. The DIP Loan Agreement represents an increase in the Commitment of the DIP Lender from $5,000,000.00 to $12,500,000.00 as a result of higher than expected administrative expenses, critical vendor claims, and operating expenses, as well as the need to pay cure amounts associated with the assumption of certain executory contracts proposed to be assumed prior to confirmation of the Debtors' Plan of Liquidation. Under the circumstances of these cases, the terms and conditions of this Final Order and the DIP Loan Agreement are fair and reasonable, and the proposed increase in the Commitment and the entry of this Final Order is in the best interests of the Debtors' estates and their creditors. Such terms and conditions have been negotiated in good faith and at arms' length, and the DIP Loan is being extended in good faith, as that term is used in § 364(e), and the DIP Lender is entitled to the protections afforded by § 364(e).

N. The notice provided by the Debtors of the Motion, the interim hearing on the Motion, the final hearing on the Motion, the DIP Loan Agreement and the entry of this Final Order satisfy the requirements of §§ 102 and 364, Bankruptcy Rules 2002, 4001(c) and 9014 and Local Rule 9014-l(m) and was otherwise sufficient and appropriate under the circumstances.

O. The Debtors and the Committee have filed a Disclosure Statement and Plan of Liquidation, the form and substance of which have been consented to by the DIP Lender, and have committed to pursue approval and confirmation, respectively, thereof, without material modification.

WHEREFORE, IT IS HEREBY ORDERED THAT:

1. <u>Authorization to Incur the DIP Obligations.</u>

(a) <u>Approval of Post-petition Documents.</u> The Debtors are hereby authorized to (i) execute the DIP Loan Agreement, including all documents that the DIP Lender deems necessary to evidence, grant, perfect and otherwise implement the transactions contemplated by

the DIP Loan Agreement; and (ii) perform each of their obligations under, limit their expenditures, and comply with all of the terms and provisions of the DIP Loan Agreement and this Final Order pursuant to the terms and conditions of the DIP Loan Agreement, the Budget (as defined below) and this Final Order. Upon execution and delivery thereof, the DIP Loan Agreement and other Loan Documents (as defined in the DIP Loan Agreement) shall constitute valid and binding, unavoidable obligations of the Debtors, enforceable in accordance with their terms.

(b) <u>Permitted Uses of DIP Loan</u>. The Debtors are hereby authorized to incur the DIP Obligations and close the DIP Loan solely in accordance with and pursuant to the terms and provisions of the Budget, this Final Order and the Loan Documents. Notwithstanding anything to the contrary in this Paragraph 1(b), however, the Debtors are hereby authorized, subject to the Budget, to incur the DIP Loan to pay the Carve-Out when due and payable. If the DIP Lender Advances monies to or for the benefit of the Debtors and the Debtors use such monies other than in accordance with the terms and provisions of this Final Order or the Loan Documents, such Advances shall be considered monies advanced under the DIP Loan for purposes of this Final Order.

2. <u>Procedure for Delivery of Cash Proceeds</u>.

(a) <u>Cash Proceeds in DIP Lender's Possession</u>. The DIP Lender is authorized to collect upon, convert to cash proceeds and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Post-petition Collateral or proceeds of Post-petition Collateral.

(b) <u>Deposit Accounts</u>. The DIP Lender shall be deemed to be in control of all deposits in accounts that are subject to any lockbox, blocked account, account control or similar

agreements. All Advances under the DIP Loan shall be deposited into such controlled accounts as specified by the DIP Lender for purposes of further evidencing the perfection of the DIP Lender's, in its capacity as Administrative Agent and Collateral Agent, DIP Lien thereon.

3.  Priority of DIP Liens. The DIP Lender, in its capacity as Administrative Agent and Collateral Agent, pursuant to the DIP Loan Agreement and this Order, is granted, pursuant to Bankruptcy Code §§ 364(c)(2), 364(c)(3) and 364(d), the DIP Liens in the Post-petition Collateral to secure the DIP Loan, DIP Claims and DIP Obligations. The DIP Liens are and shall be first-priority Liens, *pari passu* with the Pre-petition Liens pursuant to § 364(d), in and on any portion of the Post-petition Collateral encumbered by the Pre-petition Liens, and a first-priority Lien on the remaining Post-petition Collateral unencumbered by the Pre-Petition Liens, and shall prime and be senior in all respects to the Post-petition Replacement Liens (as defined below) and all possessory collateral held by the Pre-petition Lender or its agent shall be deemed to have been transferred to the DIP Lender, in its capacity as Administrative Agent and Collateral Agent, and all lockbox, blocked account and similar agreements shall be deemed assigned to the DIP Lender, in its capacity as Administrative Agent and Collateral Agent. The DIP Liens shall not be subject or subordinate to any Lien that is avoided and preserved under Bankruptcy Code § 551, and shall retain their first-priority status notwithstanding the subsequent outstanding subordination or re-characterization of the Pre-petition Secured Claim or Pre-petition Lien and remain in full force and effect notwithstanding any subsequent conversion or dismissal of these cases. The DIP Liens shall be deemed perfected without the need to file or record any security agreement, financing statement, mortgage, charge or take any other action to perfect the DIP Liens. Notwithstanding the foregoing, the Debtors are authorized to execute and deliver to the DIP Lender such financing statements, mortgages, instruments, charges and other documents

as the DIP Lender may deem necessary or desirable from time to time. The automatic stay is hereby modified to permit the DIP Lender to take all necessary or appropriate action, whether in the United States or Anguilla, to further evidence the perfection of the DIP Liens. Notwithstanding the foregoing, nothing in this Final Order shall be deemed to affect any secured claim available to any party by operation of section 365(j) of the Bankruptcy Code, if any.

4.    <u>Super-priority Administrative Expense</u>.  The DIP Claims are hereby granted super-priority administrative expense status under § 364(c)(1) in favor of the DIP Lender, having priority over all other claims under §§ 364(c)(1), 503(b) and 507(b) and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to § 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), and 726(b), subject only to the Carve-Out (as defined herein).  The DIP Claims shall, subject to the Carve-Out, be payable from and have recourse to all DIP Collateral, including the proceeds of claims or causes of action belonging to Debtors and arising under chapter 5 of the Bankruptcy Code ("<u>Avoidance Actions</u>").

5.    <u>Carve-Out Terms</u>.  The Pre-petition Liens and Post-petition Replacement Liens granted to the Pre-petition Lender and the DIP Liens granted to the DIP Lender shall be subject and subordinate to a carve-out (the "<u>Carve-Out</u>") in an amount not to exceed the sum of (a) the lesser of (i) the Budget line items for Professional Fees of Debtors or Committee incurred prior to the earlier of (A) the occurrence of an Event of Default[4] or (B) the Termination Date, or (ii) the accrued and unpaid fees and expenses of the respective retained professionals of the Debtors and Committee allowed pursuant to the *Order Granting Debtors' Motion for an Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of*

---

[4] As used herein, the defined term "Event of Default" shall have the meaning ascribed in the DIP Loan Agreement.

*Expenses of Professionals* entered by the Court on April 12, 2011 [D.I. 100], incurred prior to the earlier of (A) the occurrence of an Event of Default or (B) the Termination Date, (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), and (c) any fees payable to the Clerk of the Court and any agent thereof, respecting the professional fees and expenses described in clause (a) above, subject to the rights of the DIP Lender and any other party in interest to object to the award of any such fees and expenses.

      6.     <u>Termination of Right To Incur the DIP Obligations and Use of Cash Collateral</u>

      (a)     <u>Termination Date</u>.   The Debtors' authorization to incur the DIP Obligations and to use Cash Collateral pursuant to this Final Order will automatically terminate, and the DIP Lender's commitments under the Loan Documents shall automatically terminate, upon the earliest to occur ("<u>Termination Date</u>") of: (i) September 30, 2011, (ii) the effective date of the Plan of Liquidation, (iii) the date the Court enters an Order confirming any plan of reorganization confirmed over the objection of the DIP Lender; (iv) upon the occurrence and continuation of an Event of Default under the Loan Documents, (v) the date of the appointment of an interim or permanent trustee in the Chapter 11 Cases or the appointment of a receiver or examiner with expanded powers to operate or manage the financial affairs, the business, or reorganization of any Debtor (or any Debtor applies for, consents to, or acquiesces in, any such relief), (vi) the date of the dismissal of the Chapter 11 Cases or the conversion of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code (or any Debtor applies for, consents to, or acquiesces in, any such relief), and (vii) the date of payment in full in Cash in Dollars of all DIP Obligations under the Loan Documents.

      (b)     <u>Rights Upon Termination</u>.   On the third Business Day following the occurrence of an Event of Default or a Termination Date (other than the occurrence of a

Termination Date event described in clause 6(a)(vii)), subject in each instance to the Carve-Out: (i) the automatic stay as to Administrative Agent, the Pre-petition Lender and DIP Lender shall be deemed terminated, (ii) at Administrative Agent's election, Administrative Agent may seek to conduct a sale pursuant to Anguilla law with which Debtors shall cooperate, and/or at Administrative Agent's direction, Debtors shall seek to conduct a sale pursuant to § 363, on the later of (A) July 27, 2011, the date currently scheduled for the commencement of the Public Sale, consisting of the public auction and sale of property and related personalty as contemplated and authorized by the *Order Approving Procedures for the Auction and Sale of Debtors' Assets* entered by the Court on May 19, 2011 [D.I. 294], or (B) not less than twenty (20) days' notice after the latest of (m) the third Business Day following an Event of Default, (n) the entry of this Final Order, and (o) notice from Administrative Agent designating the Post-petition Collateral to be included in such sale, of all or such part of the Post-petition Collateral designated by Administrative Agent, in its sole discretion, on terms acceptable to Administrative Agent, in its sole discretion, with all proceeds of such sale to be used to pay the Pre-petition Secured Claim and DIP Claim in the manner set forth in the DIP Loan Agreement (provided, that the proceeds from the sale will be subject to the disgorgement or re-application as a result of a successful Challenge, pursuant to a final order of the Court, by the Committee respecting the validity or perfection of the Pre-petition Secured Claim as set forth in Paragraph 12(f) of this Final Order), and with the Pre-petition Lender, Administrative Agent and DIP Lender preserving the right to credit bid in such sale, subject to the Committee's right to challenge the Pre-petition Lender's and DIP Lender's right to credit bid as set forth in Paragraph 12(g) of this Final Order; provided, however, that so long as the Debtors and the Committee are pursuing confirmation of the Plan of Liquidation, the Pre-petition Lender and DIP Lender may credit bid at the Public Sale, whether

such sale is conducted under Anguillan law, § 363 or pursuant to a plan; (iii) at Administrative Agent's election, without further order of the Court, Administrative Agent shall have automatic and immediate relief from the automatic stay with respect to the DIP Collateral (without regard to the passage of time provided for in Federal Rule of Bankruptcy Procedure 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the DIP Loan Agreement, the Commitment Letter, the Interim Order and Final Order, and applicable non-bankruptcy law with respect to the Post-petition Collateral; and (iv) at Administrative Agent's election, Debtors shall (subject to notice requirements in the Chapter 11 Cases, to the extent applicable) execute a deed in lieu of foreclosure of all or part of the Post-petition Collateral, in form and substance satisfactory to Administrative Agent, in its sole discretion, and otherwise surrender the Post-petition Collateral and cooperate with Administrative Agent in the exercise of its rights and remedies under the DIP Loan Agreement, the Interim Order and Final Order, and applicable non-bankruptcy law with respect to the Post-petition Collateral; provided, however, in each instance, (y) during such three Business Day period following the Event of Default, Debtors and the Committee shall have the right to seek entry of an order of the Court determining that an Event of Default has not occurred, provided that Debtors may not use Cash Collateral during such three Business Day period unless such use is agreed to in writing by Administrative Agent or is for payment of amounts authorized under the Carve-Out; and (z) solely for purposes of determining if the Pre-petition Secured Claim and DIP Loan have been paid in full, the value of any deed in lieu of foreclosure accepted by Administrative Agent shall be determined on the date of acceptance by a certified financial appraiser selected by Administrative Agent, in its sole discretion.

(c)     Immediately upon occurrence of an Event of Default, the authorization for Debtor's use of Cash Collateral shall be automatically terminated and any Pre-petition Lender or DIP Lender consent under the DIP Loan Agreement shall be deemed withdrawn.

(d)     Account Debtors.  Without further order of the Court, upon and during the continuation of any Event of Default, the DIP Lender may direct the Debtors to, or the DIP Lender may directly, instruct all account debtors to make payments directly into the DIP Lender's designated account or such other accounts satisfactory to the DIP Lender, in which event all such cash proceeds shall be applied to the DIP Loan in accordance with Paragraph 7(a) of this Final Order.  The automatic stay is modified to permit such actions.

(e)     State and Foreign Law Restrictions.  In connection with any exercise of rights and remedies by the DIP Lender with respect to the DIP Loan, including any credit bid at any sale of the Post-petition Collateral under § 363, the Debtors expressly waive their rights under any "single action," collateral first, anti-deficiency, or other rules or restrictions under state or Anguillan law, and this Court hereby finds and concludes that any and all such rules and restrictions with respect to the DIP Loan are superseded by this Final Order.  If for any reason the waivers, findings and conclusions in this Paragraph 5(c) are invalidated by any court of competent jurisdiction after the entry of this Final Order, the DIP Lender's covenants and agreements under this Paragraph 5(c) shall immediately cease, and the DIP Lender shall be entitled to exercise its rights and remedies with respect to the DIP Loan in the same manner it would have as if DIP Lender had never exercised any of its rights and remedies under the DIP Loan Agreement, this Final Order or applicable non-bankruptcy law.

7.     Additional Consideration For the DIP Loan.  As additional consideration for the extension of the DIP Loan:

(a) <u>Application of Cash Proceeds</u>. The DIP Lender, at its election, is authorized to set-off and apply all cash proceeds (and all monies received by the DIP Lender)now or hereafter coming into the DIP Lender's possession or control in accordance with the terms of the DIP Loan Agreement. All such applications shall be final and not subject to challenge, re-application or avoidance by any person, including any trustee, subject only to the right of parties in interest to object solely to applications of attorneys' fees and expenses under and in accordance with Paragraph 7(a) of this Final Order. Any amounts subject to re-application in connection with any such objection or determination shall be first applied to repay the DIP Obligations. The automatic stay is hereby modified to permit the DIP Lender to take all necessary or appropriate action, whether in the United States or Anguilla, to apply all cash proceeds (and all monies received by the DIP Lender) now or hereafter coming into the DIP Lender's possession or control in accordance with the terms of the DIP Loan Agreement.

(b) <u>Prohibition Against Additional Debt</u>. The Debtors will not incur or seek to incur debt secured by a Lien that is equal to or superior to the DIP Liens, or which is given super-priority administrative expense status under § 364(c)(1), unless, in addition to the satisfaction of all requirements of § 364 for the incurrence of such debt (i) the DIP Lender has consented to any order authorizing the incurrence of additional debt; (ii) at the time of the entry of such an order, there are no DIP Obligations outstanding, and no obligation of the DIP Lender to make additional Advances under the DIP Loan Agreement; or (iii) such credit or debt is first used to immediately and indefeasibly pay the DIP Obligations in Cash in Dollars in full.

(c) <u>No Surcharge</u>. At no time during the Chapter 11 Cases shall the surcharge provisions of § 506(c), the enhancement of collateral provisions of § 552, or any other legal or equitable doctrine (including unjust enrichment) be imposed upon the DIP Lender or any of the

Post-petition Collateral for the benefit of any party in interest, including the Debtors, any statutory committee creditors, any of the professionals subject to the Carve-Out or any trustee. Notwithstanding the foregoing, the Committee shall retain the right to challenge the waiver of the surcharge provisions of § 506(c) granted to the DIP Lender and Pre-petition Lender hereunder; provided, however, the Committee shall not seek to enforce the surcharge provisions of § 506(c) for any line item of the Budget in an amount greater than the aggregate amount of expenditures on such line item listed in the Budget through the earlier of the Termination Date or the occurrence of an Event of Default.

(d)     Right to Credit Bid.  Pursuant to § 363(k), the DIP Lender and Pre-petition Lender shall have the right, respectively, subject to Paragraph 12(g) of this Final Order, to use the DIP Loan, the Pre-petition Secured Claim or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Pre-petition Collateral or Post-petition Collateral under § 363(b) or other applicable law.

(e)     Plan.  Unless the DIP Lender consents thereto, no order shall be entered confirming a plan in any of these Chapter 11 Cases unless such order provides for payment in full in Cash in Dollars of all of the DIP Obligations on the effective date thereof, together with releases, exculpations, waivers and indemnification acceptable to the DIP Lender in its capacity as DIP Lender, in its sole discretion.

(f)     Proceeds of Avoidance Actions.  The DIP Claims shall, subject to the Carve-Out, be payable from and have recourse to all Post-petition Collateral, including the proceeds of Avoidance Actions.

8.     Use of Cash Collateral.  To the extent the Debtors had Cash Collateral on hand as of the Petition Date (the "Petition Date Cash"), the Pre-petition Lender has consented to the

Debtors' use of such Cash Collateral up to the amount of the Petition Date Cash for the operation of Debtors' businesses, which when taken together with the proceeds of the DIP Loan, shall be limited to expenditures in accordance with the Budget, the DIP Loan Agreement and this Final Order.

9.    Adequate Protection of Pre-petition Lender.  As adequate protection of the Pre-petition Lender's interest in the Pre-petition Collateral on account of the Debtors' use of Cash Collateral and any decline in the value of the Pre-petition Collateral resulting from the imposition of the automatic stay or the Debtors' use, sale or other disposition of the Pre-petition Collateral, including without limitation the Petition Date Cash, the Pre-petition Lender shall receive the following:

(a)    Post-Petition Replacement Liens.  The Debtors hereby grant, assign and pledge to the Pre-petition Lender and the Pre-petition Lender is hereby granted, pursuant to this Final Order, post-petition replacement security interests and Liens for, and equal in amount to, the aggregate diminution in value of the Pre-petition Lender's interest in the Pre-petition Collateral (the "Post-petition Replacement Liens"), subject to the Carve-Out, on the Post-petition Collateral on which the Pre-petition Lender has a valid Lien as of the Petition Date.  The Post-petition Replacement Liens shall be valid, perfected and enforceable without further filing, noticing or recording of any document or instrument or the taking of any further actions.  The automatic stay is hereby modified to permit the Pre-petition Lender and the DIP Lender to take all necessary or appropriate action, whether in the United States or Anguilla, to further evidence the perfection of the Post-petition Replacement Liens and the DIP Liens, respectively, or to maintain the perfection of the Pre-petition Liens.

(b)     Super-Priority Claim. The Pre-petition Lender is hereby granted a super-priority claim for, and equal in amount to, the aggregate diminution in value of the Pre-petition Lender's interest in the Pre-petition Collateral (the "Adequate Protection Super-Priority Claim") that shall have priority over all other claims under § 364(c)(1), 503(b) and 507(b) and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to §§ 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), and 726(b), subject and subordinate only to the Carve-Out and the DIP Claims. The Adequate Protection Super-Priority Claim shall, subject to the Carve-Out, be payable from and have recourse to all Pre-petition Collateral and Post-petition Collateral, except the proceeds of Avoidance Actions.

(c)     Right to Credit Bid. Subject to Paragraph 12(g) of this Final Order (except so long as the Debtors and the Committee are pursuing confirmation of the Plan of Liquidation), the Pre-petition Lender shall have the right to credit bid the amount of the Pre-petition Secured Claim in connection with any sale of all or substantially all of the Pre-petition Collateral, including any sale conducted pursuant to § 363 or included as part of any plan of reorganization or liquidation subject to confirmation under § 1129(b)(2)(A)(iii). Notwithstanding anything in the foregoing, to the extent that the Committee or a trustee appointed in these cases pursuant to § 1104 files a plan of reorganization or liquidation, the Pre-petition Lender's right to credit bid under such plan shall be limited to its rights under applicable law.

(d)     Additional Protection. The Pre-petition Lender reserves the right to petition the Court for such additional adequate protection of the Pre-petition Liens as the Pre-

petition Lender may reasonably require or for relief from or modification of the automatic stay under § 362.

10.    <u>Reimbursement of Fees and Expenses</u>.  Upon receiving written demand therefor (together with backup documentation supporting such request), notwithstanding the Budget the Debtors shall (i) pay or reimburse the DIP Lender for all reasonable out-of-pocket costs and expenses incurred in connection with the negotiation, preparation, execution and delivery of, and any amendment, supplement, waiver or modification to, and the enforcement of the Commitment Letter, the DIP Loan Agreement, the Interim Order, the Final Order and any other documents prepared in connection herewith or therewith, their monitoring of and involvement and participation in these Chapter 11 Cases, and the consummation and administration of the transactions (including the reasonable expenses of the DIP Lender's due diligence investigation including Anguillan counsel, third party appraisers, advisors, consultants, lien and title investigations, and collateral monitoring services) and the preservation of the Pre-petition Collateral and Post-petition Collateral, contemplated hereby and thereby, including the reasonable fees and disbursements of advisors and one lead outside counsel and one local outside counsel for each applicable jurisdiction, and the reasonable fees and disbursements incurred in obtaining relief from the automatic stay under the Bankruptcy Code or other stay or injunction restricting DIP Lender's enforcement activities and proceedings, including conducting the sale of the real property located at the Property pursuant to the laws of Anguilla, (ii) pay, indemnify and hold harmless the DIP Lender from and against any and all recording and filing taxes, assessments and fees, and any and all liabilities with respect to, or resulting from, any delay in paying stamp, excise and other similar taxes, if any, which may be payable, or determined to be payable, in connection with the execution and delivery of, or consummation or administration of,

any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, the Commitment Letter, the DIP Loan Agreement, the Interim Order, or the Final Order, and any such other documents related thereto, and (iii) pay, indemnify and hold harmless the DIP Lender (and its directors, trustees, officers, employees, affiliates, controlling persons, agents, attorneys, professionals, advisors, successors and assigns) from and against, any and all other actual liabilities, obligations, losses, damages, penalties, actions, judgments, suits, and related reasonable and documented out of pocket costs, expenses or disbursements of any kind or nature whatsoever with respect to the DIP Obligations all the foregoing in clauses (i) through (iv) inclusive, collectively, the "Indemnified Liabilities"); provided, however, that the Debtors shall not have any obligation hereunder to the DIP Lender with respect to Indemnified Liabilities arising from the fraudulent actions, gross negligence, bad faith or willful misconduct of DIP Lender (or any of its directors, trustees, officers, employees, affiliates, controlling persons, agents, attorneys, professionals, advisors, successors and assigns) as determined by a final and non-appealable order of the Court.

11.     Restrictions on the Debtors.  Other than the Carve-Out and the Permitted Priority Liens, no claim or Lien having a priority superior or *pari passu* with those granted by this Final Order to the Pre-petition Lender or the DIP Lender shall be granted by any Debtor, while any portion of the DIP Loan, adequate protection or the commitment thereunder remains outstanding without the prior written consent of the DIP Lender and the Pre-petition Lender.  Except as expressly permitted by the DIP Loan Agreement and this Final Order, the Debtors will not, at any time during these Chapter 11 Cases, grant mortgages, security interests or Liens in the Post-petition Collateral or any portion thereof to any other parties pursuant to § 364(d) or otherwise. Notwithstanding the foregoing, an encumbrance or Lien with priority over the Pre-petition Lien

that is determined to exist by a court located in Anguilla in connection with or related to an action for which the Court has granted relief from the automatic stay of section 362 prior to the execution of the DIP Loan Agreement shall not constitute an Event of Default.

      12.    <u>Miscellaneous Provisions</u>.

      (a)    <u>Notice of and Objections to Post-petition Expenses</u>. The DIP Lender shall provide summaries of all invoices with respect to the DIP Lender's attorneys' and other fees and related costs and expenses asserted that are incurred post-Petition Date to (i) DLA Piper LLP (US), Attn: Richard A. Chesley; 203 North LaSalle Street, Suite 1900, Chicago, IL 60601; (ii) Akin Gump Strauss Hauer & Feld LLP, Attn: Charles R. Gibbs, 1700 Pacific Avenue, Suite 4100, Dallas, TX 75201; (iii) the Office of the United States Trustee, Attn: Richard L. Schepacarter, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox 35, Wilmington, Delaware, 19801; (iv) Brown Rudnick LLP, Attn: Gordon Novod, Seven Times Square, New York, NY 10036 and (v) Womble, Carlyle, Sandridge & Rice, PLLC, Attn: Ericka Fredricks Johnson, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801. Any such party may object to the reasonableness of any such fees, costs and expenses; however, any such objection shall be forever waived and barred unless, (i) the objection is filed with the Court and served upon the DIP Lender and its counsel within 20 days of receipt of the summary of the invoice to which the objection relates and (ii) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses to the extent practicable based upon documentation provided by the DIP Lender. Any hearing on an objection to the fees, costs and expenses set forth on any invoice summary shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses

which are the subject of such objection. The disallowance of any such fees and expenses shall not affect the DIP Lender's right to collect such amounts from any person or entity other than the Debtors.

(b) <u>Force and Effect of Post-petition Documents</u>. To the extent there is any conflict among the Motion, the Interim Order, the DIP Loan Agreement and the terms of this Final Order, this Final Order shall govern and control.

(c) <u>Financial Information</u>. The Debtors are hereby directed to deliver to the DIP Lender such financial and other information concerning the business and affairs of the Debtors and any of the Post-petition Collateral as may be required pursuant to the DIP Loan Agreement and/or as the DIP Lender shall reasonably request from time to time with a copy delivered to the Committee. The Debtors are also directed to allow the DIP Lender access to the premises in accordance with the terms of the DIP Loan Agreement for the purpose of enabling the DIP Lender to inspect and audit the Post-petition Collateral and the Debtors' books and records.

(d) <u>No Waiver</u>. The DIP Lender's failure, at any time or times hereafter, to require strict performance by the Debtors (or by any trustee) of any provision of this Final Order or the DIP Loan Agreement shall not waive, affect or diminish any right of the DIP Lender, as the case may be, thereafter to demand strict compliance and performance therewith. No delay on the part of the DIP Lender in the exercise of any right or remedy under this Final Order, the DIP Loan Agreement, the Bankruptcy Code, or applicable non-bankruptcy law shall preclude any other or further exercise of any right or remedy. The DIP Lender shall not be deemed to have suspended or waived any of their rights or remedies under this Final Order, the DIP Loan Agreement, the Bankruptcy Code, or applicable non-bankruptcy law unless such suspension or

waiver is in writing, signed by a duly authorized officer of such party, and directed to the Debtors.

(e)     "<u>Responsible Person</u>." By executing the DIP Loan Agreement or taking any actions pursuant to this Final Order or by its exercise of its power of sale rights under Anguillan law, the DIP Lender shall not be deemed to be (i) in control of the operations or liquidation of the Debtors or (ii) acting as a "responsible person" with respect to the operation, management or liquidation of the Debtors. Further, DIP Lender's direct communications and negotiations with Purchasers (as defined in the DIP Loan Agreement) party to pre-Petition Date Sales Agreements (as defined in the DIP Loan Agreement) respecting Partial Release Prices (as defined in the DIP Loan Agreement) shall not be construed as control over the Debtors.

(f)     <u>Rights Reserved: No Waiver</u>. The rights, objections and defenses of the Committee to challenge the extent, validity, allowability, priority, amount or perfection of the Pre-petition Secured Claim and the Pre-petition Lien as well as any causes of action belonging to the Debtors or their estates against the Pre-petition Secured Lender are expressly reserved as to the Committee, but are not reserved as to any other party-in-interest. The Committee shall also have the right to seek to disgorge any proceeds received by the DIP Lender or Pre-petition Lender from the sale of any individual condominium units or villas of the Property, including without limitation pursuant to Section 2.12(b)(vii) of the DIP Loan Agreement. Nothing in the Motion or this Final Order shall be deemed or construed to waive any right of the Committee or constitute an admission against interest by the Committee. The Committee is hereby granted standing and the authority to seek to challenge, on behalf of the Debtors' estates, the extent, validity, allowability, priority, amount, and perfection of the Pre-petition Secured Claim and the Pre-petition Lien and to seek to disgorge any proceeds received by the DIP Lender or Pre-

petition Lender from the sale of any individual condominium units or villas at the Property, raising any and all claims and defenses, without further motion seeking authority to bring such action and without further order of this Court (a "Challenge"). Nothing in this Final Order vests or confers on any entity (as defined in the Bankruptcy Code), except for the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including any Challenge. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary. The Committee shall file any Challenge within a sixty (60) day period, which period shall commence upon the earlier of the (i) Termination Date, other than as a result of the occurrence of the Effective Date under the Plan of Liquidation, (ii) the Court's denial of confirmation of the *Second Amended Joint Chapter 11 Plan of Liquidation*, proposed by the Debtors and the Committee, filed June 13, 2011 [D.I. 378], or other later filed amended plan of liquidation that embodies the settlement among the Debtors, Committee, Pre-petition Lender and DIP Lender, or is otherwise approved and consented to by the Pre-petition Lender and DIP Lender.

(g)     Rights Reserved:  Challenge to Credit Bid. Notwithstanding anything in this Final Order or the DIP Loan Agreement, pursuant to the Bid Procedures Order, the Committee has and shall continue to have the right to challenge the Pre-petition Lender's and DIP Lender's right to credit bid the Pre-petition Secured Claim and the DIP Loan, respectively, or any part thereof, with respect to any sale of all or any portion of the Pre-petition Collateral and DIP Collateral under sections 363(b) and 1123(b)(4); provided, however, that so long as the Debtors and the Committee are pursuing confirmation of the Plan of Liquidation, the Pre-petition Lender and DIP Lender may credit bid at the Public Sale. Upon confirmation of the Plan of

Liquidation and consummation thereof, any right of Administrative Agent, DIP Lender, or Pre-petition Lender to object to the extent or allowance of fees and expenses of Committee professionals through May 31, 2011 is hereby waived.

      13.   <u>Binding Effect</u>.

      (a)   <u>Final Order</u>.  This Final Order shall be binding on all parties in interest in the cases and their respective successors and assigns, including any trustee, except that any trustee shall have the right to terminate this Final Order after notice and hearing.  If, in accordance with § 364(e), this Final Order does not become a final non-appealable order, if a trustee terminates this Final Order, or if any of the provisions of the Final Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect (a) the stipulations, representations and findings contained in this Final Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby with respect to any debts incurred under the DIP Loan Agreement prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims and other benefits incurred prior to the effective date of such termination or subsequent order shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein, with respect to the DIP Loan.  Except as otherwise explicitly set forth in this Final Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Final Order.

      (b)   <u>Survival</u>.  The provisions of this Final Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of

any conflict with, any order which may be entered in the cases (i) confirming any Chapter 11 plan; (ii) converting the cases to cases under Chapter 7; or (iii) solely to the extent authorized by applicable law, dismissing these Chapter 11 Cases. The terms and provisions of this Final Order, including the rights granted to the DIP Lender under §§ 364(c) and (d), shall continue in full force and effect until all of the DIP Loan is indefeasibly and finally paid in cash in full and discharged. This Final Order shall supersede the Interim Order, *nunc pro tunc* to the Petition Date.

Dated: June 4, 2011
Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE